Jeff P. Prostok
State Bar No. 16352500
Matthew G. Maben
State Bar No. 24037008
FORSHEY & PROSTOK LLP
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
mmaben@forsheyprostok.com

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Cases |
| | ) | |
| STRINGER FARMS, INC., | ) | Case No. 16-44821-rfn11 |
| CHARLES BLAKE STRINGER, | ) | Case No. 16-44871-rfn11 |
| | ) | |
| Debtors. | ) | **Jointly Administered Under** |
| | ) | **Case No. 16-44821-rfn11** |

## FIRST AMENDED JOINT PLAN OF REORGANIZATION OF STRINGER FARMS, INC. AND CHARLES BLAKE STRINGER

Dated: December 4, 2017.

Stringer Farms, Inc., a Texas corporation, and Charles Blake Stringer, an individual, the Debtors in the above-captioned jointly administered bankruptcy cases, hereby propose the following First Amended Joint Plan of Reorganization pursuant to subsection 1121(a) of the Bankruptcy Code.

## TABLE OF CONTENTS

Page

ARTICLE I      DEFINITIONS ................................................................... 1

ARTICLE II      CLASSIFICATION OF CLAIMS AND INTERESTS ...................................... 11

     2.2    Claims and Interests ................................................................... 11
     2.3    Impaired Classes of Claims and Interests ................................................ 12
     2.4    Impairment or Classification Controversies ............................................... 12

ARTICLE III     TREATMENT OF ADMINISTRATIVE EXPENSES AND CERTAIN
                   PRIORITY CLAIMS ................................................................... 12

     3.1    Administrative Expenses ................................................................ 12
     3.2    Priority Tax Claims ................................................................... 13
     3.3    Sandton DIP Loan Claim ................................................................ 13
     3.4    Trustee's Fees ....................................................................... 14

ARTICLE IV     TREATMENT OF CLAIMS AND INTERESTS ............................................. 14

     4.1    Class 1 – Zions Secured Claims ......................................................... 14
     4.2    Class 2 – Wells Fargo Secured Claims ................................................... 17
     4.3    Class 3 – WFFLI Secured Claims ........................................................ 20
     4.4    Class 4 – Caterpillar Secured Claim ..................................................... 22
     4.5    Class 5 – FNMA Secured Claim ......................................................... 23
     4.6    Class 6 – Ally Bank Secured Claim ...................................................... 23
     4.7    Class 7 – Secured Property Tax Claims .................................................. 24
     4.8    Class 8 – Other Secured Claims ........................................................ 25
     4.9    Class 9 – Unsecured (General) Claims ................................................... 26
     4.10   Class 10 – Interests in SFI ............................................................ 27

ARTICLE V      ACCEPTANCE OR REJECTION OF PLAN .............................................. 27

     5.1    Classes Entitled to Vote ............................................................... 27
     5.2    Class Acceptance Requirement .......................................................... 27
     5.3    Elimination of Vacant Classes ........................................................... 27
     5.4    Cramdown ........................................................................... 27

ARTICLE VI     MEANS OF IMPLEMENTATION OF THE PLAN IF THE LIQUIDATING
                   TRUST IS NOT REQUIRED TO BE ESTABLISHED UNDER THIS PLAN ... 27

     6.1    Satisfaction of Conditions Eliminating Requirement to Establish Liquidating
           Trust ................................................................................ 27
     6.2    Assumption of Allowed Claims .......................................................... 28
     6.3    Vesting of Assets ..................................................................... 28
     6.4    Actions by the Debtors and the Reorganized Debtors to Implement Plan ..... 28
     6.5    Exit Financing ........................................................................ 29
     6.6    Source of Funding for Stringer's Living Expenses ......................................... 29
     6.7    Source of Funding for Plan Obligations ................................................... 29

6.8    Retention and Assertion of Causes of Action and Defenses .......................... 29
6.9    Prosecution of Claims in Pending Lawsuits and Dumas Matter ................... 30
6.10  Post-Effective Date Reporting and Operational Oversight ............................ 30

ARTICLE VII     MEANS OF IMPLEMENTATION OF THE PLAN IF THE LIQUIDATING
TRUST IS REQUIRED TO BE ESTABLISHED UNDER THIS PLAN ........... 31

7.1    Conditions Triggering Requirement to Establish Liquidating Trust ............... 31
7.2    Substantial Consolidation, Liquidating Trust and Orderly Liquidation ........... 31
7.3    The Liquidating Trust ................................................................................. 32
7.4    Appointment and Powers of the Liquidating Trustee ..................................... 32
7.5    Trust Committee ......................................................................................... 34
7.6    Future Trust Expenses and Fees ................................................................ 34
7.7    Exculpation; Indemnification ....................................................................... 34
7.8    Retention of Funds Prior to Distribution ....................................................... 35
7.9    Quarterly Operating Reports ....................................................................... 35
7.10  Registry of Beneficial Interests .................................................................. 35
7.11  Termination of the Liquidating Trust ........................................................... 35
7.12  Replacement of the Liquidating Trustee ..................................................... 36
7.13  Liquidating Trust Transactions .................................................................. 36

ARTICLE VIII    PROVISIONS GOVERNING DISTRIBUTION ................................................. 37

8.1(a) Source of Distributions .............................................................................. 37
8.1(b) Collection Costs ........................................................................................ 37
8.1(c) Timing and Amount of Distributions ........................................................... 37
8.1(d) Means of Cash Payment ........................................................................... 37
8.1(e) Record Date for Distributions .................................................................... 37
8.1(f)  Delivery of Distributions ........................................................................... 38
8.1(g) Time Bar to Cash Payments ..................................................................... 38
8.1(h) Cure Period .............................................................................................. 38
8.1(i)  Pre-Payment of Claims ............................................................................ 38
8.1(j)  Distributions after Substantial Consummation ........................................... 38
8.2(a) Initial Distributions ................................................................................... 38
8.2(b) Means of Payments .................................................................................. 39
8.2(c) Delivery of Distributions and Time Bar to Payments ................................... 39
8.2(d) Withholding and Reporting Requirements ................................................... 39
8.2(e) *De Minimis* Distributions .......................................................................... 39
8.2(f)  Unclaimed Property ................................................................................. 39
8.2(g) Uncashed Checks ..................................................................................... 39
8.2(h) Tax Treatment .......................................................................................... 40

ARTICLE IX      PROCEDURES FOR RESOLVING AND TREATING CONTESTED AND
CONTINGENT CLAIMS ................................................................................. 40

9.1    Objection Deadline ..................................................................................... 40
9.2    Responsibility for Objecting to Claims and Settlement of Claims ................. 41
9.3    Distributions on Account of Contested Claims ............................................. 41
9.4    No Waiver of Rights to Object ..................................................................... 42
9.5    Rights Under Section 505 ........................................................................... 42
9.6    Liquidating and Allowance of Contested or Disputed Claims ....................... 42

9.7     Offsets and Defenses ................................................................ 44
9.8     Claims Paid or Reduced Prior to Effective Date.......................... 44

ARTICLE X        EXECUTORY CONTRACTS AND UNEXPIRED LEASES........................... 45

10.1    Assumption and Rejection of Executory Contracts ....................... 45
10.2    Cure Payments and Release of Liability....................................... 45
10.3    Bar to Rejection Claims ............................................................. 46
10.4    Rejection Claims ....................................................................... 46
10.5    Reservation of Rights................................................................. 46
10.6    Pass-Through ............................................................................ 47

ARTICLE XI       CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS
                 OF PLAN ................................................................................... 47

11.1    Conditions to Confirmation and Effectiveness of Plan ................... 47
11.2    Revocation of Plan..................................................................... 47

ARTICLE XII      EFFECT OF THE PLAN ON CLAIMS AND INTERESTS.............................. 47

12.1    Compromise and Settlement ....................................................... 47
12.2    Satisfaction of Claims ................................................................ 48
12.3    Discharge .................................................................................. 48
12.4    Injunction .................................................................................. 49
12.5    Setoffs ...................................................................................... 50
12.6    Recoupment .............................................................................. 51
12.7    Turnover ................................................................................... 51
12.8    Automatic Stay .......................................................................... 52

ARTICLE XIII     JURISDICTION OF COURTS AND MODIFICATIONS TO THE PLAN........... 52

13.1    Retention of Jurisdiction.............................................................. 52
13.2    Abstention and Other Courts ...................................................... 53
13.3    Non-Material Modifications .......................................................... 53
13.4    Material Modifications ................................................................. 53

ARTICLE XIV      MISCELLANEOUS PROVISIONS ........................................................... 54

14.1    Severability................................................................................ 54
14.2    Oral Agreements; Modification of Plan; Oral Representations or
        Inducements.............................................................................. 54
14.3    Waiver....................................................................................... 54
14.4    Construction .............................................................................. 54
14.5    Notice ....................................................................................... 54
14.6    Compliance with All Applicable Laws ........................................... 55
14.7    Duties to Creditors ..................................................................... 55
14.8    Binding Effect............................................................................. 56
14.9    Governing Law, Interpretation..................................................... 56
14.10   Payment of Statutory Fees ......................................................... 56
14.11   Filing of Additional Documents ................................................... 56
14.12   Computation of Time................................................................... 56

14.13 Elections by the Reorganized Debtors or the Liquidating Trustee ................. 56
14.14 Release of Liens ......................................................................................... 56
14.15 Rates .......................................................................................................... 56
14.16 Retiree Benefits .......................................................................................... 56
14.17 Compliance with Tax Requirements ............................................................ 56
14.18 Notice of Entry of Confirmation Order ......................................................... 57
14.19 Notice of Occurrence of the Effective Date ................................................. 57
14.20 Interest and Attorney's Fees ....................................................................... 57
14.21 No Admissions ............................................................................................ 57

**ARTICLE I.**
**DEFINITIONS**

A.    **Defined Terms.**

In addition to such other terms as are defined in other sections of this Plan, the following terms shall have the meanings set forth below (such meanings to be equally applicable to both the singular and plural, masculine and feminine forms of the terms defined).

1.1    "Administrative Expense" includes any cost or expense of administration of the Debtors' chapter 11 cases allowed under subsections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estates of the Debtors, any actual and necessary expenses of operating the businesses of the Debtors, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estates of the Debtors under section 1930, chapter 123 of title 28 of the United States Code.

1.2    "Allowed," when used with respect to a Claim (other than an Administrative Expense), means a Claim (a) to the extent it is not Contested; or (b) a Contested Claim, proof of which was filed timely with the Bankruptcy Court, and (i) as to which no Objection was filed by the Objection Deadline, or (ii) as to which an Objection was filed by the Objection Deadline, to the extent, if any, such Claim is ultimately allowed by a Final Order; provided however, if a Claim is to be determined in a forum other than the Bankruptcy Court, such Claim shall not become Allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court.

1.3    "Ally Bank Secured Claim" means the Claim held by Ally Bank based on Ally Bank's financing of Stringer's purchase of a 2015 GMC Sierra vehicle pursuant to a Motor Vehicle Retail Installment Sales Contract dated June 28, 2014 between Stringer and Classic Buick GMC.

1.4    "Assets" includes all right, title, and interest in and to all property of every type or nature owned or claimed by the Debtors as of their respective Petition Dates, together with all such property of every type or nature subsequently acquired by the Debtors through the Effective Date, whether real or personal, tangible or intangible, and wherever located, and including, but not limited to, property as defined in section 541 of the Bankruptcy Code, but excluding Exempt Property.  Without limiting the generality of the foregoing, this shall include all Estate Claims, all Estate Defenses and Stringer's ownership interests in partnerships, LLCs, and corporate entities.

1.5    "Avoidance Action" means a cause of action assertable by the Debtors or the Liquidating Trustee against any Person, including but not limited to any Creditor, pursuant to Chapter 5 of the Bankruptcy Code, including without limitation, actions brought, or which may be brought, under sections 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code. Such Causes of Action may be asserted to recover, among other things, the transfers listed in the Debtors' respective Schedules, including in response to Question 3 to the statement of financial affairs.

1.6    "Ballot" means the form of ballot provided to holders of Claims or Interests entitled to vote pursuant to Bankruptcy Rule 3017(d), by which each such holder may accept or reject the Plan.

1.7 "<u>Bankruptcy Code</u>" means the Bankruptcy Reform Act of 1978, as amended and codified at title 11 of the United States Code.

1.8 "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, or such other court having jurisdiction over all or any part of the Chapter 11 Cases.

1.9 "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Cases, including all applicable local rules of the Bankruptcy Court.

1.10 "<u>Bar Date</u>" is the date established by the Bankruptcy Court, including through any standing order, for filing proofs of Claim or proofs of Interest; <u>provided</u>, <u>however</u>, that if the Bankruptcy Court has ordered an extension of the time by which a particular Creditor may file a proof of Claim or proof of Interest, the date set with respect to such Creditor shall be the Bar Date with respect to such Creditor, but only as to such Creditor.

1.11 "<u>Business Day</u>" means any day other than Saturday, Sunday, a legal holiday, or a day on which national banking institutions in Texas are authorized or obligated by law or executive order to close.

1.12 "<u>Card Agreement</u>" means that certain WellsOne® Commercial Card Agreement dated July 14, 2015 between Stringer and Wells Fargo.

1.13 "<u>Cash</u>" means legal tender of the United States of America, cash equivalents and other readily marketable securities or instruments, including, but not limited to, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks or commercial paper.

1.14 "<u>Caterpillar</u>" means Caterpillar Financial Services Corporation.

1.15 "<u>Caterpillar Secured Claim</u>" means the Claim of Caterpillar, but only to the extent and in the amount, if any, that such Claim is Allowed as a Secured Claim, evidenced by and based on that certain Master Loan and Security Agreement dated October 9, 2015 between Stringer and Caterpillar.

1.16 "<u>Chapter 11 Cases</u>" means the above captioned and numbered reorganization cases of the Debtors under Chapter 11 of the Bankruptcy Code.

1.17 "<u>Claim</u>" means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, legal, equitable, secured or unsecured or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, secured or unsecured.

1.18 "<u>Claimant</u>" means the holder of a Claim.

1.19 "<u>Class</u>" means a class of Claims or Interests as described in this Plan.

1.20 "Collateral" means any Asset subject to a valid and enforceable Lien to secure payment of a Claim, including any right of offset asserted against any Asset.

1.21 "Collection Costs" means reasonable attorney's fees, expenses and other costs of collection which any Creditor may seek to recover from the Debtors pursuant to either the relevant loan documents or applicable law, but only to the extent actually Allowed by a Final Order (if applicable).

1.22 "Confirmation Date" means the date of entry of the Confirmation Order.

1.23 "Confirmation Hearing" means the hearing, as it may be continued from time to time, conducted by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020(b) to consider confirmation of the Plan, as the same may be amended or supplemented.

1.24 "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

1.25 "Contested," when used with respect to a Claim, means a Claim: (a) that is listed in the Schedules of either of the Debtors as disputed, contingent, and/or unliquidated, or in the amount of "$0.00" or "Unknown"; (b) that is listed in the Schedules of either of the Debtors as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; (c) that is not listed in the Schedules of either of the Debtors, regardless of whether or not a proof of Claim has been filed with the Bankruptcy Court; (d) as to which an Objection has been or may be timely filed and which Claim has not been Allowed by a Final Order; or (e) for which the proof of Claim is filed after the applicable Bar Date. To the extent an Objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the Objection.

1.26 "Creditor" means a "creditor," as defined in section 101(10) of the Bankruptcy Code.

1.27 "CRP Contract" means a Conservation Reserve Program Contract to which either Debtor is a party.

1.28 "Cure Claim" means the payment or other performance required to cure any existing default under an Executory Contract.

1.29 "Debtors" means, collectively, SFI and Stringer, the debtors and debtors-in-possession in the above-captioned Chapter 11 Cases.

1.30 "DIP Loan Documents" means that certain Credit and Security Agreement entered into as of February 28, 2017 by the Debtors and Sandton, together with any other related documents, instruments and agreements, pursuant to which Sandton provided the Debtors with debtor-in-possession financing.

1.31 "Disallowed," when used with respect to all or any part of a Claim or Interest, means that portion of a Claim or Interest to which an Objection or motion to disallow has been sustained by a Final Order or, as to a Contested Claim, any portion thereof which is not Allowed by a Final Order of the Bankruptcy Court.

1.32 "Disclosure Statement" means the Disclosure Statement filed with respect to this Plan, as it may be amended, modified, or supplemented from time to time.

1.33 "Distribution" means any payment or other distribution of property pursuant to this Plan.

1.34 "Dos Ex LLC" means, Dos Ex Cattle Co., LLC, a Texas limited liability Company.

1.35 "Dos Ex LP" means Dos Ex Partnership, LP, a Texas limited partnership.

1.36 "Dumas Matter" means the matter involving the City of Dumas, Texas in which Stringer possesses claims against and will be entitled to compensation from the City of Dumas, Texas based on easements that the City of Dumas, Texas seeks to obtain and/or condemn on certain real estate owned by Stringer, which may result in the commencement of a condemnation lawsuit by the City of Dumas, Texas in state court if Stringer and the City of Dumas, Texas do not reach an agreement through mediation or otherwise.

1.37 "Effective Date" means the later to occur of (a) fifteen (15) days after the Confirmation Date if the Confirmation Order is not stayed or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay which is at least fifteen (15) days after the Confirmation Date, and (b) the first Business Day that each of the conditions to the effectiveness of this Plan are satisfied or waived.

1.38 "Estate" means the domain consisting of all of the Assets and property rights of a Debtor from the Petition Date to the Effective Date pursuant to section 541(a) of the Bankruptcy Code.

1.39 "Estate Claims" means any cause of action or claim, including Avoidance Actions, which may be asserted by the Debtors, the Liquidating Trustee, or the Estate of any Debtor, whether or not such Estate Claim has been filed in a court of competent jurisdiction.

1.40 "Estate Defenses" means all defenses, affirmative defenses, counterclaims or offsets by a Debtor's Estate against any Person, including but not limited to any Creditor.

1.41 "Estate Representative" means, (a) from and after the Effective Date, the Debtors, as debtors in possession, or (b) from and after the Liquidating Trust Effective Date, the Liquidating Trustee.

1.42 "Event of Default" means the failure of a Reorganized Debtor to perform, keep, or observe any term, covenant, or condition of the Plan, but only if the Event of Default is not cured prior to the expiration of the applicable cure period.

1.43 "Executory Contract" means any executory contract or unexpired lease which is subject to section 365 of the Bankruptcy Code.

1.44 "Exempt Property" means the property of Stringer that is (a) listed as exempt in Schedule C of Stringer's Schedules filed in his bankruptcy case, and (b) eligible for exemption from property of the estate under § 522(b) of the Bankruptcy Code. The Exempt Property shall include Lake Tanglewood Lot 006 Block 0015 Amarillo, Texas; Lake Tanglewood Lot 001 Block 0028 Amarillo, Texas; and Lake Tanglewood Lot 002 Block 0028 Amarillo, Texas claimed as Stringer's homestead property.

1.45    "Exit Lender" means any lender or lenders to be identified in the future providing an Exit Loan or a New Revolver.

1.46    "Exit Loan" means either (a) a term loan to be provided by an Exit Lender to the Debtors which shall, *inter alia*, (i) be secured by Liens on all of the SFI Farmland and Stringer Farmland, which such Liens shall be subordinate only to any Liens securing payment of Property Taxes assessed against such Collateral, to the extent that applicable non-bankruptcy law grants priority to such Liens, (ii) fully close and fund on or before January 26, 2018, (iii) provide the funds required to repay the Sandton DIP Loan Claim in full, (iv) mature 24 months after the Effective Date, and (v) unless otherwise agreed to in writing by Zions, shall be in an amount of no greater than $4,500,000.00; or (b) a loan to be provided by an Exit Lender to the Liquidating Trust of up to $4,000,000.00 (in the event that the Liquidating Trust is required to be established under this Plan) in an amount sufficient to enable the Liquidating Trustee to repay the Sandton DIP loan Claim in full using a combination of the Debtors' 2017 harvest proceeds and the proceeds of such loan.

1.47    "F&P" means Forshey & Prostok, LLP, the Debtors' bankruptcy counsel.

1.48    "Final Order" means an order or judgment of the Bankruptcy Court or any other court or adjudicative body, as to which the time to appeal or seek rehearing or petition for certiorari shall have expired or which such order or judgment shall no longer be subject to appeal, rehearing, or certiorari proceeding and with respect to which no appeal, motion for rehearing, or certiorari proceeding or stay shall then be pending.

1.49    "FNMA" means Federal National Mortgage Association.

1.50    "FNMA Secured Claim" means the Claim of FNMA evidenced by that certain Note dated April 27, 2015 executed by Stringer in favor of Amarillo National Bank in the original principal amount of $417,000, repayment of which is secured by Stringer's homestead.

1.51    "Governmental Unit" means a "governmental unit" as such term is defined in Section 101(27) of the Bankruptcy Code.

1.52    "Initial Distribution Date", when used with respect to each Claim, means:

(a)    The Effective Date, as to each Claim which is not Contested on the Effective Date; provided, however, that if the payment terms of Article III or IV of this Plan applicable to each such Claim specify a different date, then the Initial Distribution Date shall be the date as calculated pursuant to the terms of Article III or IV of this Plan applicable to each such Claim.

(b)    As to any Contested Claim, the later of the following: (i) if the Allowed Claim is payable on the Effective Date, then on the first Business Day of the first calendar month beginning at least thirty (30) days after the date on which a Contested Claim becomes an Allowed Claim, or (ii) if the payment terms of Article III or IV of this Plan applicable to each such Claim specify a date of payment other than the Effective Date, then the date as calculated pursuant to the terms of Article III or IV of this Plan applicable to each such Claim calculated from the date reflected in part (i) of this subparagraph (b).

The Initial Distribution Date shall be separately determined with respect to each Allowed Claim based upon the date each such Claim became an Allowed Claim.

1.53    "Insider" means a Person described in section 101(31) of the Bankruptcy Code.

1.54    "Interests" means any equity or stock ownership interest in the Debtors.

1.55    "IRS" means the Department of the Treasury, Internal Revenue Service.

1.56    "Lien" means any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any Asset or property of the Debtors contemplated by section 101(37) of the Bankruptcy Code, including any right of offset asserted against any Asset.

1.57    "Liquidating Trust" means the trust that shall be established pursuant to the Liquidating Trust Agreement for the purpose of liquidating and distributing the Assets to holders of Allowed Claims, but only upon the occurrence of the conditions and circumstances set forth in this Plan requiring establishment of the Liquidating Trust.

1.58    "Liquidating Trust Agreement" means that certain Liquidating Trust Agreement substantially in the form to be submitted as a Plan Document, establishing the Liquidating Trust and providing for liquidation and distribution of the Assets to holders of Allowed Claims in the event that the Liquidating Trust is required to be established under this Plan.

1.59    "Liquidating Trust Assets" means the Assets as transferred in trust to the Liquidating Trustee in accordance with the Liquidating Trust Agreement in the event that the Liquidating Trust is required to be established under this Plan.

1.60    "Liquidating Trust Effective Date" means the next Business Day following the date upon which one of the conditions for establishment of the Liquidating Trust is satisfied under section 7.1 of this Plan.

1.61    "Liquidating Trustee" means the trustee of the Liquidating Trust, whose rights, powers, and duties shall be set forth in the Liquidating Trust Agreement.

1.62    "Liquidation" means the sale of the property of the Debtors and the Distribution of the proceeds to Creditors.

1.63    "Net Liquidating Trust Assets" means the portion of the Liquidating Trust Assets available for distribution to holders of Allowed Claims, excluding any reserves for Contested Claims, operating expenses of the Liquidating Trust, or otherwise.

1.64    "New Revolver" means a new revolving line of credit that may be provided by an Exit Lender and which may, *inter alia*, be secured by Liens on all cattle and/or crops of the Reorganized Debtors.

1.65    "Objection" means (a) an objection to the allowance of a Claim interposed by any party entitled to do so within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, and (b) as to any Taxing Authority, shall include a proceeding commenced under section 505 of the Bankruptcy Code to determine the legality or amount of any tax.

1.66    "Objection Deadline" means the day that is one hundred twenty (120) days after the Effective Date, unless otherwise extended by order of the Bankruptcy Court.

1.67    "Pending Lawsuits" means, collectively, all pending lawsuits in which a Debtor is a plaintiff, including: (a) *Blake Stringer v. DCP Midstream, LP*, Cause No. 13-81, in the 69th District Court, Moore County, Texas; (b) *Blake Stringer, Individually and D/B/A CBS Farms v.*

*Curtis Scheffe and Jacqueline Scheffe*, Cause No. 4905H, in the 69th District Court, Hartley County, Texas; (c) *Charles Blake Stringer v. Out-Back Pool & Spa, LLC and Gary Roger Mayfield*, Cause No. 69,544-A, in the 47th District Court, Randall County, Texas; (d) *Crooked Gate Inc., et al. v. Syngenta Corporation, et al.*, Case No. 27-CV-15-16994, in the District Court, Fourth Judicial District, County of Hennepin, State of Minnesota; and (e) *Ulic Martin Henehan III, et al. v. Syngenta Corporation, et al.*, Case No. 27-CV-16-16681, in the District Court, Fourth Judicial District, County of Hennepin, State of Minnesota.

1.68    "Person" means any individual, any type of incorporated or registered business or nonprofit entity, including any corporation, general partnership, limited partnership, limited liability company, limited liability partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, governmental entity or unit, or any political subdivision thereof, or other entity.

1.69    "Petition Date" means (a) December 14, 2016 when used in reference to SFI's bankruptcy case, December 14, 2016 being the date on which SFI's bankruptcy case was filed, and (b) December 20, 2016 when used in reference to Stringer's bankruptcy case, December 20, 2016 being the date on which Stringer's bankruptcy case was filed.

1.70    "Plan" means this First Amended Joint Plan of Reorganization of Stringer Farms, Inc. and Charles Blake Stringer, either in its present form or as it may be altered, amended, or modified from time to time.

1.71    "Plan Documents" means the documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court as specified in Article I(D) hereof.

1.72    "Plan Proponents" means the Debtors.

1.73    "Plan Rate" means a rate of interest of three percent (3%) per annum.

1.74    "Priority Claim" means a Claim, other than a Claim for an Administrative Expense, to the extent that such Clam is entitled to priority of payment under section 507(a) of the Bankruptcy Code.

1.75    "Priority Non-Tax Claim" means a Priority Claim other than a Priority Tax Claim.

1.76    "Priority Tax Claim" means a Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

1.77    "Pro Rata Share" means, with respect to an Allowed Claim, the proportion that the amount of such Allowed Claim bears to the sum of all Allowed Claims in the Class in which such Allowed Claim is classified.

1.78    "Professional" means a Person employed pursuant to an order of the Bankruptcy Court in accordance with sections 327 and 1103 of the Bankruptcy Code or who is entitled to compensation or reimbursement pursuant to sections 503(b)(3)(D) or 506(b) of the Bankruptcy Code.

1.79    "Property Tax Claim" means a Claim for Property Taxes.

1.80    "Property Taxes" means such taxes assessed by any Taxing Authority against any property of the Debtors based on the value thereof, as allowed by applicable state and local law.

1.81    "Rejection Claim" means a Claim arising under section 502(g) of the Bankruptcy Code as a consequence of the rejection of any Executory Contract.

1.82    "Reorganized Debtors" means SFI and Stringer, acting from and after the Effective Date.

1.83    "Replacement Lien Real Estate" means that certain parcel of improved real property consisting of approximately 2.773 acres out of Survey 198, Block 44, H&TC Railroad Company Survey, Moore County, Texas, with respect to which Wells Fargo was granted a replacement Lien pursuant to the terms of that certain *Agreed Interim Order Authorizing Use of Cash Collateral, Providing Adequate Protection and Granting Related Relief* entered by the Bankruptcy Court in the Chapter 11 Cases on December 23, 2016.

1.84    "Residual Equipment" means the equipment owned by the Debtors which was not financed by, and is not encumbered by any Lien in favor of, either Caterpillar or WFFLI.

1.85    "Sandton" means Sandton Credit Solutions Master Fund IV, LP.

1.86    "Sandton DIP Loan Claim" means the Secured Claim held by Sandton arising from its loan and financial accommodations to the Debtors under the DIP Loan Documents, which shall be deemed an Allowed Claim.

1.87    "Schedules" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules or statements have been or may be subsequently amended.

1.88    "Secured Claim" means (a) a Claim secured by a Lien against an Asset, to the extent such Lien is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and which is duly Allowed, but only to the extent of the value of the holder's interest in the Collateral that secures payment of the Claim; (b) a Claim against the Debtors that is subject to a valid right of recoupment or setoff under Section 553 of the Bankruptcy Code, but only to the extent of the Allowed amount subject to recoupment or setoff as provided in Section 506(a) of the Bankruptcy Code; and (c) a Claim deemed or treated under this Plan as a Secured Claim; provided, that, to the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, the unsecured portion of such Claim shall be treated as an Unsecured (General) Claim unless, in any such case the Class of which the Claim is a part makes a valid and timely election in accordance with Section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent Allowed.

1.89    "Secured Creditor" means the holder of a Secured Claim.

1.90    "Secured Tax Claim" means any ad valorem tax Claim that arises or is deemed to have arisen on or before the Petition Date, irrespective of the date on which such Claim is assessed or due.

1.91 "SFI" means Stringer Farms, Inc., a Texas corporation, which is the debtor and debtor-in-possession in the chapter 11 bankruptcy case in the Bankruptcy Court identified as Case No. 16-44821-rfn11.

1.92 "SFI Farmland" means all real estate and fixtures thereon owned by SFI that are either used in connection with SFI's farming operations or subject to a CRP Contract, together with any other rights or interests owned by SFI associated with such real estate, including but not limited to any and all water, wind and mineral interests and/or rights.

1.93 "Stringer" means Charles Blake Stringer, an individual, who is the debtor and debtor-in-possession in the chapter 11 bankruptcy case in the Bankruptcy Court identified as Case No. 16-44871-rfn11.

1.94 "Stringer Farmland" means all real estate and fixtures thereon owned by Stringer that are either used in connection with Stringer's farming operations or subject to a CRP Contract, together with any other rights or interests owned by Stringer associated with such real estate, including but not limited to any and all water, wind and mineral interests and/or rights. For avoidance of doubt, Stringer Farmland shall not include any of the following three parcels of real estate listed in Stringer's Schedules: (a) Lake Tanglewood Lot 006 Block 0015 Amarillo, Texas; (b) Lake Tanglewood Lot 001 Block 0028 Amarillo, Texas; and (c) Lake Tanglewood Lot 002 Block 0028 Amarillo, Texas.

1.95 "Substantial Consummation" means the day on which a Creditor first receives a Distribution of any kind under the terms and provisions of this Plan.

1.96 "Taxing Authority" shall include the State of Texas or any subdivision thereof, including without limitation any political subdivision of the State of Texas assessing ad valorem taxes against any of the Assets.

1.97 "Trust Committee" means the oversight committee in regard to the Liquidating Trust described in Article VII of the Plan.

1.98 "Trust Reserve" means a fund reserved for the payment of authorized costs of administration and operation of the Liquidating Trust in an amount not to exceed $200,000.00, but subject to replenishment from time to time.

1.99 "Unclaimed Property" means any Cash, Distribution, payment or any other property of the Debtors unclaimed for a period of ninety (90) days after the applicable Initial Distribution Date.

1.100 "Unsecured (General) Claim" means any Claim against the Debtors that is not an Administrative Expense, a Priority Claim, or a Secured Claim.

1.101 "Valuation Motion" means a motion filed by a Debtor or a Secured Creditor seeking to obtain a determination by the Bankruptcy Court of the value of Collateral.

1.102 "Wells Fargo" means Wells Fargo Bank, National Association.

1.103 "Wells Fargo Notes" means, collectively, (a) that certain Promissory Note dated June 1, 2016 executed by Stringer in favor of Wells Fargo in the original principal amount of $2,000,000.00; (b) that certain Promissory Note dated June 1, 2016 executed by Stringer in favor of Wells Fargo in the original principal amount of $2,200,000.00; and (c) that certain

Promissory Note dated June 2, 2016 executed by Stringer in favor of Wells Fargo in the original principal amount of $5,000,000.00.

1.104 "Wells Fargo Secured Claims" means the Claims of Wells Fargo evidenced by and based on the Wells Fargo Notes, Card Agreement and related loan documents, which shall be Allowed as Secured Claims under the Plan in the aggregate amount of $2,125,000.00.

1.105 "WFFLI" means Wells Fargo Financial Leasing, Inc.

1.106 "WFFLI Finance Agreements" means, collectively, (a) that certain Installment Sale Contract and Security Agreement dated November 24, 2014 between Stringer, as buyer, and AG H2O Solutions LLC, as seller, which was assigned to WFFLI by AG H20 Solutions LLC; (b) that certain Installment Sale Contract and Security Agreement dated July 17, 2015 between Stringer, as buyer, and Green Country Equipment LLC, as seller, which was assigned to WFFLI by Green Country Equipment LLC; and (c) that certain Installment Sale Contract and Security Agreement dated July 30, 2015 between Stringer, as buyer, and Green Country Equipment LLC, as seller, which was assigned to WFFLI by Green Country Equipment.

1.107 "WFFLI Secured Claims" means the Claims of WFFLI evidenced by and based on the WFFLI Finance Agreements and related loan documents, which shall be Allowed as Secured Claims under the Plan in the aggregate amount of $941,124.01.

1.108 "Wind Leases" means, together, (a) that certain Wind Energy Lease Agreement dated January 5, 2016 between Stringer and Swinford Wind, LLC, as amended; and (b) that certain Wind Energy Lease Agreement dated January 6, 2016 between SFI and Swinford Wind, LLC.

1.109 "Zions" means Zions First National Bank c/o Zions Agricultural Finance as Servicer for U.S. Bank National Association as Custodian/Trustee for Federal Agricultural Mortgage Corporation.

1.110 "Zions Note 1" means that certain Promissory Note dated March 5, 2015 executed by Stringer and cosigned by SFI in favor of Zions in the original principal amount of $8,480,500.00 and which was assigned by Zions First National Bank to U.S. Bank National Association, as Custodian/Trustee for Federal Agricultural Mortgage Corporation on or about March 5, 2015.

1.111 "Zions Note 2" means that certain Promissory Note dated March 5, 2015 executed by SFI and cosigned by Stringer in favor of Zions in the original principal amount of $3,745,000.00 and which was assigned by Zions First National Bank to U.S. Bank National Association, as Custodian/Trustee for Federal Agricultural Mortgage Corporation on or about March 5, 2015.

1.112 "Zions Secured Claims" means the Secured Claims evidenced by and based on Zions Note 1 and Zions Note 2.

**B.** **Interpretation**. Unless otherwise specified, all section, Article and exhibit references in this Plan are to the respective section in, Article of, or exhibit to, the Plan as the same may be amended, waived, or modified from time to time. The headings in the Plan are for convenience and reference only and shall not limit or otherwise affect the provisions hereof. The rules of construction set forth in Section 102 of the Bankruptcy Code, other than Section 102(5) of the

Bankruptcy Code, apply to construction of this Plan. For the purposes of construction of this Plan, "or" is disjunctive.

**C.** **Other Terms**. The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. References herein to "after notice and hearing" or other similar language shall have the same meaning as in section 102(1) of the Bankruptcy Code. Otherwise, terms used herein that are not specifically defined herein shall have the meaning ascribed to those terms, if any, in the Bankruptcy Code.

**D.** **Exhibits and Plan Documents**. All Exhibits to the Plan and all Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein. Any Plan Documents may be filed with the Clerk of the Bankruptcy Court prior to the commencement of the Confirmation Hearing. Holders of Claims and Interests may obtain a copy of the Plan Documents, once filed, by a written request sent to the following address: Forshey & Prostok, LLP, 777 Main Street, Suite 1290, Fort Worth, Texas 76102, Attention: Linda Breedlove; Fax number (817) 877-4151; email: lbreedlove@forsheyprostok.com.

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.1     The following is a designation of the Classes of Claims and Interests under this Plan. Administrative Expenses and Priority Claims of the kinds specified in sections 507(a)(2), 507(a)(3) and 507(a)(8) of the Bankruptcy Code have not been classified, are excluded from the following Classes in accordance with section 1123(a)(1) of the Bankruptcy Code, and their treatment is set forth in Article III below. A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class. A Claim is included in a particular Class only to the extent that the Claim is an Allowed Claim in that Class.

2.2     Claims and Interests. Allowed Claims against the Debtors and Interests owned by Stringer are classified under this Plan as follows:

(a)     Class 1 – Zions Secured Claims

(b)     Class 2 – Wells Fargo Secured Claims

(c)     Class 3 – WFFLI Secured Claims

(d)     Class 4 – Caterpillar Secured Claim

(e)     Class 5 – FNMA Secured Claim

(f)     Class 6 – Ally Bank Secured Claim

(g)     Class 7 – Secured Property Tax Claims

(h)     Class 8 – Other Secured Claims

(i)     Class 9 – Unsecured (General) Claims

(j)     Class 10 – Interests owned by Stringer

2.3     Impaired Classes of Claims and Interests.  Classes 1, 2, 3, 4, 8 and 9 are impaired under the Plan and entitled to vote on the Plan.  All other Classes are unimpaired and shall be deemed to have accepted the Plan.

2.4     Impairment or Classification Controversies.  If a controversy arises as to the classification of any Claim or Interest, or as to whether any Class of Claims or Interests is impaired under the Plan, the Bankruptcy Court shall determine such controversy as a part of the confirmation process.

## ARTICLE III.
## TREATMENT OF ADMINISTRATIVE EXPENSES AND CERTAIN PRIORITY CLAIMS

3.1     Administrative Expenses.  Administrative Expenses shall be treated as follows:

(a)     Each holder of an Allowed Administrative Expense shall receive, at the Estate Representative's option, (A) the amount of such holder's Allowed Administrative Expense in one cash payment on the later of the Effective Date or the tenth (10th) Business Day after such Administrative Expense becomes an Allowed Administrative Expense, (B) the amount of such holder's Allowed Administrative Expense in accordance with the ordinary business terms of such expense or cost, or (C) such other treatment as may be agreed to in writing by such Administrative Expense Creditor and the applicable Debtor or Estate Representative, or as ordered by the Bankruptcy Court.

(b)     Unless the Bankruptcy Court orders to the contrary or the applicable Debtor or Estate Representative agrees to the contrary in writing, the holder of a Claim for an Administrative Expense, other than such a Claim by a Professional, a liability incurred and paid in the ordinary course of business by the Debtors, or an Allowed Administrative Expense, shall file with the Bankruptcy Court and serve upon the Estate Representative and its counsel a written notice of such Claim for an Administrative Expense within thirty (30) days after the Effective Date.  Such notice shall include at a minimum: (A) the name, address, telephone number and fax number (if applicable) of the holder of such Claim, (B) the amount of such Claim, and (C) the basis of such Claim.  **Failure to timely and properly file and serve such notice shall result in such Claim for an Administrative Expense being forever barred and discharged.**  Notwithstanding the foregoing, a Taxing Authority shall not be required to file any notice of a Claim for Administrative Expense or any other request for payment with respect to any Property Taxes assessed against the Debtors for the year 2017 and subsequent years and a Taxing Authority shall retain the Liens securing all amounts owed for Property Taxes for postpetition tax years, including all penalties and interest that may accrue, until all such amounts have been paid in full.

(c)     A Claim for an Administrative Expense, for which a proper notice was filed and served under subsection 3.1(b) above, shall become an Allowed Administrative Expense if no Objection is filed within thirty (30) days of the filing and service of such notice.  If a timely Objection is filed, the Claim shall become an Allowed Administrative Expense only to the extent allowed by a Final Order.

(d)     The procedures set forth in subsections 3.1(b) and (c) above shall not apply to Professionals, who shall each file and submit a final fee application to the Bankruptcy Court no later than sixty (60) days after the Effective Date.  A Claim for Administrative Expense by a Professional in respect of which a final fee application has been properly filed and served shall become an Allowed Administrative Expense only to the extent allowed by Final Order and, if so Allowed, shall be paid in accordance with subsection 3.1(a) above.  Professional fees and

expenses to any Professional incurred on or after the Effective Date may be paid without necessity of application to or order by the Court.

(v)     This section 3.1 shall not apply to expenses incurred by the Debtors in the ordinary course of their businesses after the Petition Date, or by the Liquidating Trustee on or after the Liquidating Trust Effective Date.  The Debtors, or Liquidating Trustee, as applicable, may pay such expenses in the ordinary course as agreed.

3.2     Priority Tax Claims.

(a)     **If the Liquidating Trust is _not_ required to be established under this Plan**: Any Allowed Priority Tax Claim shall be paid and treated as follows (except to the extent that the holder of a Priority Tax Claim and the Debtors or Reorganized Debtors agree otherwise in writing):

(i)     Interest on each Allowed Priority Tax Claim shall accrue as follows: (A) for the postpetition period beginning on the date any portion of the tax underlying the Allowed Priority Tax Claim was, became or becomes delinquent under applicable law, and to the extent of such delinquency, and continuing through the Effective Date, interest shall accrue at the applicable statutory rate of interest determined under nonbankruptcy law in compliance with section 511 of the Bankruptcy Code; and (B) for the period beginning on the day after the Effective Date and continuing through the day on which such Allowed Priority Tax Claim is paid in full, interest shall accrue on the unpaid tax at the applicable statutory rate of interest determined under nonbankruptcy law in compliance with sections 511 and 1129 of the Bankruptcy Code, determined during the month in which the Confirmation Date occurs.

(ii)     Any Allowed Priority Tax Claim shall be paid in full by the Reorganized Debtor on the Initial Distribution Date.

(b)     **If the Liquidating Trust _is_ required to be established under this Plan**: Each Holder of an Allowed Priority Tax Claim, at the Liquidating Trustee's option, shall receive (i) the amount of such holder's Allowed Claim in one Cash payment on or before the Initial Distribution Date; (ii) the amount of such holder's Allowed Claim, in equal annual Cash payments on each anniversary of the Initial Distribution Date with interest thereon at the non-default statutory rate applicable to the tax in question, without penalties, until the last anniversary of the Initial Distribution Date that precedes the fifth (5th) anniversary of the Petition Date; or (iii) such other treatment as may be agreed to in writing by the holder of the Priority Tax Claim and the Liquidating Trustee.

3.3     Sandton DIP Loan Claim.

(a)     Except to the extent that Sandton agrees to less favorable treatment in full and final satisfaction, settlement, release, and discharge of, and in exchange for, the Sandton DIP Loan Claim, the Sandton DIP Loan Claim shall be (i) deemed to be Allowed in the full amount due and owing under the DIP Loan Documents and (ii) paid in full in Cash after the Effective Date and promptly after the Exit Loan has fully closed and funded, but in no event later than January 31, 2018.

(b)     If the Liquidating Trust is required to be established under this Plan, the Liquidating Trustee shall use the Debtors' 2017 harvest proceeds and the proceeds of an Exit Loan of up to $4,000,000.00 to repay the Sandton DIP Loan Claim.

3.4     Trustee's Fees.  The Estate Representative shall pay the U.S. Trustee's quarterly fees incurred pursuant to 28 U.S.C., section 1930(a)(6).  Any fees due as of the Confirmation Date or that become due after the Confirmation Date, but prior to the Effective Date, shall be paid in full by the Estate Representative.  After the Effective Date, the Estate Representative shall pay quarterly fees as they accrue until final decrees are entered and the Chapter 11 Cases are closed.  The Estate Representative shall file with the Bankruptcy Court and serve on the U.S. Trustee quarterly financial reports for each quarter, or portion thereof, that the Chapter 11 Cases remain open.

## ARTICLE IV.
## TREATMENT OF CLAIMS AND INTERESTS

4.1     Class 1 – Zions Secured Claims.

(a)     **If the Liquidating Trust is not required to be established under this Plan**: The Zions Secured Claims shall be paid and treated as follows:

(i)     The Zions Secured Claim based on Zions Note 1 shall be paid and treated as follows:

(A)     The Zions Secured Claim based on Zions Note 1 shall bear interest from and after Stringer's Petition Date through the Effective Date at the non-default contract rate of interest as set forth and calculated in Zions Note 1.

(B)     The Zions Secured Claim based on Zions Note 1 shall bear interest from and after the Effective Date at the non-default contract rate of interest as set forth and calculated in Zions Note 1.

(C)     The Allowed amount of the Zions Secured Claim based on Zions Note 1 as of the Effective Date, which shall include all unpaid principal, accrued interest and Collection Costs, to the extent Allowed, shall be paid in full as follows: the Reorganized Debtors shall make semi-annual installment payments in substantially equal amounts including both principal and interest.  The first such semi-annual installment payment shall be due on November 1, 2018.  Thereafter, semi-annual installment payments shall be due on April 1 and October 1 of each year, with the final installment payment being due and payable on April 1, 2045.

(D)     The holder of the Zions Secured Claim based on Zions Note 1 shall retain its Liens on its Collateral securing payment of Zions Note 1 until the Zions Secured Claim based on Zions Note 1 is paid in full and such Liens shall be subordinate only to: (1) any Liens securing payment of Property Taxes assessed against such Collateral, to the extent that applicable nonbankruptcy law grants priority to such Liens; and (2) the Liens granted to any Exit Lender to secure repayment of the Exit Loan.

(E)     All Distributions required under this Plan on account of Zions Note 1 shall be made by the Reorganized Debtors.

(ii)     The Zions Secured Claim based on Zions Note 2 shall be paid and treated as follows:

(A)      The Zions Secured Claim based on Zions Note 2 shall bear interest from and after SFI's Petition Date through the Effective Date at the non-default contract rate of interest as set forth and calculated in Zions Note 2.

(B)      The Zions Secured Claim based on Zions Note 2 shall bear interest from and after the Effective Date at the non-default contract rate of interest as set forth and calculated in Zions Note 2.

(C)      The Allowed amount of the Zions Secured Claim based on Zions Note 2 as of the Effective Date, which shall include all unpaid principal, accrued interest and Collection Costs, to the extent Allowed, shall be paid in full as follows: (1) beginning with an installment payment on July 1, 2018, the Reorganized Debtors shall make semi-annual installment payments of accrued interest only on January 1 and July 1 of each year, with the last such semi-annual installment payment of accrued interest only being due and payable on July 1, 2020; and (2) beginning with an installment payment on January 1, 2021, the Reorganized Debtors shall make semi-annual installment payments in substantially equal amounts including both principal and interest on January 1 and July 1 of each year, with the last such semi-annual installment payment being due and payable on July 1, 2045.

(D)      The holder of the Zions Secured Claim based on Zions Note 2 shall retain its Liens on its Collateral securing payment of Zions Note 2 until the Zions Secured Claim based on Zions Note 2 is paid in full and such Liens shall be subordinate only to: (1) any Liens securing payment of Property Taxes assessed against such Collateral, to the extent that applicable nonbankruptcy law grants priority to such Liens; and (2) the Liens granted to any Exit Lender to secure repayment of the Exit Loan.

(E)      All Distributions required under this Plan on account of Zions Note 2 shall be made by the Reorganized Debtors.

(iii)      From and after the Effective Date, the Reorganized Debtors shall market for sale a portion or portions of the SFI Farmland and/or Stringer Farmland.  Notwithstanding anything to the contrary contained in this Plan, Zions will not be required to release its Lien in order to effectuate a sale of any of the SFI Farmland and/or Stringer Farmland unless it is satisfied that the sale price for the property being sold is fair and adequate.  In the event that Zions objects to the proposed sale price of any portion of its Collateral as not being fair and equitable, the Bankruptcy Court shall retain jurisdiction to determine whether or not the proposed sale price is fair and equitable and to require Zions to release its Lien on the subject Collateral if the Bankruptcy Court determines, after notice and hearing, that the proposed sale price is fair and equitable.  Unless otherwise agreed in writing between the Reorganized Debtors, Zions and the Exit Lender: (A) the first net proceeds of any such sale(s) of SFI Farmland and/or Stringer Farmland shall be paid to the Exit Lender to reduce the outstanding balance of the Exit Loan until the Exit Loan has been fully repaid; (B) any net sale proceeds remaining after the Exit Loan has been fully repaid shall be paid to Zions to reduce the outstanding principal balance of Zions Note 1; and (C) any net sale proceeds remaining after all indebtedness owing under Zions Note 1 has been paid in full shall be paid to Zions to reduce the outstanding principal balance of Zions Note 2.  By no later than 24 months after the Effective Date, the Reorganized Debtors shall fully repay the Exit Loan so that Zions' Liens shall then constitute first priority liens on the SFI Farmland and Stringer Farmland then owned by the Reorganized Debtors, subordinate only to any statutory Liens securing payment of ad valorem taxes assessed against such SFI Farmland and Stringer Farmland.

(iv)     As of the Effective Date, the Debtors, the Estates, the Reorganized Debtors and their respective predecessors, successors, assigns, and designees shall be deemed to irrevocably release, acquit and forever discharge Zions, and its predecessors, successors, assigns, agents, representatives, officers, directors, shareholders, employees, principals, members, managers, and lawyers (collectively, the "Zions Released Parties") of and from any and every Estate Claim, loss (whether consequential or direct), demand, liability, action or causes of action, damages, controversies, trespasses, and claims of any nature whatsoever, whether in law or in equity, whether known or unknown, whether asserted or unasserted, which the Debtors, the Estates, the Reorganized Debtors and their respective successors, assigns, or designees, have, ever had, or might have had, arising out of or in connection with, in whole or in part, any event, act, omission or transaction occurring from the beginning of time to the Effective Date, and relating in any way to the Debtors, the Estates or the Zions Released Parties; provided, however, nothing herein shall be deemed to release, discharge, affect or impair any obligation of the Zions Released Parties under this Plan.

(v)     If the Reorganized Debtors (A) fail to timely make any Distribution to Zions required under this Plan and, after receiving notice of such default in accordance with the terms of section 14.5 of this Plan, fail to cure such default within fifteen (15) days of the date the notice of default is mailed to the Reorganized Debtors, and/or (B) fail to fully repay the Exit Loan by no later than 24 months after the Effective Date, then Zions shall be immediately free to exercise its legal and contractual remedies with respect to its Collateral, including but not limited to posting its Collateral for foreclosure in accordance with the terms of applicable law and the contracts between Zions and the Debtors. Notwithstanding anything to the contrary contained in this Plan, the Reorganized Debtors are entitled to three (3) payment default notices for the remaining term of Zions Note 1 and Zions Note 2. Upon the fourth notice of default, the injunction under section 12.4 of this Plan shall immediately terminate as to Zions without further notice and Zions shall be permitted to immediately exercise its legal and contractual remedies with respect to its Collateral as provided herein. In the event that Zions takes any action following the occurrence of either condition (A) or (B) above, or upon the occurrence of a fourth payment default notice, the Debtors hereby waive, release and relinquish any and all rights to contest, in legal proceedings or otherwise, any lawful action taken by Zions which Zions is entitled to take pursuant to applicable law and the contracts between Zions and the Debtors, and the Debtors, as Reorganized Debtors, shall take no action, in any place or manner whatsoever, to impede or otherwise interfere with Zions' exercise of any lawful action which it is entitled to take by applicable law and the contracts between Zions and the Debtors. In the event that Zions takes any action following the occurrence of either condition (A) or (B) above and the Reorganized Debtors, or any other Person, seeks to challenge any such action, the Bankruptcy Court shall have and retain exclusive jurisdiction to hear and determine any such challenge. In the event of such a challenge, both Zions and the Person(s) challenging Zions' actions shall have an absolute right to move the Bankruptcy Court to reopen the Chapter 11 Cases so that such challenge may be submitted to and adjudicated by the Bankruptcy Court.

(vi)     In the event that any of the Reorganized Debtors, Dos Ex LP and/or Dos Ex LLC commence one or more new cases under any chapter of the Bankruptcy Code after the Effective Date (each a "Subsequent Bankruptcy"), the Debtors agree that Zions shall be entitled to immediate relief from the automatic stay in any such Subsequent Bankruptcy to exercise its legal and contractual remedies with respect to its Collateral, including the continuation of any exercise of such legal and contractual remedies initiated prior to the commencement of such Subsequent Bankruptcy, and none of the Reorganized Debtors, Dos Ex LP and Dos Ex LLC shall object to, contest or otherwise take any action in such Subsequent Bankruptcy to impede the entry of an order granting relief from the automatic stay to Zions.

(vii)     With the exception of the priming Liens that shall be granted to the Exit Lender providing the Exit Loan, neither the Debtors nor the Reorganized Debtors shall grant to any Person any Liens or security interests on Zions' Collateral that prime the Liens and security interests of Zions with respect to such Collateral.

(viii)     Until the Zions Secured Claims have been paid in full, Stringer shall not transfer, sell, convey or otherwise dispose of any Interest owned by Stringer in SFI unless Zions delivers to Stringer its prior written consent to any such transfer, sale, conveyance or other disposition.

(ix)     From and after the Effective Date, Zions shall continue to have the rights to access and inspect the books and records of the Reorganized Debtors to the full extent set forth in the relevant loan documents between Zions and the Debtors (the "Inspection Rights"). Furthermore, from and after the Effective Date, Zions shall have the same Inspection Rights with respect to the books and records of both Dos Ex LP and Dos Ex LLC.

(x)     Class 1 is impaired.

(b)     **If the Liquidating Trust is required to be established under this Plan**:  The Zions Secured Claims shall be paid and treated as follows:

(i)     Zions shall have an Allowed Secured Claim in the amount of $10,230,286.24, plus accrued interest at the non-default rate under its loan agreements from and after the Petition Date and its Collection Costs.

(ii)     Zions shall retain its Liens on all of its Collateral, consisting of farmland and the improvements and fixtures thereon, as set forth in its recorded deeds of trust.  The Liquidating Trustee shall be permitted to possess, market and sell Zions' Collateral for a period of 24 months from the Liquidating Trust Effective Date, after which Zions shall be permitted to exercise its legal and contractual remedies with respect to such Collateral. All sales of Zions' Collateral by the Liquidating Trustee shall satisfy at least one of the following conditions: (A) Zions shall have provided its prior written consent (which shall be deemed given if Zions does not respond within 20 days of notice of a proposed sale sent to its counsel of record or other designated address), (B) proposed to be sold for a price that is at least 90% of the appraised value of the tract as set forth in the appraisal report of Appraisal & Realty Consultants dated August 24, 2016, or (C) determined by the Bankruptcy Court to be for a fair and reasonable price.

(iii)     After satisfaction of any Exit Loan secured by the Collateral that arose from the payoff of the Sandton DIP Loan Claim and Allowed Claims for Property Taxes, and subject to funding or replenishment of the Trust Reserve, The Liquidating Trustee shall pay the net proceeds of sale of Zions' Collateral in satisfaction of Zions' Secured Claims, including accrued interest at the non-default rate under Zions' prepetition loan agreements and Collection Costs.

(iv)     The general release of Zions by the Debtors set forth in subsection 4.1(a)(iv) shall remain applicable.

4.2     Class 2 – Wells Fargo Secured Claims.

(a)     **If the Liquidating Trust is not required to be established under this Plan**: The Wells Fargo Secured Claims shall be paid and treated as follows:

(i)      The Wells Fargo Secured Claims shall constitute Allowed Secured Claims in the aggregate amount of $2,125,000.00 and shall bear interest from and after the Effective Date until paid in full at the Plan Rate.

(ii)      Wells Fargo shall retain its Liens on its Collateral (including without limitation the Replacement Lien Real Estate and the 50.32-acre tract on which it received a post-petition lien) until the Wells Fargo Secured Claims are paid in full.  In addition, as of the Effective Date, Wells Fargo shall be granted new Liens on all of the SFI Farmland and Stringer Farmland as additional security for repayment of the Allowed Wells Fargo Secured Claims (the "New Wells Fargo Liens").  The New Wells Fargo Liens shall be subordinate only to (A) any Liens securing payment of Property Taxes assessed against such Collateral, to the extent that applicable non-bankruptcy law grants priority to such Liens, (B) the Liens granted to any Exit Lender that provides the Exit Loan, and (C) the Liens securing repayment of the Zions Secured Claims.  On request of Wells Fargo, the Debtors shall promptly execute and deliver to Wells Fargo deeds of trust evidencing the New Wells Fargo Liens in form satisfactory to Wells Fargo and consistent with this Plan.

(iii)      From and after the Effective Date, Stringer shall market and sell the Replacement Lien Real Estate.  A sale of the Replacement Lien Real Estate shall satisfy at least one of the following conditions: (A) Wells Fargo shall have provided its prior written consent, (B) the proposed sale is for an aggregate price that is at least 90% of the appraised value of the Replacement Lien Real Estate as set forth in the most recent appraisal report obtained by Wells Fargo with respect to the Replacement Lien Real Estate, or (C) the proposed sale price is determined by the Bankruptcy Court to be for a fair and reasonable price.  All net proceeds of any sale of the Replacement Lien Real Estate shall be paid to Wells Fargo at the closing of such sale and applied to reduce the outstanding principal balance of the Allowed Wells Fargo Secured Claims. If the Replacement Lien Real Estate remains unsold 24 months after the Effective Date, Wells Fargo shall be permitted to exercise its legal and contractual remedies with respect to such Collateral, and any net proceeds from any disposition of such Collateral remaining after full satisfaction of any Allowed Secured Property Tax Claims secured by such Collateral shall be applied to reduce the outstanding principal balance of the Allowed Wells Fargo Secured Claims.

(iv)      Not later than the day prior to the Confirmation Hearing, the Debtors shall designate in writing to Wells Fargo which items of Residual Equipment are not necessary to the Reorganized Debtors' continued farming operations, and shall surrender such items to Wells Fargo promptly after the Effective Date.  Thereafter, Wells Fargo shall be free to exercise its legal and contractual remedies with respect to such Collateral, and any net proceeds from any disposition of such Collateral by Wells Fargo shall be applied to reduce the outstanding principal balance of the Allowed Wells Fargo Secured Claims.  From and after the Effective Date, the Debtors shall remain bound by the covenants in the prepetition security agreements with Wells Fargo that are not inconsistent with the terms of this Plan.

(v)      On the Effective Date, the Reorganized Debtors shall make a Distribution to Wells Fargo in the amount of $125,000.00.  The remaining $2,000,000.00 balance of the Allowed Wells Fargo Secured Claims as of the Effective Date shall be amortized over 120 months in substantially equal payments.  The Reorganized Debtors shall make annual installment payments to Wells Fargo based on such amortization on November 1 of each year, beginning with a first installment payment due on November 1, 2018.  Such annual installment payments shall continue until the earlier of: (A) the due date of an annual installment payment if, on such due date, the total remaining balance of all principal and accrued interest owing on account of the Allowed Wells Fargo Secured Claims is less than the installment payment

amount based on the above amortization, in which case the Reorganized Debtors shall make a final payment on such due date equal to the full remaining unpaid balance of all principal and accrued interest owing on account of the Allowed Wells Fargo Secured Claims, and (B) the first Business Day that is at least 84 months after the Effective Date, upon which date the Reorganized Debtors shall pay to Wells Fargo the full remaining unpaid balance of all principal and accrued interest owing on account of the Allowed Wells Fargo Secured Claims.

(vi)     The amount by which the total amount of Wells Fargo's Allowed Claims ($5,577,949.66) exceeds the amount of the Allowed Wells Fargo Secured Claims shall constitute a Class 9 Unsecured (General) Claim and shall be paid as set forth in subsection 4.9 of the Plan.

(vii)     As of the Effective Date, the Debtors, the Estates, the Reorganized Debtors and their respective predecessors, successors, assigns, and designees shall be deemed to irrevocably release, acquit and forever discharge Wells Fargo, and its predecessors, successors, assigns, agents, representatives, officers, directors, shareholders, employees, principals, members, managers, and lawyers (collectively, the "Wells Fargo Released Parties") of and from any and every Estate Claim, loss (whether consequential or direct), demand, liability, action or causes of action, damages, controversies, trespasses, and claims of any nature whatsoever, whether in law or in equity, whether known or unknown, whether asserted or unasserted, which the Debtors, the Estates, the Reorganized Debtors and their respective successors, assigns, or designees, have, ever had, or might have had, arising out of or in connection with, in whole or in part, any event, act, omission or transaction occurring from the beginning of time to the Effective Date, and relating in any way to the Debtors, the Estates or the Wells Fargo Released Parties; provided, however, nothing herein shall be deemed to release, discharge, affect or impair any obligation of the Wells Fargo Released Parties under this Plan.

(viii)     Class 2 is impaired.

(b)     **If the Liquidating Trust is required to be established under this Plan**: The Wells Fargo Secured Claims shall be paid and treated as follows:

(i)     Wells Fargo shall have an Allowed Secured Claim equal to the liquidation value of its personal property Collateral (consisting of the Debtors' personal property other than the equipment financed by Caterpillar and WFFLI) plus the sum of $219,304.62[1] secured by its real estate Collateral consisting of two (2) tracts of real estate totaling approximately 53 acres as described in its Agreed Order with the Debtors dated April 20, 2017.

---

[1] In June, 2017, the Debtors harvested a wheat crop financed by Wells Fargo for which they had previously agreed to provide Wells Fargo with a $43,000.00 Secured Claim as part of a $143,000.00 adequate protection lien against the 53 acre tracts. The Debtors had represented that the wheat crop was worth only $43,000.00 because it was not planted with the intent to harvest, but instead to use for cattle grazing or as a cover crop. Due to unexpected rainfall, the wheat recovered to a harvestable level after it was grazed. The Debtors then harvested and sold the wheat, receiving $173,399.88 in gross proceeds, of which they determined that $119,304.62 was net of expenses. Therefore, Wells Fargo's adequate protection lien against the 53 acre tracts has been increased to $219,304.62 from $143,000.00 to account for the difference in the value of the wheat crop ($119,304.62 - $43,000.00 = $76,304.62).

(ii)     Wells Fargo shall retain its Liens on all of its Collateral (including without limitation the Replacement Lien Real Estate and the 50.32-acre tract on which it received a post-petition lien).

(iii)     On the Liquidating Trust Effective Date, Wells Fargo's personal property Collateral shall be surrendered to it in partial satisfaction of its Secured Claims and Wells Fargo may proceed to repossess and dispose of or attach such Collateral in accordance with its legal and contractual remedies.  The Liquidating Trustee may dispose, collect, or liquidate of some or all of Wells Fargo's personal property Collateral with the consent of Wells Fargo.

(iv)     The Liquidating Trustee shall be permitted to possess, market and sell Wells Fargo's real property Collateral for a period of 24 months from the Liquidating Trust Effective Date, after which Wells Fargo shall be permitted to exercise its legal and contractual remedies with respect to such Collateral.  All sales of Wells Fargo's real property Collateral by the Liquidating Trustee shall satisfy at least one of the following conditions: (A) Wells Fargo shall have provided its prior written consent (which shall be deemed given if Wells Fargo does not respond within 20 days of notice of a proposed sale sent to its counsel of record or other designated address), (B) proposed to be sold for a price that is at least equal to Wells Fargo's $219,304.62 Allowed Secured Claim against such real property Collateral pursuant to the Agreed Order dated April 20, 2017, or (C) determined by the Bankruptcy Court to be for a fair and reasonable price.  Any proceeds from the sale of the real property Collateral in excess of Wells Fargo's $219,304.62 Allowed Secured Claim shall be available for distribution to Class 9 Creditors, subject to the Liquidating Trustee's costs of administration.

(v)     Wells Fargo shall be entitled to an Allowed Claim in Class 9 to the extent of any deficiency in its total Claim of $5,577,949.66 after application of the net proceeds of disposition of its Collateral.

(vi)     The general release of Wells Fargo by the Debtors set forth in subsection 4.2(a)(vii) shall remain applicable.

4.3     Class 3 – WFFLI Secured Claims.

(a)     **If the Liquidating Trust is not required to be established under this Plan:** The WFFLI Secured Claims shall be paid and treated as follows:

(i)     The WFFLI Secured Claims shall constitute Allowed Secured Claims in the aggregate amount of $941,124.01 and shall bear interest from and after the Effective Date until paid in full at the Plan Rate.

(ii)     WFFLI shall retain its Liens on its Collateral until the WFFLI Secured Claims are paid in full.

(iii)     Not later than the day prior to the Confirmation Hearing, the Debtors shall designate in writing to WFFLI which items of WFFLI's Collateral are not necessary to the Reorganized Debtors' continued farming operations, and shall surrender such items to WFFLI promptly after the Effective Date.  Thereafter, to the extent not already authorized by an agreed order lifting the automatic stay, WFFLI shall be free to exercise its legal and contractual remedies with respect to such Collateral, and any net proceeds from any disposition of such Collateral by WFFLI shall be applied to reduce the outstanding principal balance of the Allowed WFFLI Secured Claims.  From and after the Effective Date, the Debtors shall remain bound by

the covenants in their prepetition security agreements with WFFLI that are not inconsistent with the terms of this Plan.

(iv)     On the Effective Date, the Reorganized Debtors shall make a Distribution to WFFLI in the amount of $25,000.00. The remaining balance of the Allowed WFFLI Secured Claims as of the Effective Date shall be amortized over 120 months in substantially equal payments. The Reorganized Debtors shall make annual installment payments to WFFLI based on such amortization on November 1 of each year, beginning with a first installment payment due on November 1, 2018. Such annual installment payments shall continue until the earlier of: (A) the due date of an annual installment payment if, on such due date, the total remaining balance of all principal and accrued interest owing on account of the Allowed WFFLI Secured Claims is less than the installment payment amount based on the above amortization, in which case the Reorganized Debtors shall make a final payment on such due date equal to the full remaining unpaid balance of all principal and accrued interest owing on account of the Allowed WFFLI Secured Claims, and (B) the first Business Day that is at least 84 months after the Effective Date, upon which date the Reorganized Debtors shall pay to WFFLI the full remaining unpaid balance of all principal and accrued interest owing on account of the Allowed WFFLI Secured Claims.

(v)     The amount by which the total amount of WFFLI's Allowed Claims ($1,050,781.05) exceeds the amount of the Allowed WFFLI Secured Claims shall constitute a Class 9 Unsecured (General) Claim and shall be paid as set forth in subsection 4.9 of the Plan.

(vi)     As of the Effective Date, the Debtors, the Estates, the Reorganized Debtors and their respective predecessors, successors, assigns, and designees shall be deemed to irrevocably release, acquit and forever discharge WFFLI, and its predecessors, successors, assigns, agents, representatives, officers, directors, shareholders, employees, principals, members, managers, and lawyers (collectively, the "WFFLI Released Parties") of and from any and every Estate Claim, loss (whether consequential or direct), demand, liability, action or causes of action, damages, controversies, trespasses, and claims of any nature whatsoever, whether in law or in equity, whether known or unknown, whether asserted or unasserted, which the Debtors, the Estates, the Reorganized Debtors and their respective successors, assigns, or designees, have, ever had, or might have had, arising out of or in connection with, in whole or in part, any event, act, omission or transaction occurring from the beginning of time to the Effective Date, and relating in any way to the Debtors, the Estates or the WFFLI Released Parties; provided, however, nothing herein shall be deemed to release, discharge, affect or impair any obligation of the WFFLI Released Parties under this Plan.

(vii)     Class 3 is impaired.

(b)     **If the Liquidating Trust is required to be established under this Plan**: The WFFLI Secured Claims shall be paid and treated as follows:

(i)     WFFLI shall have an Allowed Secured Claim in the amount of $941,124.01, plus accrued interest at the non-default rate from and after the Petition Date and its Collection Costs.

(ii)     WFFLI shall retain its Liens on all of its Collateral, consisting of the Debtors' equipment that WFFLI financed.

(iii)     On the Liquidating Trust Effective Date, WFFLI's Collateral shall be surrendered to it in satisfaction of its Secured Claims and, to the extent not already authorized

by an agreed order lifting the automatic stay, WFFLI may proceed to repossess and dispose of such Collateral in accordance with its legal and contractual remedies.

(iv)     WFFLI shall be entitled to an Allowed Claim in Class 9 to the extent of any deficiency in its total loan-related Claim of $941,124.01 after application of the net proceeds of disposition of its Collateral.

(v)     The general release of WFFLI by the Debtors set forth in subsection 4.3(a)(vi) shall remain applicable.

4.4     Class 4 – Caterpillar Secured Claim.

(a)     **If the Liquidating Trust is not required to be established under this Plan**: The Caterpillar Secured Claim shall be paid and treated as follows:

(i)     The Caterpillar Secured Claim shall bear interest from and after the Effective Date until paid in full at the Plan Rate.

(ii)     The Caterpillar Secured Claim shall be amortized over 120 months in substantially equal payments. The Reorganized Debtors shall make annual installment payments to Caterpillar based on such amortization on November 1 of each year, beginning with a first installment payment due on November 1, 2018. Such annual installment payments shall continue until the first Business Day that is at least 84 months after the Effective Date, upon which date the Reorganized Debtors shall pay to Caterpillar the full remaining unpaid balance of all principal and accrued interest owing on account of the Allowed Caterpillar Secured Claim.

(iii)     Caterpillar shall retain its Lien on its Collateral until the Caterpillar Secured Claim is paid in full.

(iv)     The amount, if any, by which the total amount of Caterpillar's Allowed Claim exceeds the amount of the Allowed Caterpillar Secured Claim shall constitute a Class 9 Unsecured (General) Claim and shall be paid as set forth in subsection 4.9 herein.

(v)     Class 4 is impaired.

(b)     **If the Liquidating Trust is required to be established under this Plan**: The Caterpillar Secured Claim shall be paid and treated as follows:

(i)     Caterpillar shall have an Allowed Secured Claim in the amount of $23,325.62.

(ii)     Caterpillar shall retain its Liens on all of its Collateral, consisting of the Debtors' equipment that Caterpillar financed.

(iii)     On the Liquidating Trust Effective Date, Caterpillar's Collateral shall be surrendered to it in satisfaction of its Secured Claim and, to the extent not already authorized by an agreed order lifting the automatic stay, Caterpillar may proceed to repossess and dispose of such Collateral in accordance with its legal and contractual remedies.

(iv)     Caterpillar shall be entitled to an Allowed Claim in Class 9 to the extent of any deficiency in its total Claim after application of the net proceeds of disposition of its Collateral.

(v)     No Estate Claims on behalf of the Debtors against this Creditor shall be preserved under this Plan for prosecution by the Liquidating Trust.

4.5     Class 5 – FNMA Secured Claim.

(a)     **If the Liquidating Trust is not required to be established under this Plan**: The FNMA Secured Claim shall be paid and treated as follows:

(i)     On the Effective Date, Stringer shall pay to FNMA any and all amounts past due and owing pursuant to the terms of the relevant loan documents.

(ii)     From and after the Effective Date, Stringer shall make payments to FNMA in the amounts specified, and in accordance with the terms of, the relevant loan documents until FNMA's Allowed Claim has been paid in full.

(iii)     FNMA shall retain its Liens on its Collateral until FNMA's Allowed Claim has been paid in full.

(iv)     Class 5 is unimpaired.

(b)     **If the Liquidating Trust is required to be established under this Plan**:  The FNMA Secured Claim shall be paid and treated as follows:

(i)     FNMA shall have an Allowed Secured Claim in the amount of $405,783.79, less any principal reductions since the Petition Date.

(ii)     FNMA shall retain its lien on its Collateral, which consists of Stringer's exempt homestead real property in Amarillo, Texas.

(iii)     On the Liquidating Trust Effective Date, FNMA's Collateral shall be surrendered to it in satisfaction of its Secured Claim and FNMA may proceed to repossess and dispose of such Collateral in accordance with its legal and contractual remedies; provided, that on or before 20 days following the Liquidating Trust Effective Date, Stringer shall be entitled to reaffirm his prepetition loan obligations to FNMA and to continue to occupy his homestead by filing a notice of such election in the Bankruptcy Court and curing any arrearage to FNMA.

(iv)     FNMA shall not participate in any distributions to Class 9 under the Plan.

4.6     Class 6 – Ally Bank Secured Claim.

(a)     **If the Liquidating Trust is not required to be established under this Plan**: The Ally Bank Secured Claim shall be paid and treated as follows:

(i)     On the Effective Date, Stringer shall pay to Ally Bank any and all amounts past due and owing pursuant to the terms of the relevant loan documents.

(ii)     From and after the Effective Date, Stringer shall make payments to Ally Bank in the amounts specified, and in accordance with the terms of, the relevant loan documents until Ally Bank's Allowed Claim has been paid in full.

(iii)     Ally Bank shall retain its Lien on its Collateral until Ally Bank's Allowed Claim has been paid in full.

(iv)      Class 6 is unimpaired.

(b)      **If the Liquidating Trust <u>is</u> required to be established under this Plan**:  The Ally Bank Secured Claim shall be paid and treated as follows:

(i)      Ally Bank shall have an Allowed Secured Claim in the amount of $41,245.07, less any principal reductions since the Petition Date.

(ii)      Ally Bank shall retain its lien on its Collateral, which consists of a 2015 GMC Sierra truck claimed as exempt property by Stringer.

(iii)      On the Liquidating Trust Effective Date, Ally Bank's Collateral shall be surrendered to it in satisfaction of its Secured Claim and Ally Bank may proceed to repossess and dispose of such Collateral in accordance with its legal and contractual remedies; provided, that on or before 20 days following the Liquidating Trust Effective Date, Stringer shall be entitled to reaffirm his prepetition loan obligations to Ally Bank by filing a notice of such election in the Bankruptcy Court and curing any arrearage to Ally Bank.

(iv)      Ally Bank shall not participate in any distributions to Class 9 under the Plan.

4.7      <u>Class 7 – Secured Property Tax Claims</u>.

(a)      **If the Liquidating Trust is <u>not</u> required to be established under this Plan**: Any Allowed Secured Property Tax Claim shall be paid and treated as follows (except to the extent that the holder of a Secured Property Tax Claim and the Debtors or Reorganized Debtors agree otherwise in writing):

(i)      Interest on each Allowed Secured Property Tax Claim shall accrue as follows: (A) for the postpetition period beginning on the date any portion of the tax underlying the Allowed Secured Property Tax Claim was, became or becomes delinquent under state law, and to the extent of such delinquency, and continuing through the Effective Date, interest shall accrue at the applicable statutory rate of interest determined under nonbankruptcy law in compliance with section 511 of the Bankruptcy Code; and (B) for the period beginning on the day after the Effective Date and continuing through the day on which such Allowed Secured Property Tax Claim is paid in full, interest shall accrue on the unpaid tax at the applicable statutory rate of interest determined under nonbankruptcy law in compliance with sections 511 and 1129 of the Bankruptcy Code, determined during the month in which the Confirmation Date occurs.

(ii)      Any Allowed Secured Property Tax Claim shall be paid in full by the Reorganized Debtors on the Initial Distribution Date.

(iii)      Each holder of an Allowed Secured Property Tax Claim shall retain its Lien on its Collateral until its Allowed Secured Property Tax Claim is paid in full.

(iv)      Class 7 is unimpaired.

(b)      **If the Liquidating Trust <u>is</u> required to be established under this Plan**:  Any Allowed Secured Property Tax Claim shall be paid and treated as follows (except to the extent that the holder of a Secured Property Tax Claim and the Liquidating Trustee agree otherwise in writing):

(i)     The holders of Allowed Secured Claims for Property Taxes shall retain their liens on their respective Collateral.

(ii)     Class 7 Claims shall be amortized with 12% interest using a 60-month amortization and paid monthly, commencing on the 15th day of the first calendar month following the Liquidating Trust Effective Date, and continuing each month until the 25th month, at which time the remaining balance of such Claims shall be paid in full in satisfaction thereof. Notwithstanding the foregoing, within 30 days of the sale by the Liquidating Trustee of Collateral securing a Class 7 Claim, such Claim shall be paid in full with the first net proceeds of such sale. No Collateral subject to a Class 7 holder's lien shall be sold by the Liquidating Trustee unless the proposed sale price exceeds the remaining Allowed amount of such Secured Claim.

(iii)     To the extent that a Class 7 Claim has not been satisfied as provided hereinabove by the date of the 25th monthly payment, the holder thereof shall be permitted to exercise its legal and contractual remedies with respect to such Collateral.

(iv)     Secured Claims for Property Taxes that are secured by liens on Stringer's Exempt Property surrendered to him shall not be entitled to payment under this Class, but shall retain their Liens and remedies with respect to such Exempt Property.

4.8     Class 8 – Other Secured Claims.

(a)     **If the Liquidating Trust is not required to be established under this Plan:** Secured Claims, other than the Sandton DIP Loan Claim and Secured Claims included in Classes 1, 2, 3, 4, 5, 6 and 7 shall be paid and treated as follows:

(i)     Each holder of a Secured Claim not included in Classes 1, 2, 3, 4, 5, 6 and 7 shall be placed within a separate subclass of this Class 8.  Each such Class 8 Claim shall, for purposes of accepting or rejecting the Plan and for receiving Distributions under the Plan, be treated as though in a separate Class.  A Claim shall be treated as a Class 8 Secured Claim only to the extent of the greater of the amount of the Allowed Claim or the value of the Collateral securing such Claim as determined by the Bankruptcy Court. As to each holder of a Class 8 Secured Claim, the Reorganized Debtors may either (A) object to the Claim, (B) return the Collateral in full satisfaction of such Secured Claim, (C) pay cash in an amount equivalent to the lesser of the value of the Collateral or the full amount of the Secured Claim, (D) allow the Secured Claimant to offset in satisfaction of its Claim, (E) file a Valuation Motion to determine the value of the Claimant's Collateral, or (F) provide such other treatment as may be agreed to in writing by such holder of the Secured Claim and the Reorganized Debtors.  In the event that any such Claimant's total Allowed Claim exceeds the value of the Collateral, any such excess (exclusive of postpetition interest, fees or other charges that such Secured Creditor could otherwise assert) shall constitute an Unsecured (General) Claim for purposes of this Plan, unless such Claimant has elected treatment pursuant to section 1111(b) of the Bankruptcy Code and in accordance with Bankruptcy Rule 3014.  The Reorganized Debtors shall, at their sole discretion, determine whether the treatment afforded will be a return of the Collateral or payment in cash.  Any Lien held by any holder of a Class 8 Secured Claim against the Assets shall be deemed released as of the Effective Date.

(ii)     Class 8 is impaired.

(b)     **If the Liquidating Trust is required to be established under this Plan:** Secured Claims, other than the Sandton DIP Loan Claim and Secured Claims included in Classes 1, 2, 3, 4, 5, 6 and 7 shall be paid and treated as follows:

(i)     To the extent that such holder's Lien or security interest is perfected under applicable law, secures an Allowed Claim, and does not involve the Debtors' real estate, such holder shall retain its Lien on its Collateral, which shall be surrendered to it on the Liquidating Trust Effective Date (subject to any senior Liens) in satisfaction of its Secured Claim, and such holder may proceed to repossess and dispose of its Collateral in accordance with its legal and contractual remedies.

(ii)     To the extent that such holder's Lien secures an Allowed Claim and is perfected upon the Debtors' real estate, such holder shall retain its Lien on its Collateral and the Liquidating Trustee shall be permitted to possess, market and sell such real estate Collateral for a period of 24 months from the Liquidating Trust Effective Date, after which the holder shall be permitted to exercise its legal and contractual remedies with respect to such Collateral. All sales of such holder's Collateral by the Liquidating Trustee shall satisfy at least one of the following conditions: (a) the holder shall have provided its prior written consent (which shall be deemed given if the holder does not respond within 20 days of notice of a proposed sale sent to it via certified U.S. mail), (b) proposed to be sold for a price that is at least 90% of the appraised value of the tract in the appraisal report of Appraisal & Realty Consultants dated August 24, 2016, or (c) determined by the Bankruptcy Court to be for a fair and reasonable price.

(iii)     Any such holder shall not participate in any distributions to Class 9 under the Plan.

4.9     Class 9 – Unsecured (General) Claims.

(a)     **If the Liquidating Trust is <u>not</u> required to be established under this Plan**: The holders of Unsecured (General) Claims shall be paid and treated as follows:

(i)     In full, final and complete satisfaction of its Allowed Unsecured (General) Claim, each holder of an Allowed Class 9 Claim shall receive, promptly after the Effective Date, but in no event later than January 31, 2017, a Pro Rata Share of the sum of two million dollars ($2,000,000.00) (the "<u>Class 9 Distribution Amount</u>"). The Class 9 Distribution Amount shall be funded from one or both of (A) a portion of the proceeds received by the Debtors from the sale of their 2017 corn and hybrid seed crops and/or proceeds received by the Debtors from insurance claims made with respect to their 2017 corn crops, and (B) a portion of the proceeds of the Exit Loan.

(ii)     Class 9 is impaired.

(b)     **If the Liquidating Trust <u>is</u> required to be established under this Plan**: The holders of Unsecured (General) Claims shall be paid and treated as follows:

(i)     Each holder shall receive a Pro Rata Share of the Net Liquidating Trust Assets, if any, after all Administrative Expense, Priority Claims, and Allowed Claims in Classes 1 through 8 have been satisfied in accordance with this Plan.

(ii)     To the extent that there are sufficient Net Liquidating Trust Assets, each holder shall be entitled to receive interest on its Allowed Claim from January 1, 2017 at the Plan Rate.

(iii)     Claims of the Debtors and their affiliates (as that term is defined in the Bankruptcy Code) shall not be entitled to distributions under the Plan.

4.10    Class 10 – Interests Owned by Stringer.

(a)    **If the Liquidating Trust is <u>not</u> required to be established under this Plan**: Interests owned by Stringer shall be treated as follows:

(i)    Class 10 consists of all Interests in SFI, which are owned by Stringer. Stringer shall retain his Interests in SFI.

(ii)    Class 10 is unimpaired.

(b)    **If the Liquidating Trust <u>is</u> required to be established under this Plan**: Interests owned by Stringer shall be treated as follows:

(i)    This Class consists of all interests in SFI, which are owned by Stringer, and Stringer's interest in his Exempt Property. Stringer shall not retain his interests in SFI, which shall be transferred to the Liquidating Trust; however, he shall retain his interest in his Exempt Property, subject to all Liens existing as of the Petition Date (including Secured Claims for Property Taxes). In addition, Stringer shall receive all Net Liquidating Trust Assets, if any, following satisfaction of all Allowed Claims in Class 9, including interest on such Allowed Claims at the Plan Rate.

## ARTICLE V.
## ACCEPTANCE OR REJECTION OF PLAN

5.1    <u>Classes Entitled to Vote</u>. Each impaired Class of Claims entitled to vote shall separately vote to accept or reject the Plan. Any unimpaired Class shall not be entitled to vote to accept or reject the Plan. Any unimpaired Class is deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

5.2    <u>Class Acceptance Requirement</u>. A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.

5.3    <u>Elimination of Vacant Classes</u>. Any Class of Claims that is not occupied as of the date of the commencement of the Confirmation Hearing by an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

5.4    <u>Cramdown</u>. This section shall constitute the request by the Plan Proponents, pursuant to section 1129(b) of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of section 1129(a)(8) of the Bankruptcy Code have not been met.

## ARTICLE VI.
## MEANS OF IMPLEMENTATION OF THE PLAN IF THE LIQUIDATING TRUST IS NOT REQUIRED TO BE ESTABLISHED UNDER THIS PLAN

6.1    <u>Satisfaction of Conditions Eliminating Requirement to Establish Liquidating Trust</u>. If (a) the Exit Loan is fully closed and funded on or before January 26, 2018 in an amount sufficient to allow the Reorganized Debtors to fully repay the Sandton DIP Loan Claim in accordance with subsection 3.3(a) of this Plan, <u>and</u> (b) the Reorganized Debtors make the

Distribution to holders of Allowed Class 9 Claims as required by subsection 4.9(a)(1) of this Plan on or before January 31, 2018, then there shall be no requirement under this Plan to establish the Liquidating Trust. In the event that establishment of the Liquidating Trust is **not** required, then the following provisions of this Article VI of the Plan shall constitute the means for implementation of the Plan and the provisions of Article VII of the Plan shall be null and void. As an assurance of the Debtors' performance in the event that the foregoing conditions (a) and (b) are not timely satisfied, the Debtors shall execute, notarize, and deliver to Wells Fargo's counsel, not later than ten (10) days after the Confirmation Date, (1) the Liquidating Trust Agreement attached hereto as Exhibit "A", and (2) special warranty deeds conveying all Stringer Farmland and SFI Farmland to the Liquidating Trustee in form satisfactory to Wells Fargo, to be held in escrow by Wells Fargo's counsel for disposition as follows: (x) in the event that conditions (a) and (b) above are timely satisfied, such Liquidating Trust Agreement and deeds shall be returned to the Debtors, and (y) in the event that either condition (a) or (b) above are not timely satisfied, such Liquidating Trust Agreement and deeds shall be delivered to the Liquidating Trustee for recordation, as he deems appropriate.

6.2     Assumption of Allowed Claims.  As of the Effective Date, the Reorganized Debtors hereby assume the liability for and obligation to perform and make all Distributions or payments on account of all Allowed Claims in the manner provided in Articles III and IV above. All Distributions or payments shall be made as set forth in Articles III and IV above in accordance with the provisions thereof that specify treatment of Allowed Claims if the Liquidating Trust is **not** required to be established under the Plan.

6.3     Vesting of Assets.  As of the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, each Debtor's Assets shall be transferred to, and vested in, the applicable Reorganized Debtor, free and clear of all rights, title, interests, claims, liens, encumbrances and charges, except as expressly set forth in the Plan.  Without limiting the generality of the foregoing, all Assets shall vest in the Reorganized Debtors free and clear of any Lien except as expressly provided in the Plan.  On and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire or dispose of property and compromise or settle any claim without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.  Without limiting the foregoing, the Reorganized Debtors may pay the charges that they incur on or after the Effective Date for all fees, disbursements, expenses or related support services of Professionals (including fees relating to the preparation of Professional fee applications) without application to, or approval of, the Bankruptcy Court.

6.4     Actions by the Debtors and the Reorganized Debtors to Implement Plan.

(a)     The entry of the Confirmation Order shall constitute authorization for the Debtors and the Reorganized Debtors (as the case may be) to take or cause to be taken all actions necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including without limitation, (i) all transfers of Assets that are to occur pursuant to the Plan; (ii) the incurrence of all obligations contemplated by the Plan and the making of all Distributions required under the Plan; (iii) taking of all actions to preserve and provide for the prosecution of retained causes of action, including but not limited to any Estate Claims that are not expressly released pursuant to the Plan; and (iv) entering into any and all transactions, contracts, or arrangements permitted by applicable law, order, rule or regulation.

(b)     Stringer, the management of SFI and the Reorganized Debtors, as the case may be, are authorized and directed to do all things and to execute and deliver all agreements, documents, instruments, notices and certificates as are contemplated by the Plan and to take all necessary action required in connection therewith, in the name of and on behalf of Stringer, SFI and the Reorganized Debtors, as the case may be.

6.5     Exit Financing.  The Exit Loan will be closed and fully funded by no later than January 26, 2018.  Among other things, proceeds of the Exit Loan will be used by the Reorganized Debtors to repay the Sandton DIP Loan Claim in full.  Prior to the Confirmation Hearing, the Exit Lender providing the Exit Loan will be identified and the terms of the Exit Loan will be set.  The Debtors expect that the Exit Loan will bear interest at a rate of less than twelve percent (12%) per annum and will mature 24 months after the Effective Date.  The Debtors may also obtain one or more New Revolvers or other loans prior to or after the Effective Date, the proceeds of which may be used by the Reorganized Debtors to fund input costs for future crops and/or future purchases of cattle.  Any Exit Lender providing a New Revolver or other loan will be identified in the future and the terms of such financing will be later set.  The Debtors expect that any New Revolver or other similar financing will bear interest at a rate of less than ten percent (10%) per annum and will be paid with available cash from the operations of the Reorganized Debtors.

6.6     Source of Funding for Stringer's Living Expenses.  From and after the Effective Date, payment of Stringer's living expenses shall be funded primarily from remaining available cash generated by the Reorganized Debtors' operations after payment of obligations under the Plan.  Stringer shall maintain a separate bank account into which a monthly living allowance shall be funded so that personal expenditures are not commingled with business expenditures.

6.7     Source of Funding for Plan Obligations.  The Distributions to be made by the Reorganized Debtors under the Plan shall be funded from the proceeds of the Exit Loan and cash generated by the Reorganized Debtors' operations.  In addition to revenue generated by the Debtors' traditional farming operations and the cattle business conducted through Dos Ex LP and Dos Ex LLC, the Debtors anticipate generating significant revenue after the Effective Date based on the Wind Leases.  The Wind Leases contemplate the installation of wind farms on portions of the SFI Farmland and Stringer Farmland by Swinford Wind, LLC ("Swinford").  The process of obtaining regulatory approvals to commence construction of the wind farms is ongoing.  Consequently, Swinford has yet to begin the project of constructing the wind turbines and other structures necessary to collect and transmit electrical energy converted from wind energy.  The Debtors project that the wind farms will be established and generating revenue for the Reorganized Debtors by early 2019.  Once the wind farms are fully constructed and operational, the Debtors expect the Wind Leases to provide the Reorganized Debtors with additional revenue of approximately $600,000 per year.  In addition, any recoveries obtained through the Pending Lawsuits, and/or Dumas Matter may serve as an additional source of funding for Plan obligations.

6.8     Retention and Assertion of Causes of Action and Defenses.  Except as expressly set forth in this Plan, all causes of action, claims, counterclaims, defenses and rights of offset or recoupment (including but not limited to all Estate Claims, Estate Defenses and Avoidance Actions) belonging to the Debtors shall, upon the occurrence of the Effective Date, be retained by, received by and vested in the Reorganized Debtors for the benefit of the Debtors and their Estates.  Except as expressly set forth in this Plan, the rights of the Reorganized Debtors to commence, prosecute or settle such causes of action shall be preserved notwithstanding the occurrence of the Effective Date.  **No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any cause of action against them as**

**any indication that either the Debtors or the Reorganized Debtors will not pursue any and all available causes of action (including all Estate Claims, Estate Defenses and Avoidance Actions) against them. The Debtors and their Estates expressly reserve all rights to prosecute any and all causes of action (including all Estate Claims, Estate Defenses and Avoidance Actions) against any Person, <u>except</u> as otherwise provided in this Plan.** Unless any causes of action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in this Plan or a Final Order, the Debtors expressly reserve all causes of action (including all Estate Claims, Estate Defenses and Avoidance Actions) for later adjudication, and, therefore, no preclusion doctrine, <u>including</u> without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such causes of action upon or after the confirmation or consummation of the Plan. The Debtors and the Reorganized Debtors may also assert Estate Defenses as a defense to the allowance of any Claim not otherwise Allowed.

6.9 <u>Prosecution of Claims in Pending Lawsuits and Dumas Matter</u>. Funding of this Plan does not depend on the Debtors or Reorganized Debtors obtaining a recovery in connection with the Pending Lawsuits and/or Dumas Matter. However, it is expected that the Debtors and Reorganized Debtors will continue to prosecute all claims and causes of action, including Estate Claims, against the defendants in the Pending Lawsuits. Likewise, it is expected that Stringer will prosecute all claims and causes of action, including Estate Claims, against the City of Dumas, Texas in the Dumas Matter. Any recoveries that the Debtors or Reorganized Debtors may obtain in connection with the Pending Lawsuits and/or Dumas Matter may provide an additional source of funding to meet the obligations under this Plan.

6.10 <u>Post-Effective Date Reporting and Operational Oversight</u>. From and after the Effective Date, the Reorganized Debtors shall engage Tyrone Tyll (or if Mr. Tyll fails or refuses to serve, then another suitable person acceptable to Wells Fargo and Zions) (the "<u>Oversight Party</u>") to provide oversight and to assist in the preparation of and to approve the terms of quarterly and annual budgets (the "<u>Operating Budgets</u>") pertaining to the Reorganized Debtors' operations (including but not limited to Dos Ex LP and Dos Ex LLC, and other entities involving the Reorganized Debtors as well as any other new joint venture, partnership or other entity formed by the Reorganized Debtors after the Effective Date) commencing with the period January 1 – March 31, 2018. If the parties cannot agree on an alternative Oversight Party to be engaged, the Reorganized Debtors shall promptly file a motion with the Bankruptcy Court identifying the Oversight Party they propose to engage, along with any other Oversight Parties that Wells Fargo and/or Zions propose to be engaged, and the proposed terms of engagement of such proposed Oversight Parties. After notice and a hearing, the Bankruptcy Court shall determine which of the proposed Oversight Parties may be engaged by the Reorganized Debtors and the terms on which the Reorganized Debtors may engage such Oversight Parties. Promptly after each Operating Budget has been prepared and approved by the Reorganized Debtors and the Oversight Party, but in no event later than the 1st business day of each quarter, a copy thereof shall be provided to each of Wells Fargo and Zions. Unless otherwise agreed in writing, on the fourth Business Day of each month, beginning with the fourth Business Day following the first month covered by an Operating Budget, the Reorganized Debtors shall provide to the Oversight Party, for purposes of audit, a report setting forth a comparison of actual receipts and expenses to budgeted receipts and expenses in the current Operating Budget for the preceding month ("<u>Reconciliation Reports</u>") and, after review and approval by the Oversight Party, shall transmit such Reconciliation Reports, with appropriate corrections and signed by the Oversight Party as reviewer, to each of Wells Fargo, Zions, and the Exit Lender, not later than the 15th day of the month. The Reorganized Debtors shall provide the Oversight Party with on-line access to their business bank accounts and shall furnish the Oversight Party, promptly upon his request, with

such backup documentation as he may request from time to time, and shall otherwise reasonably cooperate with him.  The Oversight Party shall receive a monthly fee as compensation, plus reimbursement for reasonable and necessary out of pocket expenses incurred in connection with performance of his duties.  The Reorganized Debtors shall indemnify and hold harmless the Oversight Party from any and all claims and demands brought against him by either of the Reorganized Debtors or any third party arising from the performance of his duties. Unless Wells Fargo and/or Zions provides notice to the Reorganized Debtors in accordance with notice provisions of this Plan designating the identity and address of the Person to receive such Operating Budgets and Reconciliation Reports, all such Operating Budgets and Reconciliation Reports shall be provided by the Reorganized Debtors to Wells Fargo and Zions in accordance with the notice provisions of this Plan.  Notwithstanding anything to the contrary contained in this Plan, if the Reorganized Debtors seek to transfer any funds of the Reorganized Debtors, Dos Ex LP, Dos Ex LLC, or any other entity involving the Reorganized Debtors to establish any new joint ventures or partnership or other entity, the Oversight Party shall have the authority to review, object to or approve any such transfer.

## ARTICLE VII.

## MEANS OF IMPLEMENTATION OF THE PLAN IF THE LIQUIDATING TRUST IS REQUIRED TO BE ESTABLISHED UNDER THIS PLAN

7.1     Conditions Triggering Requirement to Establish Liquidating Trust.  If (a) the Debtors fail to obtain an Exit Loan that is fully closed and funded on or before January 26, 2018 in an amount sufficient to allow the Reorganized Debtors to fully repay the Sandton DIP Loan Claim in accordance with subsection 3.3(a) of this Plan, or (b) the Reorganized Debtors fail to make the Distribution to holders of Allowed Class 9 Claims as required by subsection 4.9(a)(1) of this Plan on or before January 31, 2018, then the Liquidating Trust shall be established pursuant to this Plan effective on the following Business Day.  In the event that establishment of the Liquidating Trust **is** required, then the following provisions of this Article VII of the Plan shall constitute the means for implementation of the Plan and the provisions of Article VI of the Plan shall be null and void.  Time is of the essence in construing this provision.

7.2     Substantial Consolidation, Liquidating Trust and Orderly Liquidation.  On the Liquidating Trust Effective Date, the Assets and liabilities of Stringer and SFI shall be substantially consolidated into a single estate.  The Debtors' Assets will be transferred to the Liquidating Trust.  The Liquidating Trustee shall promptly repay the Sandton DIP Loan using the Debtors' 2017 harvest proceeds and the proceeds of an exit loan of up to $4,000,000.00 from an Exit Lender secured by a first lien on the Debtors' Assets to the same extent, and with the same priority, as the Sandton DIP Loan, and subject to other reasonable and customary commercial loan terms and conditions.  The Liquidating Trustee will thereafter conduct an orderly liquidation of the Debtors' non-exempt Assets (other than Collateral surrendered to certain secured creditors), and shall use the proceeds of such liquidation (subject to maintaining the Trust Reserve) to repay the bridge loan, the Secured Claims for Property Taxes, Zions' Secured Claims, and ultimately the holders of Unsecured (General) Claims.  On the Liquidating Trust Effective Date, Stringer shall physically surrender possession and control of all of the Assets, other than his Exempt Property, and shall deliver to, and endorse in favor of, the Liquidating Trustee, all certificates evidencing his ownership in SFI, Dos Ex LP, Dos Ex LLC, Revelation Oil & Gas, LLC, and any other entity in which he holds an ownership interest, and thereafter shall promptly and reasonably cooperate with requests by the Liquidating Trustee to provide information and assistance in effectuating the Plan.  If requested to do so by Wells Fargo, the Liquidating Trustee shall be empowered to wind up the Dos Ex LP partnership, liquidate its

property, and to collect the Debtors' share of Dos Ex LP's property, for the benefit of Wells Fargo.

      7.3    <u>The Liquidating Trust</u>. The Liquidating Trust is established under this Plan to administer the Claims against and Assets (including Estate Claims) of the Debtors' Estates. The Debtors shall be required to execute the trust agreement and special warranty deeds in accordance with section 6.1 of this Plan conveying such Assets to the Liquidating Trustee not later than ten (10) days after the Confirmation Date (and in the event that the Debtors fail or refuse to do so, Wells Fargo shall be the designated representative of such Debtors and their Estates for the limited purpose of authorizing and executing such conveyance in their names) and such executed trust agreement and special warranty deeds shall be held in escrow pending the occurrence of one of the events set forth in subsection 7.1 above triggering the requirement to establish the Liquidating Trust. The holders of Allowed Claims shall be the beneficiaries of such trust. Management of the Liquidating Trust Assets and Distributions from the Liquidating Trust shall be consistent with the terms of the Liquidating Trust Agreement. The Liquidating Trust shall exist from and after the Liquidating Trust Effective Date, with all the powers of a trust under applicable Texas law. Within the limits of applicable law, the Liquidating Trust may be a qualified settlement fund or a grantor trust for tax purposes, as the Liquidating Trustee determines to be in the best interest of Creditors and the Estates. The Liquidating Trustee shall serve as the successor in interest to the Debtors' Estates pursuant to Section 1123(b)(3) of the Bankruptcy Code and, as such, shall have all rights and authority to administer Claims, pursue Estate Claims, and liquidate and distribute the Liquidating Trust Assets for the benefit of Creditors. The Liquidating Trust shall aim to conclude its administration of the Assets not later than 30 months following the Liquidating Trust Effective Date. A copy of the proposed Liquidating Trust Agreement is attached hereto as **Exhibit "A"**.

      7.4    <u>Appointment and Powers of the Liquidating Trustee</u>. Unless otherwise ordered by the Bankruptcy Court, there shall be one Liquidating Trustee, who shall be appointed on the Liquidating Trust Effective Date in the Confirmation Order or as established by the Liquidating Trust Agreement. Tyrone H. Tyll shall act as the Liquidating Trustee. The Liquidating Trustee will serve from and after the Liquidating Trust Effective Date for as long as the Liquidating Trust remains in existence, or until a successor is appointed. Unless expressly required in this Plan, the Liquidating Trustee shall have the authority to take such actions as necessary to implement this Plan without further order or approval from the Bankruptcy Court. In implementing this Plan, the Liquidating Trustee shall have the authority to exercise the following powers and perform the following acts:

      (a)    Perfect and secure all rights, titles and interests in and to any and all Liquidating Trust Assets;

      (b)    Conserve, protect, collect and liquidate or otherwise convert all Liquidating Trust Assets into Cash (without limitation, the Liquidating Trustee shall be permitted to collect all revenue and income from Wind Leases and mineral interests and royalties of the Debtors);

      (c)    Sell and convey, for Cash, all of the interests of the Debtors, their bankruptcy Estates, and the Liquidating Trust, in and to Liquidating Trust Assets to one or more third party purchasers, and to do so free and clear of liens, claims, and encumbrances under section 363 of the Bankruptcy Code with approval of the Bankruptcy Court;

      (d)    Borrow funds, secured by the Assets of the Liquidating Trust, for the purpose of discharging the Sandton DIP Loan Claim, with such new loan to be subrogated to the

lien priority of Sandton in the Assets to the extent that the new loan proceeds are used to pay off the Debtors' obligations to Sandton;

(e)     Make Distributions to the appropriate beneficiaries as specified in this Plan and the Liquidating Trust Agreement;

(f)     Release, convey, subordinate or assign any right, title or interest in or to the Liquidating Trust Assets, to the extent provided for in this Plan;

(g)     Establish and maintain the Trust Reserve in an amount not to exceed $200,000.00 pursuant to the provisions of this Plan and the Liquidating Trust Agreement, or such other reserves as the Liquidating Trustee deems necessary or appropriate;

(h)     Consistent with the allocations provided in this Plan, pay and discharge any costs, expenses, fees or obligations deemed necessary to preserve and maximize the value of the Liquidating Trust Assets, and to protect the Liquidating Trust and the Liquidating Trustee from liability;

(i)     Deposit Liquidating Trust funds and draw checks and make Distributions thereof;

(j)     Employ such attorneys, accountants, engineers, agents, tax specialists, other professionals, and clerical assistance as the Liquidating Trustee may deem necessary;

(k)     Pay reasonable fees and expenses of all such professionals of the Liquidating Trust on a monthly basis;

(l)     Exercise any and all powers granted the Liquidating Trustee by any agreements or by Texas common law or any statute that serves to increase the extent of the powers granted to the Liquidating Trustee hereunder;

(m)     Take any action required or permitted by this Plan or the Liquidating Trust Agreement;

(n)     Assert claims or Estate Claims in federal or state court or any other tribunal with competent jurisdiction and authority to adjudicate such actions;

(o)     Settle, compromise or adjust by arbitration, or otherwise, any disputes or controversies in favor or against the Liquidating Trust, including Estate Claims;

(p)     Waive or release rights of any kind;

(q)     Appoint, remove and act through agents, managers and employees and confer upon them such power and authority as may be necessary or advisable;

(r)     Negotiate, renegotiate or enter into any contract or agreements binding the Liquidating Trust, and to execute, acknowledge and deliver any and all investments that are necessary, required or deemed by the Liquidating Trustee to be advisable in connection with the performance of his/her duties;

(s)     Commence, prosecute, and settle objections to Claims against the

Debtors or their Estates; and

(t) In general, without in any manner limiting any of the foregoing, deal with the Liquidating Trust Assets or any part or parts thereof in all other ways as would be lawful for any Person owning the same to deal therewith, whether similar to or different from the ways above specified, at any time or times hereafter. In connection with the handling of Liquidating Trust Assets, the Liquidating Trustee shall comply with all provisions of the Internal Revenue Code by, among other things, filing Liquidating Trust tax returns as required by applicable law and by paying any and all taxes incurred by the Liquidating Trust as such taxes come due.

7.5    Trust Committee.   The Trust Committee, an oversight committee comprised of three (3) members, shall provide guidance and maintain accountability over the Liquidating Trustee. It shall meet monthly, or as frequently as it shall determine. The Trust Committee may act with a quorum of at least two (2) members. It shall be comprised of one (1) representative each designated by (a) Zions, (b) Wells Fargo, and (c) the holder of the largest Allowed Unsecured (General) Claim that is willing to participate and serve. At such time as Zions' Secured Claim has been fully repaid, its position on the Trust Committee shall be filled with the next largest holder of an Allowed Unsecured (General) Claim that is willing to serve, failing which the remaining member(s) of the Trust Committee may petition the Bankruptcy Court to approve an appropriate person(s) to fill one or more vacancies. The Trust Committee may, by unanimous vote, remove the Liquidating Trustee and appoint an interim Liquidating Trustee pending approval of his or her appointment by the Bankruptcy Court. The Trust Committee shall be entitled to reimbursement by the Liquidating Trust for its reasonable attorneys' fees and expenses up to the annual sum of $10,000.00. The members of the Trust Committee shall serve without compensation, and shall not be individually liable for any loss or damage to a third party while acting in their official capacity on behalf of the Trust Committee.

7.6    Future Trust Expenses and Fees. The Liquidating Trustee shall be compensated for services rendered as provided for in the Liquidating Trust Agreement. Professionals retained by the Liquidating Trustee shall be entitled to reasonable compensation for services rendered and reimbursement of expenses incurred. No Bankruptcy Court approval shall be required for the employment, compensation, or reimbursement of the Liquidating Trustee, or any employees or professionals retained by the Liquidating Trustee.

7.7    Exculpation; Indemnification. The Liquidating Trustee and his or her officers, employees, agents, partners, shareholders, members and representatives, and professionals, and the members of the Trust Committee, shall not be personally liable to the Liquidating Trust or any beneficiary except for such of his, her or its own acts as shall constitute fraudulent or willful misconduct or gross negligence. The Liquidating Trustee and his or her officers, employees, agents, partners, shareholders, members, representatives, and professionals, and the members of the Trust Committee, shall be and hereby are exculpated by all persons and entities, including, without limitation, beneficiaries and other parties-in-interest, from any and all claims, causes of action and other assertions of liability arising out of any act or omission of the Liquidating Trustee or Trust Committee, except for claims of fraudulent or willful misconduct or gross negligence. No beneficiary or other party-in-interest will have or be permitted to pursue any claim or cause of action against the Liquidating Trustee or his or her officers, employees, agents, partners, shareholders, members, representatives, and professionals for making payments in accordance with this Plan or the Confirmation Order. Any act taken or not taken by the Liquidating Trustee or his or her officers, employees, agents, partners, shareholders, members, representatives and professionals with the approval of the Bankruptcy Court will be conclusively deemed not to constitute fraudulent or willful misconduct or gross negligence;

provided, however, that such approval of the Bankruptcy Court is not subsequently deemed void. Except as aforesaid, the Liquidating Trustee and the members of the Trust Committee shall be defended, held harmless and indemnified from time to time from the Liquidating Trust Assets against any and all losses, claims, costs, expenses and liabilities (including legal costs and expenses), and any costs of defending any action to which the Liquidating Trustee may be subject by reason of the Liquidating Trustee's execution in good faith of his or her duties under the Liquidating Trust Agreement. The officers, employees, attorneys, agents, and professionals of the Liquidating Trustee may be likewise defended, held harmless and indemnified. The Liquidating Trustee may obtain for his or her benefit and the benefit of his or her officers, agents, attorneys and employees and the benefit of the Liquidating Trust and the Trust Committee, at the expense of the Liquidating Trust, insurance against claims of liability, damage awards and settlement.

7.8    Retention of Funds Prior to Distribution. The Liquidating Trustee shall collect all funds constituting Liquidating Trust Assets and, pending distribution, shall deposit funds with a federally insured financial institution that has banking services. The Liquidating Trustee will deposit funds so that they are adequately insured. Notwithstanding the foregoing, the Liquidating Trustee may (but is not obligated to) invest all Cash funds received into the Liquidating Trust (including any earnings thereon or proceeds therefrom) in the same manner as chapter 7 trustees are required to invest funds pursuant to the guidelines of the Unites States Trustee's Office, provided that the Liquidating Trustee shall invest funds held in only demand and time deposits, such as Treasury bills, short-term certificates of deposit in banks or savings institutions, or other temporary, liquid and low-risk investments. The Liquidating Trustee shall hold all such funds until they are distributed pursuant to this Plan to Creditors with Allowed Claims.

7.9    Quarterly Operating Reports. The Liquidating Trustee shall continue to file quarterly operating reports with the Bankruptcy Court as may be required by the United States Trustee after confirmation of this Plan until the Chapter 11 Cases are closed.

7.10    Registry of Beneficial Interests. The Liquidating Trustee shall establish and retain registries of all beneficial interests in the Liquidating Trust, as issued to the holders of Allowed Claims against each Estate. The Liquidating Trustee shall be responsible to maintain and update such registry; *provided, however*, the Liquidating Trustee shall not be obligated to change any Liquidating Trust beneficiary's name or address until receiving written correspondence from the party seeking to change the address for receipt of notices and Distributions, together with the written consent of the party previously owning the Claim or interest, if applicable. The Liquidating Trustee retains the right to request additional information to confirm the name and address of such party before making any modification to the registry.

7.11    Termination of the Liquidating Trust. The Liquidating Trust shall remain and continue in full force and effect until all of the Liquidating Trust Assets have been wholly converted to Cash, abandoned, or assigned, and all costs, expenses, and obligations incurred in administering the Liquidating Trust have been fully paid, and all remaining income and proceeds of the Liquidating Trust Assets have been distributed in payment of Allowed Claims pursuant to the provisions of this Plan; *provided, however*, that upon complete liquidation of the Liquidating Trust Assets and satisfaction as far as possible of all remaining obligations, liabilities and expenses of the Liquidating Trust pursuant to this Plan prior to such date, the Liquidating Trustee may, with approval of the Bankruptcy Court, sooner terminate the Liquidating Trust. On the termination date of the Liquidating Trust, the Liquidating Trustee will execute and deliver any and all documents and instruments reasonably requested to evidence such termination. Upon

termination and complete satisfaction of its duties under the Liquidating Trust Agreements, the Liquidating Trustee will be forever discharged and released from all powers, duties, responsibilities and liabilities pursuant to the Liquidating Trust other than those attributable to fraud, gross negligence or willful misconduct of the Liquidating Trustee, or the failure of the Liquidating Trustee to pay any taxes.

7.12    Replacement of the Liquidating Trustee. The Liquidating Trustee may resign at any time by giving written notice to the Bankruptcy Court (unless the Chapter 11 Cases have been closed). Upon resignation, the Bankruptcy Court may appoint a successor Liquidating Trustee upon nomination of the Trust Committee. In addition to the power of the Trust Committee to remove the Liquidating Trustee, after notice to all Creditors and a hearing, the Bankruptcy Court may remove the Liquidating Trustee for cause. If the office of the Liquidating Trustee becomes vacant for any reason, the Trust Committee (or any member thereof) may move for the appointment of a successor Liquidating Trustee by the Bankruptcy Court. Upon the entry of an order appointing a successor Liquidating Trustee, the resigning Liquidating Trustee shall convey, transfer and set over to such successor Liquidating Trustee by appropriate instrument or instruments all of the Liquidating Trust Assets then unconveyed or otherwise undisposed of and all other assets then in his or her possession under the Liquidating Trust Agreement. Without further act, deed or conveyance, a successor Liquidating Trustee shall be vested with all the rights, privileges, powers and duties of the Liquidating Trustee, except that the successor Liquidating Trustee shall not be liable for the acts or omissions of his or her predecessor(s). Each succeeding Liquidating Trustee may in like manner resign and another may in like manner be appointed in his or her place.

7.13    Liquidating Trust Transactions. On the Liquidating Trust Effective Date, or as soon as reasonably practicable thereafter, the Liquidating Trustee may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, or contemplated by this Plan, including: (a) the execution and delivery of appropriate agreements, bylaws, resolutions or other documents of liquidation containing terms that are consistent with the terms of this Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of this Plan; and (c) any other action that the Liquidating Trustee determines is necessary and appropriate. Each of the matters provided for by this Plan involving the corporate structure of SFI or corporate or related actions to be taken by or required of the Liquidating Trustee shall, as of the Liquidating Trust Effective Date, be deemed to have occurred and be effective as provided in this Plan (except to the extent otherwise indicated), and shall be authorized, approved, and, to the extent taken prior to the Liquidating Trust Effective Date, ratified in all respects without any requirement of further action by holders of Claims or Interests, members of the Debtors or beneficiaries of the Liquidating Trust, as the case may be, or any other entity. From and after the Liquidating Trust Effective Date, the Liquidating Trustee may operate (or liquidate and wind up) its business and use, acquire, and dispose of property and settle and compromise claims or interests without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan and the Confirmation Order. Without limiting the generality of the foregoing, the Liquidating Trustee may, without application to or approval by the Bankruptcy Court, pay fees that they incur after the Liquidating Trust Effective Date for professional fees and expenses. Nothing in this provision shall be deemed to prevent the Liquidating Trustee from seeking the Approval of the Bankruptcy Court.

## ARTICLE VIII.
## PROVISIONS GOVERNING DISTRIBUTION

8.1 **If the Liquidating Trust is <u>not</u> required to be established under this Plan**: The following provisions shall govern Distributions under this Plan:

(a) <u>Source of Distributions</u>. All Distributions to be made to Creditors under the Plan shall be made by the Reorganized Debtors.

(b) <u>Collection Costs</u>. To the extent any holder of a Secured Claim asserts a right to attorney's fees and costs pursuant to section 506(b) of the Bankruptcy Code, unless otherwise agreed between the Reorganized Debtors and such Secured Creditor, the allowance of Collection Costs shall be handled as set forth in this subsection. Within twenty (20) days after the Effective Date, the Secured Creditor shall file an application with the Bankruptcy Court for allowance of such Collection Costs. Such application shall follow the same rules and guidelines as a fee application for a Professional seeking compensation from a Debtor, including the Bankruptcy Court's Guidelines for Compensation and Reimbursement of Professionals in Chapter 11 Cases. No later than twenty (20) days after each such application for Collection Costs is filed, the Reorganized Debtors may file any Objections thereto, and the Secured Creditor shall file any response within twelve (12) days thereafter. If the Secured Creditor and the Reorganized Debtors are unable to reach agreement, the matter shall then be submitted to the Bankruptcy Court for determination on no less than twenty (20) days notice of the hearing.

(c) <u>Timing and Amount of Distributions</u>.

(i) No Distribution shall be made on account of any Claim until such Claim is Allowed, except as otherwise set forth in the Plan or ordered by the Bankruptcy Court pursuant to a Final Order. No Distribution shall be made on account of any Contested Claim until such Claim is Allowed. Any Distributions pursuant to the Plan shall be made on the respective Initial Distribution Dates applicable to each such Allowed Claim except as otherwise provided in the Plan or ordered by the Bankruptcy Court. Any Unclaimed Property may be paid into the registry of the Bankruptcy Court or otherwise distributed in accordance with the orders of the Bankruptcy Court.

(ii) Except as expressly set forth in the Plan or in the Confirmation Order, the Reorganized Debtors shall determine the timing and amount of all Distributions which they are required to make under the Plan, consistent with the goal of making such Distributions as expeditiously as possible. The Reorganized Debtors may, but shall not be required to, seek approval of the Bankruptcy Court for any such Distributions.

(d) <u>Means of Cash Payment</u>. Cash payments pursuant to this Plan shall be made by check drawn on, or by wire transfer from, a domestic bank, or by other means agreed to by the payor and payee.

(e) <u>Record Date for Distributions</u>. As of the close of business on the Effective Date, (the "<u>Distribution Record Date</u>"), the register for Claims and Interests will be closed, and there shall be no further changes in the holder of record of any Claim or Interest. The Reorganized Debtors shall have no obligation to recognize any transfer of any Claim or Interest occurring after the Distribution Record Date, and shall instead be authorized and entitled to recognize and deal for all purposes under the Plan with only those holders of record stated on the register of Claims and/or Interests as of the Distribution Record Date for Distributions under the Plan.

(f)     Delivery of Distributions.  All Distributions, deliveries and payments to the holders of any Allowed Claims shall be made to the addresses set forth on the respective proofs of Claim filed in the Chapter 11 Cases.  Any such Distribution, delivery or payment shall be deemed as made for all purposes relating to this Plan when deposited in the United States Mail and served as provided in section 14.5 below.  Whether secured or unsecured, if no proof of Claim is filed, any Distribution shall be made to the Creditor at the last known address or as reflected in the Schedules.  If any Distribution is returned as undeliverable, no further Distribution shall be made on account of such Allowed Claim unless and until the Reorganized Debtors are notified of such holder's then current address, at which time all missed Distributions shall be made to the holder of such Allowed Claim.  All claims for undeliverable Distributions shall be made on or before the first anniversary of the attempted Distribution.  After such date, all Unclaimed Property shall revert to the Reorganized Debtors and the Claim of any holder with respect to such property shall be discharged and forever barred.

(g)     Time Bar to Cash Payments.  Checks issued in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the Reorganized Debtors by the holder of the Allowed Claim with respect to which such check originally was issued.  Any claim in respect of such a voided check shall be made on or before the later of the first anniversary of the Initial Distribution Date or ninety (90) days after the date of issuance of such check.  After such date, all claims in respect of void checks shall be discharged and forever barred.

(h)     Cure Period.  Except as otherwise set forth herein, the failure by the Reorganized Debtors to timely perform any term, provision or covenant contained in this Plan, or to make any payment or Distribution required by this Plan to any Creditor, or the failure to make any payment or perform any covenant on any note, instrument or document issued pursuant to this Plan, shall not constitute an Event of Default unless and until the Reorganized Debtors have been given thirty (30) days written notice of such alleged default in the manner provided in this Plan, and provided an opportunity to cure such alleged default.  Until the expiration of such thirty (30) day cure period, the Reorganized Debtors shall not be in default, and performance during such thirty (30) day cure period shall be deemed as timely for all purposes.  Such written notice and passage of the thirty (30) day cure period shall constitute conditions precedent to declaring or claiming any default under this Plan or bringing any action or legal proceeding by any Person to enforce any right granted under this Plan.

(i)     Pre-Payment of Claims.  Any other term of this Plan notwithstanding, the Reorganized Debtors may pre-pay any Allowed Claim in whole or in part without penalty.

(j)     Distributions after Substantial Consummation.  All Distributions of any kind made to any of the Creditors after Substantial Consummation and any and all other actions taken under this Plan after Substantial Consummation shall not be subject to relief, reversal or modification by any court unless the implementation of the Confirmation Order is stayed by an order granted under Bankruptcy Rule 8007.

8.2    **If the Liquidating Trust is required to be established under this Plan**:  The following provisions shall govern Distributions under this Plan:

(a)     Initial Distributions.  With respect to each Allowed Claim, the Liquidating Trustee shall make the initial Distribution on account of such Claim, if any, on or before the Initial Distribution Date for such Claim.  Distributions that are contingent upon liquidation of the Assets shall be made at such time(s) as the Liquidating Trustee determines in his or her business judgment.  All Distributions shall be made in accordance with Article III and IV of this Plan.

(b)     <u>Means of Payments</u>.  Payments made pursuant to this Plan shall be in Cash unless stated otherwise.

(c)     <u>Delivery of Distributions and Time Bar to Payments</u>.  Subject to Bankruptcy Rule 9010, Distributions under this Plan shall be made at the address of each holder of an Allowed Claim, as set forth on the proofs of Claim filed by such holders (or at the last known address of such holder as of the Confirmation Date if the Debtor has not been notified in writing of a change of address).  If any Distribution on an Allowed Claim is returned as undeliverable, no further Distributions on account of such Claim shall be made unless and until the Liquidating Trustee is notified in writing of the holder of such Claim's then current address, at which time all missed Distributions shall be made to such holder on account of such Claim without interest. Any holder of an Allowed Claim whose Distribution is undeliverable must make demand for such Distribution to the Liquidating Trustee in writing on or before 90 days after the date such undeliverable Distribution was initially made.  After such date, the Claim of any holder with respect to such Distribution shall be forever barred.  All such unclaimed Distributions shall be deemed "Unclaimed Property" and shall be redistributed by the Liquidating Trustee to holders of Allowed Claims whose Distributions have been deliverable in amounts to which such holders would have been entitled had the barred claim never been Allowed. The Liquidating Trustee and its agents and professionals are under no duty to take any action to either attempt to locate any holder of a Claim, or obtain an executed Internal Revenue Service Form W-9 from any holder of a Claim.

(d)     <u>Withholding and Reporting Requirements</u>.  Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law in relation to a Distribution under this Plan shall be deducted from the Distribution and remitted by the Liquidating Trustee to the applicable Taxing Authority(ies).  To the extent that this provision affects the holder of a particular Allowed Claim, such holder shall provide to the Liquidating Trustee all such information as the Liquidating Trustee requires in order to comply with such law(s), and no Distribution shall be made to such holder unless and until such information is provided.

(e)     <u>*De Minimis* Distributions</u>.  Notwithstanding any provision of this Plan to the contrary, no distribution of less than twenty-five dollars ($25.00) must be made from the Liquidating Trust on account of an Allowed Claim, until such time as final Distribution is made.

(f)     <u>Unclaimed Property</u>.  Any Distribution that becomes Unclaimed Property shall be retained by the Liquidating Trust free and clear of any claims or restrictions thereon, and any entitlement of any holder of any Claim to such Distributions shall be extinguished and forever barred.  Unclaimed Property shall be deposited into a pool for redistribution to other holders of Allowed Claims in the same Class as the intended recipient of the Unclaimed Property.

(g)     <u>Uncashed Checks</u>.  Checks issued in respect of Allowed Claims will be **null and void if not negotiated within ninety (90) days** after the date of issuance thereof.  In no event shall any funds escheat to a Governmental Unit.  Any holder of an Allowed Claim whose Distribution is uncashed must make demand for such Distribution to the Liquidating Trustee in writing on or before 90 days after the date such uncashed Distribution was initially made.  After such date, the Claim of any holder with respect to such Distribution shall be forever barred.  All such unclaimed Distributions shall be deemed "Unclaimed Property" and shall be redistributed by the Liquidating Trustee to holders of Allowed Claims whose Distributions have been deliverable in amounts to which such holders would have been entitled had the barred claim never been Allowed.  The Liquidating Trustee and its agents and professionals are under no duty to take any action to either attempt to locate any holder of a Claim, or obtain an executed Internal Revenue Service Form W-9 from any holder of a Claim.

(h)     Tax Treatment.

(i)     The Liquidating Trust is created for the primary purpose of collecting, liquidating and distributing the assets transferred to it with no objective to continue or engage in the conduct of a trade or business.  The Liquidating Trust is intended to be classified as a "Liquidating Trust" for federal income tax purposes within the meaning of Treasury Regulation § 301.7701-4(d).  The Liquidating Trustee shall ascribe valuations to the Liquidating Trust Assets on the date of transfer of such assets to the Liquidating Trust, and such valuations shall be used by the Debtors and the Liquidating Trustee for all federal income tax reporting purposes.

(ii)     The transfer of the Liquidating Trust Assets to the Liquidating Trust shall be treated for all purposes of the Internal Revenue Code of 1986, as amended, as a deemed transfer to the Creditors by the Debtors and their Estates of any rights that they may have to the Liquidating Trust Assets, followed by a deemed transfer by the Creditors to the Liquidating Trust, thereby establishing their beneficial ownership in the Liquidating Trust and making them beneficiaries of the Liquidating Trust.

(iii)     The beneficiaries shall be treated as the grantors and deemed owners of the Liquidating Trust.  The Liquidating Trustee shall allocate the Liquidating Trust income for each taxable year among the beneficiaries in accordance with their respective interests in the Liquidating Trust, as determined from time to time by the Liquidating Trustee, and the beneficiaries shall be responsible for any tax liability that results from said income.  The Liquidating Trustee shall execute and file tax returns on behalf of the Liquidating Trust as a grantor trust pursuant to Treasury Regulation § 1.671.4(a).

(iv)     Each beneficiary shall be required, before any distribution of Liquidating Trust Assets is made to such holder, to provide the Trustee with an executed IRS Form W-9 or such other appropriate taxpayer identification information as will allow the Trustee to file the appropriate tax return on behalf of the Liquidating Trust.  If a beneficiary shall fail to provide the Liquidating Trustee with any requested taxpayer identification information within 90 days after a request for this information, this failure shall be deemed a waiver of all claims against the Liquidating Trust, including the right to Distributions, and the funds that would otherwise have been distributed to such holder shall revert to the Liquidating Trust as Unclaimed Property to be redistributed to other beneficiaries who have provided the requested taxpayer identification information, or as otherwise provided under this Plan.

**ARTICLE IX.**
**PROCEDURES FOR RESOLVING AND TREATING**
**CONTESTED AND CONTINGENT CLAIMS**

9.1     Objection Deadline.

(a)     **If the Liquidating Trust is not required to be established under this Plan**:  All Objections to Claims shall be served and filed by the Objection Deadline; provided, however, the Objection Deadline shall not apply to Claims which are not reflected in the claims register, including any alleged informal proofs of Claim.  The Reorganized Debtors may seek to extend the Objection Deadline pursuant to a motion filed on or before the then applicable Objection Deadline with respect to any Claims.  Any such motion may be granted without notice or a hearing.  In the event that the Reorganized Debtors file such a motion and the Bankruptcy Court denies such motion, the Objection Deadline shall nevertheless be automatically extended to that date which is ten (10) Business Days after the date of entry of the Bankruptcy Court's order denying such motion.  Any proof of Claim filed more than thirty (30) days after the Effective Date

shall be of no force and effect and need not be objected to by the Reorganized Debtors. Nothing contained herein shall limit the right of the Reorganized Debtors to object to Claims, if any, filed or amended after the Objection Deadline.

(b)      **If the Liquidating Trust is required to be established under this Plan**:  All Objections to Claims shall be served and filed by the Objection Deadline; *provided, however*, the Objection Deadline shall not apply to any Claim that is not reflected in the claims register, including any alleged informal proofs of Claim.  The Liquidating Trustee may seek to extend the Objection Deadline pursuant to a motion filed on or before the then applicable Objection Deadline with respect to any Claim.  Any such motion may be granted without notice or a hearing. In the event that the Liquidating Trustee files such a motion and the Bankruptcy Court denies such motion, the Objection Deadline shall nevertheless be automatically extended to that date which is ten (10) Business Days after the date of entry of the Bankruptcy Court's order denying such motion.  Any proof of Claim filed more than sixty (60) days after the Liquidating Trust Effective Date shall be of no force and effect and need not be objected to by the Liquidating Trustee.  Nothing contained herein shall limit the rights of the Liquidating Trustee to object to any Claim filed or amended after the Objection Deadline.  Nothing in this Plan shall be construed as extending the existing bar date requiring the filing of a Claim or extending a previously ordered time period for asserting a Claim.

9.2    Responsibility for Objecting to Claims and Settlement of Claims.

(a)      **If the Liquidating Trust is not required to be established under this Plan**: From and after the Effective Date, the Reorganized Debtors shall have the sole and exclusive right to (i) file, settle, or litigate to Final Order any Objections to any Claims; and (ii) seek to subordinate any Claim.  Any Contested Claim may be litigated to Final Order.  From and after the Effective Date, the Reorganized Debtors shall have the sole and exclusive right to settle, compromise or otherwise resolve any Contested Claim without the necessity of any further notice or approval of the Bankruptcy Court.  Bankruptcy Rule 9019 shall not apply to any settlement or compromise of a Contested Claim after the Effective Date.

(b)      **If the Liquidating Trust is required to be established under this Plan**:  From and after the Liquidating Trust Effective Date, the Liquidating Trustee shall have the exclusive right to (i) file, settle, or litigate to Final Order any Objection to any Claim; and (ii) seek to subordinate any Claim. Any Contested Claim may be litigated to Final Order.  From and after the Liquidating Trust Effective Date, the Liquidating Trustee shall have the exclusive right to settle, compromise, or otherwise resolve any Contested Claim without the necessity of any further notice or approval of the Bankruptcy Court. Bankruptcy Rule 9019 shall not apply to any settlement or compromise of a Contested Claim after the Liquidating Trust Effective Date.   Nothing in this provision shall be deemed to prevent the Liquidating Trustee from seeking the Approval of the Bankruptcy Court.

9.3    Distributions on Account of Contested Claims.

(a)      **If the Liquidating Trust is not required to be established under this Plan**:  If a Claim is Contested, then the Initial Distribution Date as to such Contested Claim shall be determined based upon its date of Allowance, and thereafter distribution shall be made on account of such Allowed Claim pursuant to the provisions of the Plan.  No Distribution shall be made on account of a Contested Claim until Allowed.  Until such time as a contingent Claim becomes fixed and absolute by a Final Order allowing such Claim, such Claim shall be treated as a Contested Claim for purposes of estimates, allocations, and Distributions under the Plan.

Any contingent right to contribution or reimbursement shall continue to be subject to section 502(e) of the Bankruptcy Code.

(b)     **If the Liquidating Trust is required to be established under this Plan**: No Distribution shall be made on account of a Contested Claim until Allowed. Until such time as a contingent Claim becomes fixed and absolute by a Final Order allowing such Claim, such Claim shall be treated as a Contested Claim for purposes of estimates, allocations, and Distributions under this Plan; provided however, a Final Order shall not be required in connection with any Claim that is not a contingent Claim, or a Claim compromised and settled by the Liquidating Trustee. Any contingent right to contribution or reimbursement shall continue to be subject to Section 502(e) of the Bankruptcy Code.

9.4     <u>No Waiver of Rights to Object</u>.

(a)     **If the Liquidating Trust is not required to be established under this Plan**: Except as expressly provided in this Plan, nothing contained in the Disclosure Statement, this Plan or the Confirmation Order shall waive, relinquish, release or impair the Reorganized Debtors' rights to object to any Claim.

(b)     **If the Liquidating Trust is required to be established under this Plan**: Except as expressly provided in this Plan, nothing contained in the Disclosure Statement, this Plan, or the Confirmation Order shall waive, relinquish, release, or impair the Liquidating Trustee's rights to object to any Claim.

9.5     <u>Rights Under Section 505</u>.

(a)     **If the Liquidating Trust is not required to be established under this Plan**: The Reorganized Debtors shall retain all rights pursuant to section 505 of the Bankruptcy Code.

(b)     **If the Liquidating Trust is required to be established under this Plan**: The Liquidating Trustee shall retain all rights pursuant to Section 505 of the Bankruptcy Code.

9.6     <u>Liquidating and Allowance of Contested or Disputed Claims</u>.

(a)     **If the Liquidating Trust is not required to be established under this Plan**:

(i)     This section shall apply to all Contested Claims. Nothing contained in the Plan, Disclosure Statement or Confirmation Order shall change, waive or alter any requirement under applicable law that the holder of a Contested Claim must file a timely proof of Claim, and the Claim of any such Creditor who is required to file a proof of Claim and fails to do so shall be discharged and shall receive no Distribution through the Plan. The adjudication and liquidation of Contested Claims is a determination and adjustment of the debtor/creditor relationship, and is, therefore, an exercise of the Bankruptcy Court's equitable power to which the legal right of trial by jury is inapplicable. The holder of any Contested Claim shall not have a right to trial by jury before the Bankruptcy Court in respect of any such Claim. Exclusive venue for any Contested Claim proceeding shall be in the Bankruptcy Court or a court of competent jurisdiction located in Tarrant County, Texas. Contested Claims shall each be determined separately, except as otherwise ordered by the Bankruptcy Court. Texas Rule of Civil Procedure 42 and Federal Rule of Civil Procedure 23 shall not apply to any Contested Claim proceeding. The Reorganized Debtors shall retain all rights of removal to federal court as to any Contested Claim proceeding.

(ii)     All Contested Claims shall be liquidated and determined as follows:

(A)     <u>Application of Adversary Proceeding Rules</u>.  Unless otherwise ordered by the Bankruptcy Court or provided by the Bankruptcy Rules, any Objection to a Contested Claim shall be treated as a contested proceeding subject to Bankruptcy Rule 9014.  However, any party may move the Bankruptcy Court to apply the rules applicable to adversary proceedings to any Claim Objection.  The Reorganized Debtors may, however, at their election, make and pursue any Objection to a Claim in the form of an adversary proceeding.

(B)     <u>Scheduling Order</u>.  With respect to an Objection to a Claim treated as a contested proceeding subject to Bankruptcy Rule 9014, the Reorganized Debtors may request entry of a scheduling order as to each Objection to a Claim.  The Reorganized Debtors may tender a proposed scheduling order with each Objection and/or include a request for a scheduling conference for the entry of a scheduling order.  Any such scheduling order may include (1) discovery cut-off, (2) deadlines to amend pleadings, (3) deadlines for designation of and objections to experts, (4) deadlines to exchange exhibit and witness lists and for objections to the same, and (5) such other matters as may be appropriate.

(C)     <u>Mediation</u>.  The Bankruptcy Court may order the parties to mediate in connection with any Objection to a Claim.  The Reorganized Debtors may include a request for mediation in an Objection to a Claim and may request that the Bankruptcy Court require mediation as a part of any scheduling order.

(b)     **If the Liquidating Trust <u>is</u> required to be established under this Plan**:

(i)     Nothing contained in this Plan, the Disclosure Statement, or the Confirmation Order shall change, waive, or alter any requirement under applicable law that the holder of a Contested Claim must file a timely proof of Claim, and the Claim of any such Creditor who is required to file a proof of Claim and fails to do so shall be discharged and shall receive no Distribution through this Plan.  The adjudication and liquidation of Contested Claims is a determination and adjustment of the debtor/creditor relationship, and is, therefore, an exercise of the Bankruptcy Court's equitable power to which the legal right of trial by jury is inapplicable.  The holder of any Contested Claim shall not have a right to trial by jury before the Bankruptcy Court in respect of any such Claim.  Exclusive venue for any Contested Claim proceeding shall be in the Bankruptcy Court or a court of competent jurisdiction located in Tarrant County, Texas.  Contested Claims shall each be determined separately, except as otherwise ordered by the Bankruptcy Court.  Texas Rule of Civil Procedure 42 and Federal Rule of Civil Procedure 23 shall not apply to any Contested Claim proceeding.  The Liquidating Trustee shall retain all rights of removal to federal court as to any Contested Claim proceeding.

(ii)     All Contested Claims shall be liquidated and determined as follows:

(A)     <u>Application of Adversary Proceeding Rules</u>.  Unless otherwise ordered by the Bankruptcy Court or provided by the Bankruptcy Rules, any Objection to a Contested Claim shall be treated as a contested matter subject to Bankruptcy Rule 9014.  However, any party may move the Bankruptcy Court to apply the rules applicable to adversary proceedings to any Claim Objection.  The Liquidating Trustee may, however, at its election, make and pursue any Objection to a Claim in the form of an adversary proceeding.

(B)     <u>Scheduling Order</u>.  With respect to an Objection to a Claim treated as a contested matter subject to Bankruptcy Rule 9014, the Liquidating Trustee may request entry of a scheduling order as to each Objection to a Claim.  The Liquidating Trustee may tender

a proposed scheduling order with each Objection and/or include a request for a scheduling conference for the entry of a scheduling order. Any such scheduling order may include (1) discovery cut-off, (2) deadlines to amend pleadings, (3) deadlines for designation of and objections to experts, (4) deadlines to exchange exhibit and witness lists and for objections to the same, and (5) such other matters as may be appropriate.

(C)  Mediation. The Bankruptcy Court may order the parties to mediate in connection with any Objection to a Claim. The Liquidating Trustee may include a request for mediation in an Objection to a Claim and may request that the Bankruptcy Court require mediation as a part of any scheduling order.

9.7  Offsets and Defenses.

(a)  **If the Liquidating Trust is not required to be established under this Plan**: Unless otherwise expressly set forth in this Plan, the Reorganized Debtors shall be vested with and retain all Estate Claims and Estate Defenses, including without limitation all rights of offset or recoupment and all counterclaims against any Claimant holding a Claim. Assertion of counterclaims by the Reorganized Debtors against any Claimants shall constitute "core" proceedings.

(b)  **If the Liquidating Trust is required to be established under this Plan**: The Liquidating Trustee shall be vested with and retain all Estate Claims and Estate Defenses, including without limitation all rights of offset or recoupment and all counterclaims against any Claimant. Assertion of any counterclaim by the Liquidating Trustee against a Claimant shall constitute a "core" proceeding.

9.8  Claims Paid or Reduced Prior to Effective Date.

(a)  **If the Liquidating Trust is not required to be established under this Plan**: Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made. Nothing in the Plan shall preclude the Reorganized Debtors from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

(b)  **If the Liquidating Trust is required to be established under this Plan**: Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated, and not contingent shall be deemed to be reduced by the amount, if any, that was paid by the Debtors prior to the Liquidating Trust Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made. Nothing in this Plan shall preclude the Liquidating Trustee from paying any Claim that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

## ARTICLE X.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

10.1    Assumption and Rejection of Executory Contracts.

(a)    **If the Liquidating Trust is not required to be established under this Plan**: All Executory Contracts of the Debtors shall be deemed as assumed by the Reorganized Debtors upon the Effective Date unless an Executory Contract (i) has been previously assumed or rejected pursuant to an order of the Bankruptcy Court, (ii) is identified in this Plan or the Confirmation Order to be rejected, or (iii) is the subject of a motion to reject filed on or before the Confirmation Date.  Any Executory Contract to be assumed under this Plan that has been amended or modified at any time after the Petition Date of the Debtor that is party to such Executory Contract shall be deemed assumed as amended or modified.  This Plan shall constitute a motion to assume the Executory Contracts.  However, the Debtors may file a separate motion for the assumption or rejection of any Executory Contract at any time through the Confirmation Date.

(b)    **If the Liquidating Trust is required to be established under this Plan**: All Executory Contracts of the Debtors shall be deemed rejected by the Debtors upon the Liquidating Trust Effective Date unless an Executory Contract (i) has been previously assumed or rejected pursuant to an order of the Bankruptcy Court, (ii) is identified in this Plan or the Confirmation Order to be assumed, or (iii) is the subject of a motion to assume filed on or before the Confirmation Date. This Plan shall constitute a motion to reject the Executory Contracts except as stated in this paragraph.  However, the Debtors may file a separate motion for the assumption or rejection of any Executory Contract at any time through the Confirmation Date.

10.2    Cure Payments and Release of Liability.

(a)    **If the Liquidating Trust is not required to be established under this Plan**: Unless the holder of a Cure Claim and the applicable Debtor or Reorganized Debtor agree in writing to other treatment of such holder's Cure Claim, or other treatment of such holder's Cure Claim is provided for under the Plan, each Cure Claim against the Debtors shall be paid and treated as follows:

(i)    Any cure payment which may be required by section 365 of the Bankruptcy Code under an Executory Contract that is assumed under this Plan shall be made by the Reorganized Debtors on the Initial Distribution Date.  Notwithstanding the foregoing, in the event of a dispute regarding the amount of any Cure Claim, the cure of any other defaults, the provision of adequate assurance of future performance, or any other matter pertaining to assumption or assignment, the Reorganized Debtors shall make such cure payments and cure such other defaults and provide adequate assurance of future performance, all as may be required by section 365 of the Bankruptcy Code, following the entry of a Final Order by the Bankruptcy Court resolving such dispute.

(ii)    Any other term of this Plan notwithstanding, the Reorganized Debtors may pre-pay any Cure Claim in whole or in part without penalty.

(b)    **If the Liquidating Trust is required to be established under this Plan**: All payments that may be required by Section 365(b)(1) of the Bankruptcy Code to satisfy any Cure Claim shall be made by the Liquidating Trustee on the Initial Distribution Date unless other treatment is provided for such Cure Claim hereunder; *provided, however,* in the event of a dispute regarding the amount of any Cure Claim, the cure of any other defaults, the ability of the

Liquidating Trustee to provide adequate assurance of future performance, or any other matter pertaining to assumption or assignment of an Executory Contract, the Liquidating Trustee shall make such cure payments and cure such other defaults and provide adequate assurance of future performance, all as may be required by Section 365(b)(1) of the Bankruptcy Code, following the entry of a Final Order by the Bankruptcy Court resolving such dispute.

10.3   Bar to Rejection Claims.

(a)   **If the Liquidating Trust is not required to be established under this Plan**: Except as otherwise ordered by the Bankruptcy Court, any Rejection Claim based on the rejection of an Executory Contract shall be forever barred and shall not be enforceable against the Reorganized Debtors or the Assets unless a proof of Claim is filed with the Bankruptcy Court and served upon the Reorganized Debtors and their counsel by the earlier of thirty (30) days after the Effective Date or thirty (30) days after entry of the Final Order approving rejection of such Executory Contract.

(b)   **If the Liquidating Trust is required to be established under this Plan**:  Except as otherwise ordered by the Bankruptcy Court, any Rejection Claim based on the rejection of an Executory Contract shall be forever barred and shall not be enforceable against the Liquidating Trustee or the Liquidating Trust Assets unless a proof of Claim is filed with the Bankruptcy Court and served upon the Liquidating Trustee and his counsel by the earlier of thirty (30) days after the Liquidating Trust Effective Date or thirty (30) days after entry of the Final Order approving rejection of such Executory Contract.

10.4   Rejection Claims.

(a)   **If the Liquidating Trust is not required to be established under this Plan**: Any Rejection Claim not barred by section 10.3(a) above shall be classified as a Class 9 Unsecured (General) Claim subject to the provisions of section 502(g) of the Bankruptcy Code; provided, however, that any Rejection Claim based upon the rejection of an unexpired lease of real property, either prior to the Confirmation Date, upon the entry of the Confirmation Order, or upon the Effective Date, shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. Nothing contained herein shall be deemed an admission by the Debtors or the Reorganized Debtors that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Reorganized Debtors of any objections to such Claim if asserted.

(b)   **If the Liquidating Trust is required to be established under this Plan**:  Any Rejection Claim not barred by this Plan shall be classified as a Class 9 Unsecured (General) Claim subject to the provisions of Section 502(g) of the Bankruptcy Code; provided, however, that any Rejection Claim based upon the rejection of an unexpired lease of real property, either prior to the Confirmation Date, upon the entry of the Confirmation Order, or upon the Liquidating Trust Effective Date, shall be limited in accordance with Section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. Nothing contained herein shall be deemed an admission by the Debtors or the Liquidating Trustee that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Liquidating Trustee of any objections to such Claim if asserted.

10.5   Reservation of Rights.

(a)   **If the Liquidating Trust is not required to be established under this Plan**: Nothing contained in the Plan shall constitute an admission by either Debtor that any contract or

lease is in fact an Executory Contract or that the Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Reorganized Debtors shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease.

(b)     **If the Liquidating Trust is required to be established under this Plan**: Nothing contained in this Plan shall constitute an admission by the Liquidating Trustee that any contract or lease is in fact an Executory Contract or that the Debtors or the Liquidating Trustee have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Liquidating Trustee shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease.

10.6     Pass-Through. **If the Liquidating Trust is not required to be established under this Plan**: Except as otherwise provided in the Plan, any rights or arrangements necessary or useful to the Reorganized Debtors' performance under the Plan, but not otherwise addressed as a Claim or Interest, including non-exclusive or exclusive patent, trademark, copyright, maskwork or other intellectual property licenses and other executory and/or non-executory contracts not assumable under section 365(c) of the Bankruptcy Code, shall, in the absence of any other treatment under the Plan or Confirmation Order, be passed through the Chapter 11 Cases for the benefit of the Reorganized Debtors and the counterparty unaltered and unaffected by the Debtors' bankruptcy filings and the Chapter 11 Cases.

**ARTICLE XI.**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**AND EFFECTIVENESS OF PLAN**

11.1     Conditions to Confirmation and Effectiveness of Plan. The Plan shall not become effective until the following conditions shall have been satisfied or waived by the Debtors, as determined in their discretion: (a) the Confirmation Order shall have been entered, in form and substance acceptable to the Debtors; (b) all other conditions precedent have been satisfied to the satisfaction of the Debtors, and the Debtors shall have executed, notarized, and delivered to escrow the documents required pursuant to section 6.1 hereof; (c) the Bar Dates have passed, and no additional Claims have been filed which, in the discretion of the Debtors, adversely impact the Plan; and (d) a notice of the Effective Date has been filed by the Debtors and thereafter served upon all Creditors and parties in interest. Any or all of the above conditions other than (a) may be waived at any time by the Debtors.

11.2     Revocation of Plan. The Debtors may revoke and withdraw this Plan at any time before the Effective Date. If either Debtor revokes or withdraws this Plan, or if confirmation of this Plan does not occur, then this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors, as the case may be, or any other Person, or to prejudice in any manner the rights of the Debtors or any other Person in any further proceedings involving the Debtors.

**ARTICLE XII.**
**EFFECT OF THE PLAN ON CLAIMS AND INTERESTS**

12.1     Compromise and Settlement.

(a)     Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and

in consideration of the classification, potential Distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtors. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, Creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.

(b)     It is not the intent of this Plan that confirmation of the Plan shall in any manner alter or amend any settlement and compromise (including those contained in agreed orders) between the Debtors and any Person that has been previously approved by the Bankruptcy Court (each, a "Prior Settlement"). To the extent of any conflict between the terms of the Plan and the terms of any Prior Settlement, the terms of the Prior Settlement shall control and such Prior Settlement shall be enforceable according to its terms.

12.2     Satisfaction of Claims. The rights afforded in the Plan and the treatment of all Claims and Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever against the Debtors, the Estates, and the Assets. Except as otherwise provided herein, on the Effective Date, all Claims against the Debtors and the Estates shall be satisfied, discharged, and released in full. Except as otherwise provided herein, all Persons shall be precluded and forever barred from asserting against the Debtors and their affiliates, successors, assigns, the Estates and the Assets any event, occurrence, condition, thing, or other or further Claims or causes of action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

12.3     Discharge.

(a)     **If the Liquidating Trust is not required to be established under this Plan**:

(i)     With respect to Stringer, the terms, covenants and consideration under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against Stringer as Debtor and Reorganized Debtor, or the Assets. Stringer and his successors in interest and assigns shall be deemed discharged and released pursuant to section 1141(d)(5) of the Bankruptcy Code from any and all Claims provided for in the Plan upon completion of all payments required to be made by Stringer under the Plan and the granting of a discharge by the Bankruptcy Court in favor of Stringer; provided, however, nothing contained herein shall be deemed a waiver of the Stringer's right to petition the Bankruptcy Court for a discharge following confirmation of the Plan, but prior to completion of all payments required to be made under the Plan, pursuant to section 1141(d)(5) of the Bankruptcy Code.

(ii)     With respect to SFI, the terms, covenants and consideration under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against SFI as Debtor and Reorganized Debtor, or the Assets. SFI and its successors in interest and assigns shall be deemed discharged and released pursuant to section 1141(d)(1) of the Bankruptcy Code from any and all Claims provided for in the Plan.

(b) **If the Liquidating Trust is required to be established under this Plan:**

(i) With respect to SFI, the terms, covenants and consideration under this Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against SFI as Debtor or its Assets. SFI and its successors in interest shall be deemed discharged and released pursuant to section 1141(d)(1) of the Bankruptcy Code from any and all Claims provided in the Plan.

(ii) With respect to Stringer, the terms, covenants and consideration under this Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature against Stringer's Assets. Subject to his execution of the Liquidating Trust Agreement as required by this Plan, Stringer shall be discharged pursuant to section 1141(d)(1) of the Bankruptcy Code (except for any obligations arising under this Plan), on the condition that Stringer turns over to the Liquidating Trust all earnings from personal services he performs, in excess of $10,000.00 per month which he may retain for his reasonable and necessary living expenses, during the 24-month period following the Liquidating Trust Effective Date. Such payments shall be due not later than the 15th day of the month following the date of receipt of such earnings, together with a written accounting of his earnings. Upon request by the Liquidating Trustee, Stringer shall provide such additional documentation, including without limitation pay stubs, bank records, and income tax returns, as the Liquidating Trustee may from time to time request. Stringer may apply to the Bankruptcy Court for a discharge upon conclusion of the Liquidating Trustee's liquidation of the Assets. Stringer's failure to faithfully comply with the foregoing obligations, or failure to promptly execute the Liquidating Trust Agreement as required by this Plan, shall be grounds for denial or revocation of his discharge upon application by the Liquidating Trustee to the Bankruptcy Court.

**12.4    Injunction.**

(a) **If the Liquidating Trust is not required to be established under this Plan:** **On the Effective Date and except as otherwise provided herein, all Persons who have been, are, or may be holders of Claims against or Interests in the Debtors shall be permanently restrained and enjoined from taking any of the following actions against or affecting the Debtors, the Reorganized Debtors, the Estates, the Assets, or their respective assets and property, with respect to such Claims or Interests (other than actions brought to enforce any rights or obligations under the Plan): (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind with respect to any such Claim or Interest; (ii) enforcing, levying, attaching, collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien or encumbrance of any kind; (iv) asserting any control over, interest, rights or title in or to any of the Assets except as expressly provided in the Plan; (v) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Reorganized Debtors as assignee or any assignees of the Reorganized Debtors, except upon order of the Bankruptcy Court; and (vi) performing any act, by any manner or means, whether directly or indirectly, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; provided, however, that this injunction shall not bar any Creditor from asserting any right granted pursuant to this Plan; provided, further, however, that each holder of a Contested Claim shall be entitled to enforce its rights under the Plan, including seeking allowance of such Contested Claim pursuant to the Plan.**

**(b)** **If the Liquidating Trust is required to be established under this Plan**: On the Liquidating Trust Effective Date and except as otherwise provided in this Plan, all Persons who have been, are, or may be holders of Claims against or Interests in the Debtors shall be permanently restrained and enjoined from taking any of the following actions against or affecting the Liquidating Trustee, the Debtors (following Debtors' execution of the Liquidating Trust Agreement), the Estates, the Assets, or their respective assets and property, with respect to such Claims or Interests (other than actions brought to enforce any rights or obligations under this Plan): (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind with respect to any such Claim or Interest; (ii) enforcing, levying, attaching, collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien or encumbrance of any kind; (iv) asserting any control over, interest, rights or title in or to any of the Assets except as expressly provided in this Plan; (v) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Liquidating Trustee as assignee, except upon order of the Bankruptcy Court; and (vi) performing any act, by any manner or means, whether directly or indirectly, in any place whatsoever, that does not conform to or comply with the provisions of this Plan; *provided, however,* that this injunction shall not bar any Creditor from asserting any right granted pursuant to this Plan; and *provided, further,* that each holder of a Contested Claim shall be entitled to enforce its rights under this Plan, including seeking allowance of such Contested Claim pursuant to this Plan.

12.5    <u>Setoffs</u>.

(a)    **If the Liquidating Trust is <u>not</u> required to be established under this Plan**: Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable nonbankruptcy law, or as may be agreed to by the holder of a Claim, the Reorganized Debtors may setoff against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before such Distribution is made), any claims, rights, Estate Claims and Estate Defenses of any nature that the Debtors may hold against the holder of such Allowed Claim, to the extent such claims, rights, Estate Claims and Estate Defenses against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by the Debtors of any such claims, rights, Estate Claims and Estate Defenses that the Debtors may possess against such Claimant.  In no event shall any Claimant or Interest holder be entitled to setoff any Claim or Interest against any claim, right, or Estate Claim of the Debtors without the consent of the applicable Debtor or Reorganized Debtor unless such holder files a motion with the Bankruptcy Court requesting the authority to perform such setoff notwithstanding any indication in any proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

(b)    **If the Liquidating Trust is required to be established under this Plan**: Except as otherwise expressly provided in this Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable nonbankruptcy law, or as may be agreed to by the holder of a Claim, the Liquidating Trustee may set off against any Allowed Claim and the Distributions to be made pursuant to this Plan on account of such Allowed Claim (before such Distribution is made), any claim, right, Estate Claim, or Estate Defense of any nature that the Debtors may hold against the holder of such Allowed Claim, to the extent such claim, right,

Estate Claims, or Estate Defense has not been otherwise compromised or settled on or prior to the Liquidating Trust Effective Date (whether pursuant to this Plan or otherwise); *provided, however*, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to this Plan shall constitute a waiver or release by the Debtors of any such claim, right, Estate Claim, or Estate Defense that the Debtors may possess against such Claimant. In no event shall any Creditor or Interest holder be entitled to set off any Claim or Interest against any claim, right, or Estate Claim of the Debtors without the consent of the Liquidating Trustee unless such holder files a motion with the Bankruptcy Court requesting the authority to perform such setoff notwithstanding any indication in any proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

12.6    Recoupment.

(a)      **If the Liquidating Trust is <u>not</u> required to be established under this Plan**: Except as otherwise expressly provided for in the Plan, in no event shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any claim, right, account receivable, or Estate Claim of the Debtors or the Reorganized Debtors unless (i) such holder actually provides notice thereof in writing to the applicable Debtor or the Reorganized Debtor of its intent to perform a recoupment; (ii) such notice includes the amount to be recouped by the holder of the Claim or Interest and a specific description of the basis for the recoupment, and (iii) the applicable Debtor or the Reorganized Debtor has provided a written response to such Claim or Interest holder, stating unequivocally that the applicable Debtor or the Reorganized Debtor consents to the requested recoupment. The Debtors and the Reorganized Debtors shall have the right, but not the obligation, to seek an order of the Bankruptcy Court allowing any or all of the proposed recoupment. In the absence of a written response from the applicable Debtor or the Reorganized Debtor consenting to a recoupment or an order of the Bankruptcy Court authorizing a recoupment, no recoupment by the holder of a Claim or Interest shall be allowed.

(b)      **If the Liquidating Trust <u>is</u> required to be established under this Plan**: Except as otherwise expressly provided in this Plan, in no event shall any holder of a Claim or Interest be entitled to recoup any Claim or Interest against any claim, right, account receivable, or Estate Claim of the Debtors or the Liquidating Trustee unless (i) such holder actually provides notice thereof in writing to the Debtors or the Liquidating Trustee of its intent to perform a recoupment; (ii) such notice includes the amount to be recouped by the holder of the Claim or Interest and a specific description of the basis for the recoupment; and (iii) the Debtors or the Liquidating Trustee have provided a written response to such Claim or Interest holder, stating unequivocally that the Debtors or the Liquidating Trustee consent to the requested recoupment. The Liquidating Trustee shall have the right, but not the obligation, to seek an order of the Bankruptcy Court allowing any or all of the proposed recoupment. In the absence of a written response from the Liquidating Trustee consenting to a recoupment or an order of the Bankruptcy Court authorizing a recoupment, no recoupment by the holder of a Claim or Interest shall be allowed.

12.7    Turnover.

(a)      **If the Liquidating Trust is <u>not</u> required to be established under this Plan**: On the Effective Date, any rights of the Estates to compel turnover of Assets under applicable nonbankruptcy law and pursuant to section 542 or 543 of the Bankruptcy Code shall be deemed transferred to and vested in the Reorganized Debtors.

(b) **If the Liquidating Trust is required to be established under this Plan**: On the Liquidating Trust Effective Date, any rights of the Estates to compel turnover of Assets under applicable nonbankruptcy law and pursuant to section 542 or 543 of the Bankruptcy Code shall be deemed transferred to and vested in the Liquidating Trustee.

12.8    Automatic Stay.  The automatic stay pursuant to section 362 of the Bankruptcy Code, except as previously modified by the Bankruptcy Court, shall remain in effect until the Effective Date of the Plan as to the Debtors and all Assets.  As of the Effective Date, the automatic stay shall be replaced by the injunction described in section 12.4 of this Plan.

## ARTICLE XIII.
## JURISDICTION OF COURTS AND MODIFICATIONS TO THE PLAN

13.1    Retention of Jurisdiction.  Pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising in, arising under, and related to the Chapter 11 Cases and the Plan, for the purposes of sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a) To hear and determine any and all Objections to or applications concerning the allowance of Claims or the allowance, classification, priority, compromise, estimation, or payment of any Administrative Expense or Claim;

(b) To hear and determine any and all applications for payment of fees and expenses from the Estates made by any Professional pursuant to this Plan or pursuant to sections 330 or 503 of the Bankruptcy Code, or for payment of any other fees or expenses authorized to be paid or reimbursed from the Estates under this Plan or the Bankruptcy Code, and any and all objections thereto;

(c) To hear and determine pending applications for the rejection, assumption, or assumption and assignment of Executory Contracts and the allowance of Claims resulting therefrom, and to determine the rights of any party in respect to the rejection, assumption, or assumption and assignment of any Executory Contract;

(d) To hear and determine any and all adversary proceedings, applications, contested matters, including any remands;

(e) To hear and determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan or in connection with the enforcement of any remedies made available under the Plan, including without limitation, (i) adjudication of all rights, interests or disputes relating to any of the Assets, (ii) the valuation of all Collateral, including hearing all Valuation Motions, (iii) the determination of the validity of any Lien or claimed right of offset; and (iv) determinations of Objections to Contested Claims;

(f) To liquidate and administer any disputed, contingent, or unliquidated Claims, including the Allowance of all Contested Claims;

(g) To administer Distributions to holders of Allowed Claims as provided herein;

(h) To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(i)  To enable the Liquidating Trustee to prosecute any and all proceedings which may be brought to set aside Liens or encumbrances and to recover any transfers, assets, properties or damages to which the Liquidating Trustee may be entitled under applicable provisions of the Bankruptcy Code or any other federal, state, or local laws, including Estate Claims, controversies, disputes, and conflicts between the Liquidating Trustee and any other party, including but not limited to, any Estate Claims or Objections to Claims, preferences or fraudulent transfers and obligations or equitable subordination.

(j)  To consider any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation the Confirmation Order;

(k)  To enforce the discharge and injunction described in the Plan and Confirmation Order;

(l)  To the extent deemed necessary by the Liquidating Trustee, approve the sale after the Liquidating Trust Effective Date of any of the Assets free and clear of all Liens, claims, and interests by the Liquidating Trustee;

(m)  To enter and implement all such orders as may be necessary or appropriate to execute, interpret, construe, implement, consummate, or enforce the terms and conditions of the Plan and the transactions required or contemplated pursuant hereto;

(n)  To hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan;

(o)  To determine proceedings pursuant to section 505 of the Bankruptcy Code; and

(p)  To enter final decrees closing the Chapter 11 Cases.

13.2  <u>Abstention and Other Courts</u>.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to the Chapter 11 Cases, the Plan shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

13.3  <u>Non-Material Modifications</u>.  The Plan Proponents may, with the approval of the Bankruptcy Court and without notice to all holders of Claims and Interests, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable.  The Plan Proponents may undertake such nonmaterial modification pursuant to this section insofar as it does not adversely change the treatment of the Claim of any Creditor or the Interest of any Interest holder who has not accepted in writing the modification.

13.4  <u>Material Modifications</u>.  Modifications of this Plan may be proposed in writing by the Plan Proponents at any time before the Confirmation Date, provided that this Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with section 1125 of the Bankruptcy Code.  This Plan may be modified at any time after the Confirmation Date and before its Substantial Consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such

modification. A holder of a Claim or Interest that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

## ARTICLE XIV.
## MISCELLANEOUS PROVISIONS

14.1    Severability.  Should the Bankruptcy Court determine any provision of the Plan is unenforceable either on its face or as applied to any Claim or Interest or transaction, the Reorganized Debtors or the Liquidating Trustee, as the case may be, may modify the Plan so that any such provision shall not be applicable to the holder of any Claim or Interest.  Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the resolicitation of any acceptance or rejection of the Plan.

14.2    Oral Agreements; Modification of Plan; Oral Representations or Inducements. The terms of the Plan, Disclosure Statement and Confirmation Order may not be changed, contradicted or varied by any oral statement, agreement, warranty or representation.  The Plan may only be modified, amended or supplemented in writing signed by the Plan Proponents or the Liquidating Trustee, as the case may be, with appropriate authority.  Neither the Debtors nor their attorneys have made any representation, warranty, promise or inducement relating to the Plan or its confirmation except as expressly set forth in this Plan, the Disclosure Statement, or the Confirmation Order or other order of the Bankruptcy Court.

14.3    Waiver.  Neither the Reorganized Debtors nor the Liquidating Trustee shall be deemed to have waived any right, power or privilege pursuant to the Plan unless the waiver is in writing and signed by the Reorganized Debtors or the Liquidating Trustee, as the case may be. There shall be no waiver by implication, course of conduct or dealing, or through any delay or inaction by the Reorganized Debtors or the Liquidating Trustee, of any right pursuant to the Plan, including the provisions of this anti-waiver section.  The waiver of any right under the Plan shall not act as a waiver of any other or subsequent right, power or privilege.

14.4    Construction.  This Plan shall control over any inconsistent term of the Disclosure Statement or the Plan Documents.  The Confirmation Order shall control over any inconsistent provision of the Plan, the Disclosure Statement, or the Plan Documents.

14.5    Notice.  Any notice or communication required or permitted by the Plan shall be given, made or sent as follows:

(a)    If to a Creditor, notice may be given as follows: (i) if the Creditor has filed no proof of Claim, then to the address reflected in the Schedules, or (ii) if the Creditor has filed a proof of Claim, then to the address reflected in the proof of Claim.

(b)    If to the Reorganized Debtors, notice shall be sent to the following address:

Stringer Farms, Inc.
Charles Blake Stringer
130 North Dumas Avenue
Dumas, Texas 79029

Concurrently with service of such notice on the Reorganized Debtors, a copy thereof shall be concurrently served in the same manner on the following legal counsel as follows:

> Jeff P. Prostok
> Matthew G. Maben
> Forshey & Prostok, L.L.P.
> 777 Main Street, Suite 1290
> Fort Worth, Texas 76102
> (817) 877-4151 FAX
> E-mail: jprostok@forsheyprostok.com
> E-mail: mmaben@forsheyprostok.com

(c)     If to the Liquidating Trustee, notice shall be sent to the following address:

> Tyrone H. Tyll, Trustee
> 4511 Isabella
> Dallas, Texas 75229

Concurrently with service of such notice on the Liquidating Trustee, a copy thereof shall be served in the same manner on the legal counsel designated by the Liquidating Trustee.

(d)     Any Creditor desiring to change its address for the purpose of notice may do so by giving notice to the Reorganized Debtors or the Liquidating Trustee, as the case may be, of its new address in accordance with the terms of this section.

(e)     Any notice given, made or sent as set forth above shall be effective upon being (i) deposited in the United States Mail, postage prepaid, addressed to the addressee at the address as set forth above; (ii) delivered by hand or messenger to the addressee at the address set forth above; (iii) telecopied to the addressee as set forth above, with a hard confirmation copy being immediately sent through the United States Mail; or (iv) delivered for transmission to an expedited or overnight delivery service such as FedEx.

14.6     Compliance with All Applicable Laws.  If notified by any governmental authority that they are or it is in violation of any applicable law, rule, regulation, or order of such governmental authority relating to their businesses or its business, the Reorganized Debtors or the Liquidating Trustee, as the case may be, shall comply with such law, rule, regulation, or order; provided, however, that nothing contained herein shall require such compliance if the legality or applicability of any such requirement is being contested in good faith in appropriate proceedings and, if appropriate, an adequate reserve has been set aside on the books of the Reorganized Debtors or the Liquidating Trust, as the case may be.

14.7     Duties to Creditors.  No agent, representative, accountant, financial advisor, attorney, shareholder, officer, affiliate, member or employee of the Plan Proponents or the Liquidating Trustee shall ever owe any duty to any Person (including any Creditor) other than the duties owed to the Estates, for any act, omission, or event in connection with, or arising out of, or relating to, any of the following:  (a) the Chapter 11 Cases, including all matters or actions in connection with or relating to the administration of the Estates, (b) the Plan, including the proposal, negotiation, confirmation and consummation of the Plan, or (c) any act or omission relating to the administration of the Plan after the Effective Date.

14.8    Binding Effect.  The Plan shall be binding upon, and shall inure to the benefit of the Reorganized Debtors or the Liquidating Trustee, as the case may be, the holders of the Claims or Liens, the holders of Interests, and their respective successors in interest and assigns.

14.9    Governing Law, Interpretation.  Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any Plan Documents without regard to conflicts of law.

14.10    Payment of Statutory Fees.  All fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid on or before the Effective Date, and thereafter shall be paid by the Reorganized Debtors or the Liquidating Trustee, as the case may be, as such statutory fees become due.

14.11    Filing of Additional Documents.  On or before Substantial Consummation of the Plan, the Plan Proponents or the Liquidating Trustee, as the case may be, may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

14.12    Computation of Time.  If the final day for any Distribution, performance, act or event under the Plan is not a Business Day, then the time for making or performing such Distribution, performance, act or event shall be extended to the next Business Day.  Any payment or Distribution required to be made hereunder on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

14.13    Elections by the Reorganized Debtors or the Liquidating Trustee.  Any right of election or choice granted to the Reorganized Debtors or the Liquidating Trustee under this Plan may be exercised, at the Reorganized Debtors' election or the Liquidating Trustee's election, as the case may be, separately as to each Claim, Creditor or Person.

14.14    Release of Liens.  Except as otherwise provided in this Plan or the Confirmation Order, all Liens against any of the Assets shall be deemed to be released, terminated and nullified.

14.15    Rates.  The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

14.16    Retiree Benefits.  To the extent that the Debtors provide any retiree benefits that are subject to Section 1129(a)(13) of the Bankruptcy Code, such retiree benefits shall continue to be provided by the Reorganized Debtors or the Liquidating Trustee, as the case may be, from and after the Effective Date for the period the Debtors are obligated to provide such benefits.  No such benefits have been identified at this time.

14.17    Compliance with Tax Requirements.  In connection with the Plan, the Reorganized Debtors or the Liquidating Trustee, as the case may be, shall comply with all withholding and reporting requirements imposed by federal, state and local Taxing Authorities and all Distributions under the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim or Interest that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution under the Plan.

14.18  Notice of Entry of Confirmation Order.  Promptly after entry of the Confirmation Order, the Plan Proponents, as directed by the Bankruptcy Court, shall serve on all known parties in interest and holders of Claims and Interests, notice of entry of the Confirmation Order.

14.19  Notice of Occurrence of the Effective Date.  Promptly after occurrence of the Effective Date, the Reorganized Debtors, as directed by the Bankruptcy Court, shall serve on all known parties in interest and holders of Claims and Interests, notice of the occurrence of the Effective Date.  In the event of occurrence of the Liquidating Trust Effective Date, the Liquidating Trustee shall promptly file notice of same with the Bankruptcy Court and shall send such notice to holders of Claims whose counsel of record are not registered for ECF notice.

14.20  Interest and Attorney's Fees.

(a)  Interest after the Petition Date will accrue and be paid on Allowed Claims only to the extent specifically provided for in the Plan, the Confirmation Order, or as otherwise required by the Bankruptcy Court or by applicable law.

(b)  Except as set forth in the Plan or as ordered by the Bankruptcy Court, no award or reimbursement of attorney's fees or related expenses or disbursements shall be allowed on, or in connection with, any Claim.

**14.21  No Admissions.  As to contested matters, adversary proceedings and other causes of action or threatened causes of action, the Plan shall not constitute or be construed as an admission by the Plan Proponents or the Liquidating Trustee, as the case may be, of any fact or liability, stipulation, or waiver, but shall constitute and be construed as a statement made in settlement negotiations.  The Plan shall not be construed to be conclusive advice on the tax, securities, and other legal effects of the Plan as to holders of Claims against, and Interests in, the Debtors or their affiliates, as debtors and debtors in possession in the Chapter 11 Cases.**

[The remainder of this page has been left intentionally blank]

Dated: December 4, 2017.

Respectfully submitted,

/s/ Charles Blake Stringer
Charles Blake Stringer, Individually


**STRINGER FARMS, INC.**

By: /s/ Charles Blake Stringer
Charles Blake Stringer, President



APPROVED:

/s/ Jeff P. Prostok
Jeff P. Prostok
State Bar No. 16352500
Matthew G. Maben
State Bar No. 24037008
FORSHEY & PROSTOK LLP
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
mmaben@forsheyprostok.com

ATTORNEYS FOR STRINGER FARMS, INC.
AND CHARLES BLAKE STRINGER, DEBTORS
AND DEBTORS IN POSSESSION

L:\BFORSHEY\Stringer, Blake #5849 (C11)\Plan and Disclosure Statement\First Amended Plan of Reorganization 12.01.17 v.2.doc

# EXHIBIT "A"

## TO

# FIRST AMENDED JOINT PLAN OF REORGANIZATION OF STRINGER FARMS, INC. AND CHARLES BLAKE STRINGER

# TRUST AGREEMENT

This Trust Agreement (the "Agreement"), dated as of _____, 2017, is established pursuant to the Creditors' Liquidating Plan of Reorganization (the "Plan", docket item No. ____) in the cases of Stringer Farms, Inc. Case No. 16-44871-rfn-11 and Charles Blake Stringer, Case No. 16-44871-rfn-11, (collectively, the "Debtors"), administratively consolidated under Case No. 16-44821-rfn-11, for the benefit of the Trust Beneficiaries (as hereinafter described). All capitalized terms used herein and not otherwise defined herein shall have the meanings assigned thereto in the Plan, unless the context clearly requires otherwise. As used in this Agreement, any other terms defined in the Bankruptcy Code shall have the meanings assigned thereto in the Bankruptcy Code, unless the context clearly requires otherwise.

WHEREAS, on October ___, 2017, Wells Fargo Bank, National Association ("Wells Fargo"), a Creditor of the Debtors, filed the Plan with the United States Bankruptcy Court;

WHEREAS, the Court confirmed the Plan by entering the Order Confirming Plan of Reorganization on _____, 2017;

WHEREAS, the Plan provides for the creation of a trust to be composed of the Liquidating Trust Assets (as defined in the Plan) to be administered and liquidated for the benefit of the Claimants of the Debtors;

WHEREAS, this Trust shall be administered by a Liquidating Trustee, appointed in the Plan and approved by the Court, all pursuant to the terms of the Plan;

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto do hereby covenant and agree as follows:

## I.    CREATION OF THE AGREEMENT

1.    Purpose of Trust. The Debtors, in compliance with the Plan and by and through their authorized representative set forth hereinbelow, hereby constitute and create this Trust (the "Stringer Liquidating Trust"), for the primary purpose of effecting an orderly disposition and liquidation of the Assets transferred to it pursuant to the Plan. This liquidation process shall lead to the distribution of the Net Proceeds of the Liquidating Trust Assets to the holders of Allowed Claims who are members of Classes as these classes are defined in Articles IV and V of the Plan (collectively, the "Trust Beneficiaries").

2.    The Trust. The Stringer Liquidating Trust is established under the Plan to administer the Claims against and Assets (including Causes of Action) of the Debtors' Estates. There shall be one Stringer Liquidating Trust to administer the Claims against, and Assets of, both Debtors. The Stringer Liquidating Trust shall exist from and after the Effective Date of the Plan, as the term Effective Date is defined by the Plan, with all the powers of a trust under applicable Texas law. Within the limits of applicable law, the Stringer Liquidating Trust is a qualified settlement fund or a grantor trust for tax purposes, as the Liquidating Trustee determines to be in the best

interest of Creditors and the Estates. The Liquidating Trustee shall serve as the successor in interest to the Debtors' Estates pursuant to Section 1123(b)(3) of the Bankruptcy Code and, as such, shall have all rights and authority to administer Claims and liquidate and distribute the Liquidating Trust Assets for the benefit of Creditors. For federal income tax purposes, each Debtor shall be deemed to have transferred the Liquidating Trust Assets to the Trust Beneficiaries and thereupon the Trust Beneficiaries shall be deemed to have transferred the Liquidating Trust Assets to the Stringer Liquidating Trust. The Stringer Liquidating Trust is intended to be treated as a trust pursuant to Treasury Regulations § 301.7701-4(d), and as a grantor trust subject to the provisions of Subchapter J, Subpart E of the Internal Revenue Code, owned by the Trust Beneficiaries as grantors. Any items of income, deduction, credit, or loss of the Stringer Liquidating Trust shall be allocated for federal income tax purposes among the Trust Beneficiaries on the basis of their beneficial interests. The Liquidating Trustee is authorized to take any action that may be necessary or appropriate to minimize any potential tax liability of the Trust Beneficiaries arising out of the operations of the Stringer Liquidating Trust.

3. <u>Appointment and Powers of the Liquidating Trustee.</u> There shall be one Liquidating Trustee, who shall be appointed on the Effective Date in the Confirmation Order. _____ shall act as the Liquidating Trustee (the "Liquidating Trustee"). The Liquidating Trustee will serve from and after the Effective Date for as long as the Stringer Liquidating Trust remains in existence, or until a successor is appointed. Unless expressly required in the Plan, the Liquidating Trustee shall have the authority to take such actions as necessary to implement the provisions of the Plan and this Agreement without further order or approval from the Bankruptcy Court.

4. <u>Authority of the Trustee.</u> In implementing the provisions of the Plan and this Agreement, the Liquidating Trustee shall have the authority to exercise the following powers and perform the following acts:

i. Perfect and secure all rights, titles and interests in and to any and all Liquidating Trust Assets;

ii. Conserve, protect, collect and liquidate or otherwise convert all Liquidating Trust Assets into Cash;

iii. Sell and convey, for Cash, all of the interests of the Debtors, their bankruptcy Estates, and the Liquidating Trust, in and to Liquidating Trust Assets to one or more third party purchasers, and to do so free and clear of liens, claims, and encumbrances under section 363 of the Bankruptcy Code with approval of the Bankruptcy Court;

iv. Borrow funds, secured by the Assets of the Stringer Liquidating Trust, for the purpose of discharging the Sandton DIP Loan Claim;

v. Make Distributions to the appropriate beneficiaries as specified in the Plan and this Agreement;

vi. Release, convey, subordinate or assign any right, title or interest in or to the Liquidating Trust Assets, to the extent provided for in the Plan;

vii. Establish and maintain any reserves required under the Plan and this Agreement, or such other reserves as the Liquidating Trustee deems necessary or appropriate, including the Trust Reserve;

viii. Consistent with the allocations provided in the Plan, pay and discharge any costs, expenses, fees or obligations deemed necessary to preserve and maximize the value of the Liquidating Trust Assets, and to protect the Stringer Liquidating Trust and the Liquidating Trustee from liability;

ix. Deposit Stringer Liquidating Trust funds and draw checks and make Distributions thereof;

x. Employ such attorneys, accountants, engineers, agents, tax specialists, other professionals, and clerical assistance as the Liquidating Trustee may deem necessary;

xi. Pay reasonable fees and expenses of all such professionals of the Stringer Liquidating Trust on a monthly basis;

xii. Exercise any and all powers granted the Liquidating Trustee by any agreements or by Texas common law or any statute that serves to increase the extent of the powers granted to the Liquidating Trustee hereunder;

xiii. Take any action required or permitted by this Plan or the Liquidating Trust Agreement;

xiv. Assert claims or Causes of Action in federal or state court or any other tribunal with competent jurisdiction and authority to adjudicate such actions; including, but not limited to all causes of action described in the Disclosure Statement as any cause of action or claim, including Avoidance Actions, which may be asserted by a chapter 11 trustee in the Debtors' cases, the Liquidating Trustee, or the Estate of any Debtor, whether or not such Cause of Action has been filed in a court of competent jurisdiction;

xv. Settle compromise or adjust by arbitration, or otherwise, any disputes or controversies in favor or against the Stringer Liquidating Trust;

xvi. Waive or release rights of any kind;

xvii. Appoint, remove and act through agents, managers and employees and confer upon them such power and authority as may be necessary or advisable;

xviii. Negotiate, renegotiate or enter into any contract or agreements binding the Stringer Liquidating Trust, and to execute, acknowledge and deliver any and all investments that are necessary, required or deemed by the Liquidating Trustee to be advisable in connection with the performance of his/her duties;

xix. Commence, prosecute, and settle objections to Claims against the Debtors or their Estates; and

xx. In general, without in any manner limiting any of the foregoing, deal with the Liquidating Trust Assets or any part or parts thereof in all other ways as would be lawful

for any Person owing the same to deal therewith, whether similar to or different from the ways above specified, at any time or times hereafter. In connection with the handling of Liquidating Trust Assets, the Liquidating Trustee shall comply with all provisions of the Internal Revenue Code by, among other things, filing trust tax returns as required by applicable law and by paying any and all taxes incurred by the Stringer Liquidating Trust as such taxes come due.

5.    <u>Preservation and Recovery of Actions</u>.  It is the intention of the Bankruptcy Court that the interpretation of the causes of action are to be preserved, including all express or implied right to recover for potential Causes of Action identified in the Disclosure Statement related to prepetition transfers of assets and actions of individuals any cause of action that may be brought under Title 11 U.S.C. Chapter 5. This broad grant to the Stringer Liquidating Trust to recover is intended to include any and all legal and equitable causes of action, including in tort, contract, statutory or common law of any type or kind. This notice should be considered broadly to include the potential recovery for mediate or immediate recipients of transfers and for recovery of all legal and equitable actions that may be pursued, including actions but not limited to under sections 542, 544, 547, 548, 549 and 550, and including but not limited to actions for breach of fiduciary duty or other malfeasance.

6.    <u>Future Stringer Liquidating Trustee Compensation and Expenses and Fees</u>. The Liquidating Trustee shall be compensated for services as follows:  (a) $5,000 per week commencing on the Effective Date and for the twenty (20) week period following the Effective Date; and thereafter $2,000.00 per week until the final Distribution to beneficiaries under the Plan is made; (b) a commission of two percent (2%) of the gross sales price of all Assets sold by the Liquidating Trustee upon closing; and (c) reimbursement of actual reasonable and necessary expenses incurred in connection with performing the duties hereunder. Professionals retained by the Liquidating Trustee shall be entitled to reasonable compensation for services rendered and reimbursement of expenses incurred. No Bankruptcy Court approval shall be required for the employment, compensation, or reimbursement of the Liquidating Trustee, or any employees or professionals retained by the Liquidating Trustee. The Liquidating Trustee may select and employ brokers, banks, custodians, investment advisors, attorneys, accountants, auditors, and other agents. Such agents may be so employed without regard to prior employment of such agents by any Trust Beneficiary. The Liquidating Trustee may employ as a consultant in his administration of the Stringer Liquidating Trust any person or persons having particular knowledge of the affairs of the Debtors, and may place reliance upon the advice of any such person. The Liquidating Trustee may pay the salaries, fees, and expenses of such agents or consultants out of the Liquidating Trust Assets. The Liquidating Trustee shall not be liable for any loss to the Stringer Liquidating Trust or any person interested therein by reason of any mistake or default of any such agent or consultant as shall be selected and retained by the Liquidating Trustee in good faith and without gross negligence.

7.    <u>Trust Committee</u>.  The Trust Committee, an oversight committee comprised of three (3) members, shall provide guidance and maintain accountability over the Liquidating Trustee.  It shall meet monthly, or as frequently as it shall determine. The Trust Committee may act with a quorum of at least two (2) members. It shall be comprised of one (1) representative each designated by (a) Zions, (b) Wells Fargo, and (c) the holder of the largest Allowed General Unsecured Claim that is willing to participate and serve. At such time as Zions' Secured Claim has

been fully repaid, its position on the Trust Committee shall be filled with the next largest holder of an Allowed General Unsecured Claim that is willing to serve, failing which the remaining member(s) of the Trust Committee may petition the Bankruptcy Court to approve an appropriate person(s) to fill one or more vacancies. The Trust Committee may, by unanimous vote, remove the Liquidating Trustee and appoint an interim Liquidating Trustee pending approval of his or her appointment by the Bankruptcy Court. The Trust Committee shall be entitled to reimbursement by the Stringer Liquidating Trust for its reasonable attorneys' fees and expenses up to the annual sum of $10,000.00. The members of the Trust Committee shall serve without compensation.

8.     Fee Notice. On a monthly basis, or as otherwise agreed by the Liquidating Trustee and the Trust Committee, the Liquidating Trustee shall provide to each member of the Trust Committee a statement setting forth (a) his or her compensation and expense reimbursements received from the Stringer Liquidating Trust during the preceding month; and  (b) invoices setting forth the aggregate fees and expenses incurred by professionals engaged by the Liquidating Trustee during the preceding month, together with reasonable documentation of such expenses (any such report, a "Fee and Expense Report"); and the professionals engaged by the Liquidating Trustee shall be entitled to receive payment of such fees and expenses 10 days after providing the Fee and Expense Report (the "Fee Notice Period") to the Trust Committee. Notwithstanding the foregoing, if the Liquidating Trustee or Trust Committee objects to such Fee and Expense Report within the Fee Notice Period, the parties may seek to resolve such objection on a consensual basis. If the parties are unable to reach a consensual resolution, each professional employed by the Liquidating Trustee shall be entitled to payment of the contested portion of its fees and/or expenses only pursuant to a Final Order of the Bankruptcy Court after notice and opportunity for a hearing, provided that each professional employed by the Liquidating Trustee shall be entitled to payment of the uncontested portion, if any, of such fees and expenses upon expiration of the Fee Notice Period. The Fee and Expense Report may be redacted as required to protect all applicable privileges.

9.     Exculpation; Indemnification. The Liquidating Trustee and his or her officers, employees, agents, partners, shareholders, members and representatives, and professionals shall not be personally liable to the Stringer Liquidating Trust or any beneficiary except for such of his, her or its own acts as shall constitute fraudulent or willful misconduct or gross negligence. The Liquidating Trustee and his or her officers, employees, agents, partners, shareholders, members, representatives, and professionals shall be and hereby are exculpated by all persons and entities, including, without limitation, beneficiaries and other parties-in-interest, from any and all claims, causes of action and other assertions of liability arising out of any act or omission of the Liquidating Trustee, except for claims of fraudulent or willful misconduct or gross negligence. No beneficiary or other party-in-interest will have or be permitted to pursue any claim or cause of action against the Liquidating Trustee or his or her officers, employees, agents, partners, shareholders, members, representatives, and professionals for making payments in accordance with the Plan or the Confirmation Order. Any act taken or not taken by the Liquidating Trustee or his or her officers, employees, agents, partners, shareholders, members, representatives and professionals with the approval of the Bankruptcy Court will be conclusively deemed not to constitute fraudulent or willful misconduct or gross negligence; provided, however, that such approval of the Bankruptcy Court is not subsequently deemed void. Except as aforesaid, the Liquidating Trustee shall be defended, held harmless and indemnified from time to time from the Liquidating Trust Assets against any and all losses, claims, costs, expenses and liabilities

(including legal costs and expenses), and any costs of defending any action to which the Liquidating Trustee may be subject by reason of the Liquidating Trustee's execution in good faith of his or her duties under this Agreement. The officers, employees, attorneys, agents, and professionals of the Liquidating Trustee may be likewise defended, held harmless and indemnified. The Liquidating Trustee may obtain for his or her benefit and the benefit of his or her officers, agents, attorneys and employees and the benefit of the Stringer Liquidating Trust, at the expense of the Stringer Liquidating Trust, insurance against claims of liability, damage awards and settlement.

10.    Retention of Funds Prior to Distribution. The Liquidating Trustee shall collect all funds constituting Liquidating Trust Assets and, pending distribution, shall deposit funds with a federally insured financial institution that has banking services. The Liquidating Trustee will deposit funds so that they are adequately insured. Notwithstanding the foregoing, the Liquidating Trustee may (but is not obligated to) invest all Cash funds received into the Stringer Liquidating Trust (including any earnings thereon or proceeds therefrom) in the same manner as chapter 7 trustees are required to invest funds pursuant to the guidelines of the Unites States Trustee's Office, provided that the Liquidating Trustee shall invest funds held in only demand and time deposits, such as Treasury bills, short-term certificates of deposit in banks or savings institutions, or other temporary, liquid and low-risk investments. The Liquidating Trustee shall hold all such funds until they are distributed pursuant to the Plan to Creditors with Allowed Claims. From the Effective Date until the date prior to the final Distribution to Creditors under the Plan, the Liquidating Trustee shall maintain the Trust Reserve with a balance not to exceed $200,000.00 for the purpose of securing the payment of the Liquidating Trust's costs of administration.

11.    Quarterly Operating Reports. The Liquidating Trustee shall continue to file quarterly operating reports with the Bankruptcy Court as may be required by the United States Trustee after confirmation of the Plan until the Chapter 11 Cases are closed.

12.    Registry of Beneficial Interests. The Liquidating Trustee shall establish and retain registries of all beneficial interests in the Stringer Liquidating Trust, as issued to the holders of Allowed Claims against each Estate. The Liquidating Trustee shall be responsible to maintain and update such registry; *provided, however*, the Liquidating Trustee shall not be obligated to change any Stringer Liquidating Trust beneficiary's name or address until receiving written correspondence from the party seeking to change the address for receipt of notices and Distributions, together with the written consent of the party previously owning the Claim or interest, if applicable. The Liquidating Trustee retains the right to request additional information to confirm the name and address of such party before making any modification to the registry.

13.    Termination of the Stringer Liquidating Trust. The Stringer Liquidating Trust shall remain and continue in full force and effect until all of the Liquidating Trust Assets have been wholly converted to Cash, abandoned, or assigned, and all costs, expenses, and obligations incurred in administering the Stringer Liquidating Trust have been fully paid, and all remaining income and proceeds of the Liquidating Trust Assets have been distributed in payment of Allowed Claims pursuant to the provisions of the Plan; *provided, however*, that upon complete liquidation of the Liquidating Trust Assets and satisfaction as far as possible of all remaining obligations, liabilities and expenses of the Stringer Liquidating Trust pursuant to the provisions of the Plan and this Agreement prior to such date, the Liquidating Trustee may, with approval of the Bankruptcy Court, sooner terminate the Stringer Liquidating Trust. On the termination date of the Stringer

Liquidating Trust, the Liquidating Trustee will execute and deliver any and all documents and instruments reasonably requested to evidence such termination. Upon termination and complete satisfaction of its duties under this Agreement, the Liquidating Trustee will be forever discharged and released from all power, duties, responsibilities and liabilities pursuant to the Stringer Liquidating Trust other than those attributable to fraud, gross negligence or willful misconduct of the Liquidating Trustee, or the failure of the Liquidating Trustee to pay any taxes.

14.    Replacement of the Liquidating Trustee. The Liquidating Trustee may resign at any time by giving written notice to the Bankruptcy Court (unless the Chapter 11 Cases have been closed). Upon resignation, the Bankruptcy Court may appoint a successor Liquidating Trustee upon nomination of the Trust Committee. In addition to the power of the Trust Committee to remove the Liquidating Trustee, after notice to all Creditors and a hearing, the Bankruptcy Court may remove the Liquidating Trustee for cause. If the office of the Liquidating Trustee becomes vacant for any reason, the Trust Committee (or any member thereof) may move for the appointment of a successor Liquidating Trustee by the Bankruptcy Court. Upon the entry of an order appointing a successor Liquidating Trustee, the resigning Liquidating Trustee shall convey, transfer and set over to such successor Liquidating Trustee by appropriate instrument or instruments all of the Liquidating Trust Assets then unconveyed or otherwise undisposed of and all other assets then in his or her possession under the Liquidating Trust Agreement. Without further act, deed or conveyance, a successor Liquidating Trustee shall be vested with all the rights, privileges, powers and duties of the Liquidating Trustee, except that the successor Liquidating Trustee shall not be liable for the acts or omissions of his or her predecessor(s). Each succeeding Liquidating Trustee may in like manner resign and another may in like manner be appointed in his or her place.

II.    MANAGEMENT OF LIQUIDATING TRUST ASSETS AND DISTRIBUTIONS

15.    Liquidating Trust Transactions. On the Effective Date, or as soon as reasonably practicable thereafter, the Liquidating Trustee may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, or contemplated by the provisions of the Plan and this Agreement, including: (i) the execution and delivery of appropriate agreements, bylaws, resolutions or other documents of liquidation containing terms that are consistent with the terms of the provisions of the Plan and this Agreement and that satisfy the requirements of applicable law; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the provisions of the Plan and this Agreement; and (iii) any other action that the Liquidating Trustee determines is necessary and appropriate.

a)    Each of the matters provided for by the provisions of the Plan and this Agreement involving the corporate structure of the Debtors or corporate or related actions to be taken by or required of the Liquidating Trustee shall, as of the Effective Date, be deemed to have occurred and be effective as provided in the provisions of the Plan and this Agreement (except to the extent otherwise indicated), and shall be authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by holders of Claims or Interests, members of the Debtors or beneficiaries of the Stringer Liquidating Trust, as the case may be, or any other entity.

b) From and after the Effective Date, the Liquidating Trustee may operate (or liquidate and wind up) Stringer Liquiding Trust's business and use, acquire, and dispose of property and settle and compromise claims or interests without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order. Without limiting the generality of the foregoing, the Liquidating Trustee may, without application to or approval by the Bankruptcy Court, pay fees that he incurs after the Effective Date for professional fees and expenses. Nothing in this provision shall be deemed to prevent the Liquidating Trustee from seeking the Approval of the Bankruptcy Court.

16. <u>Initial Distributions</u>. With respect to each Allowed Claim, the Liquidating Trustee shall make the initial Distribution on account of such Claim on or before the Initial Distribution Date for such Claim. All Distributions shall be made in accordance with Section V of the Plan.

17. <u>Means of Payments</u>. Payments made pursuant to the Plan shall be in Cash unless otherwise authorized in the Plan.

18. <u>Delivery of Distributions and Time Bar to Payments</u>. Subject to Bankruptcy Rule 9010, Distributions under the Plan shall be made at the address of each holder of an Allowed Claim, as set forth on the proofs of Claim filed by such holders (or at the last known address of such holder as of the Confirmation Date if the Liquidating Trustee has not been notified in writing of a change of address). If any Distribution on an Allowed Claim is returned as undeliverable or uncashed, no further Distributions on account of such Claim shall be made unless and until the Liquidating Trustee is notified in writing of the holder of such Claim's then current address, at which time all missed Distributions shall be made to such holder on account of such Claim without interest. Any holder of an Allowed Claim whose Distribution is undeliverable or uncashed must make demand for such Distribution to the Liquidating Trustee in writing on or before 90 days after the date such undeliverable or uncashed Distribution was initially made. After such date, the Claim of any holder with respect to such Distribution shall be forever barred. All such unclaimed Distributions shall be deemed "Unclaimed Property" and shall be redistributed by the Liquidating Trustee to holders of Allowed Claims whose Distributions have been deliverable in amounts to which such holders would have been entitled had the barred claim never been Allowed. The Liquidating Trustee and its agents and professionals are under no duty to take any action to either attempt to locate any holder of a Claim, or obtain an executed Internal Revenue Service Form W-9 from any holder of a Claim.

19. <u>Unclaimed Property</u>. Any Distribution that becomes Unclaimed Property shall be retained by the Stringer Liquidating Trust free and clear of any claims or restrictions thereon, and any entitlement of any holder of any Claim to such Distributions shall be extinguished and forever barred. Unclaimed Property shall be deposited into a pool for redistribution to other holders of Allowed Claims in the same Class as the intended recipient of the Unclaimed Property.

20. <u>Uncashed Checks</u>. Checks issued in respect of Allowed Claims will be null and void if not negotiated within ninety (90) days after the date of issuance thereof, and will be treated as Unclaimed Property. In no event shall any funds escheat to a Governmental Unit.

21.    Withholding and Reporting Requirements. Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law in relation to a Distribution under the Plan shall be deducted from the Distribution and remitted by the Liquidating Trustee to the applicable Taxing Authority(ies). To the extent that this provision affects the holder of a particular Allowed Claim, such holder shall provide to the Liquidating Trustee all such information as the Liquidating Trustee requires in order to comply with such law(s), and no Distribution shall be made to such holder unless and until such information is provided.

22.    _De Minimis_ Distributions. Notwithstanding any provision of the Plan to the contrary, no distribution of less than twenty-five dollars ($25.00) must be made from the Stringer Liquidating Trust on account of an Allowed Claim, until such time as final Distribution is made.

23.    Tax Treatment.

a)    The Stringer Liquidating Trust is created for the primary purpose of collecting, liquidating and distributing the assets transferred to it with no objective to continue or engage in the conduct of a trade or business. The Stringer Liquidating Trust is to be classified as a "Trust" for federal income tax purposes within the meaning of Treasury Regulation § 301.7701-4(d). The Liquidating Trustee shall ascribe valuations to the Liquidating Trust Assets on the date of transfer of such assets to the Stringer Liquidating Trust, and such valuations shall be used by the Debtors and the Liquidating Trustee for all federal income tax reporting purposes.

b)    The transfer of the Liquidating Trust Assets to the Stringer Liquidating Trust shall be treated for all purposes of the Internal Revenue Code of 1986, as amended, as a deemed transfer to the Creditors by the Debtors and their estates of any rights that they may have to the Liquidating Trust Assets, followed by a deemed transfer by the Creditors to the Stringer Liquidating Trust, thereby establishing their beneficial ownership in the Stringer Liquidating Trust and making them beneficiaries of the Stringer Liquidating Trust.

c)    The beneficiaries shall be treated as the grantors and deemed owners of the Stringer Liquidating Trust. The Liquidating Trustee shall allocate the Stringer Liquidating Trust income for each taxable year among the beneficiaries in accordance with their respective interests in the Stringer Liquidating Trust, as determined from time to time by the Liquidating Trustee, and the beneficiaries shall be responsible for any tax liability that results from said income. The Liquidating Trustee shall execute and file tax returns on behalf of the Stringer Liquidating Trust as a grantor trust pursuant to Treasury Regulation § 1.671.4(a).

d)    Each beneficiary shall be required, before any distribution of Liquidating Trust Assets is made to such holder, to provide the Liquidating Trustee with an executed IRS Form W-9 or such other appropriate taxpayer identification information as will allow the Liquidating Trustee to file the appropriate tax return on behalf of the Stringer Liquidating Trust. If a beneficiary shall fail to provide the Liquidating Trustee with any requested taxpayer identification information within 90 days after a request for this information, then unless such failure is cured within 10 days of a final request for same and notice of forfeiture, such failure shall be deemed a waiver of all claims against the Stringer Liquidating Trust, including the right to Distributions, and the funds that would otherwise

have been distributed to such holder shall revert to the Stringer Liquidating Trust as Unclaimed Property to be redistributed to other beneficiaries who have provided the requested taxpayer identification information, or as otherwise provided under the Plan.

24. <u>Objection Deadline</u>. All Objections to Claims shall be served and filed by the Objection Deadline; *provided, however*, the Objection Deadline shall not apply to any Claim that is not reflected in the claims register, including any alleged informal proofs of Claim. The Liquidating Trustee may seek to extend the Objection Deadline pursuant to a motion filed on or before the then applicable Objection Deadline with respect to any Claim. Any such motion may be granted without notice or a hearing. In the event that the Liquidating Trustee files such a motion and the Bankruptcy Court denies such motion, the Objection Deadline shall nevertheless be automatically extended to that date which is ten (10) Business Days after the date of entry of the Bankruptcy Court's order denying such motion. Any proof of Claim filed more than sixty (60) days after the Effective Date shall be of no force and effect and need not be objected to by the Liquidating Trustee. Nothing contained herein shall limit the rights of the Liquidating Trustee to object to any Claim filed or amended after the Objection Deadline.

25. <u>Responsibility for Objecting to Claims and Settlement of Claims</u>. From and after the Effective Date, the Liquidating Trustee shall have the exclusive right to (i) file, settle, or litigate to Final Order any Objection to any Claim; and (ii) seek to subordinate any Claim. Any Contested Claim may be litigated to Final Order.

26. <u>Authority to Settle.</u> From and after the Effective Date, the Liquidating Trustee shall have the exclusive right to settle, compromise, or otherwise resolve any Contested Claim without the necessity of any further notice or approval of the Bankruptcy Court. Bankruptcy Rule 9019 shall not apply to any settlement or compromise of a Contested Claim after the Effective Date. Nothing in this provision shall be deemed to prevent the Liquidating Trustee from seeking the Approval of the Bankruptcy Court.

27. <u>Distributions on Account of Contested Claims</u>. No Distribution shall be made on account of a Contested Claim until Allowed. Until such time as a contingent Claim becomes fixed and absolute by a Final Order allowing such Claim, such Claim shall be treated as a Contested Claim for purposes of estimates, allocations, and Distributions under the Plan; provided however, a Final Order shall not be required in connection with any Claim that is not a contingent Claim, or a Claim compromised and settled by the Liquidating Trustee. Any contingent right to contribution or reimbursement shall continue to be subject to Section 502(e) of the Bankruptcy Code.

28. <u>No Waiver of Rights to Object</u>. Except as expressly provided in the Plan, nothing contained in the Disclosure Statement, the Plan, or the Confirmation Order shall waive, relinquish, release, or impair the Liquidating Trustee's rights to object to any Claim.

29. <u>Rights Under Section 505</u>. The Liquidating Trustee shall retain all rights pursuant to Section 505 of the Bankruptcy Code and the other provisions of Chapter 5 of the Bankruptcy Code.

30. <u>Liquidating and Allowance of Contested or Disputed Claims</u>. Nothing contained in the Plan, the Disclosure Statement, or the Confirmation Order shall change, waive, or alter any requirement under applicable law that the holder of a Contested Claim must file a timely proof of

Claim, and the Claim of any such Creditor who is required to file a proof of Claim and fails to do so shall be discharged and shall receive no Distribution through the Plan. The adjudication and liquidation of Contested Claims is a determination and adjustment of the debtor/creditor relationship, and is, therefore, an exercise of the Bankruptcy Court's equitable power to which the legal right of trial by jury is inapplicable. The holder of any Contested Claim shall not have a right to trial by jury before the Bankruptcy Court in respect of any such Claim. Exclusive venue for any Contested Claim proceeding shall be in the Bankruptcy Court or a court of competent jurisdiction located in Tarrant County, Texas. Contested Claims shall each be determined separately, except as otherwise ordered by the Bankruptcy Court. Texas Rule of Civil Procedure 42 and Federal Rule of Civil Procedure 23 shall not apply to any Contested Claim proceeding. The Liquidating Trustee shall retain all rights of removal to federal court as to any Contested Claim proceeding.

31.     All Contested Claims shall be liquidated and determined as follows:

a)     <u>Application of Adversary Proceeding Rules</u>.  Unless otherwise ordered by the Bankruptcy Court or provided by the Bankruptcy Rules, any Objection to a Contested Claim shall be treated as a contested matter subject to Bankruptcy Rule 9014. However, any party may move the Bankruptcy Court to apply the rules applicable to adversary proceedings to any Claim Objection. The Liquidating Trustee may, however, at its election, make and pursue any Objection to a Claim in the form of an adversary proceeding.

b)     <u>Scheduling Order</u>. With respect to an Objection to a Claim treated as a contested matter subject to Bankruptcy Rule 9014, the Liquidating Trustee may request entry of a scheduling order as to each Objection to a Claim. The Liquidating Trustee may tender a proposed scheduling order with each Objection and/or include a request for a scheduling conference for the entry of a scheduling order. Any such scheduling order may include (i) discovery cut-off, (ii) deadlines to amend pleadings, (iii) deadlines for designation of and objections to experts, (iv) deadlines to exchange exhibit and witness lists and for objections to the same, and (v) such other matters as may be appropriate.

c)     <u>Mediation</u>.  The Bankruptcy Court may order the parties to mediate in connection with any Objection to a Claim. The Liquidating Trustee may include a request for mediation in an Objection to a Claim and may request that the Bankruptcy Court require mediation as a part of any scheduling order.

32.     <u>Offsets and Defenses</u>.   The Liquidating Trustee shall be vested with and retain all Estate Claims and Estate Defenses, including without limitation all rights of offset or recoupment and all counterclaims against any Claimant. Assertion of any counterclaim by the Liquidating Trustee against a Claimant shall constitute a "core" proceeding.

33.     <u>Claims Paid or Reduced Prior to Effective Date</u>.   Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated, and not contingent shall be reduced by the amount, if any, that was paid by the Debtors on behalf of the Debtors prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made. Nothing in the Plan shall preclude the Liquidating Trustee from paying

any Claim that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

34. <u>Acceptance by the Liquidating Trustee</u>. The Liquidating Trustee is willing and hereby accepts the appointment, to act and serve as Liquidating Trustee of the Stringer Liquidating Trust and to hold and administer the Liquidating Trust Assets pursuant to the terms of this Stringer Liquidating Trust and the Plan.

35. <u>Transfer of Liquidating Trust Assets to the Stringer Liquidating Trust</u>. In accordance with the provisions of the Plan, all right, title, and interest of the Estate of the Debtors and to all of the Liquidating Trust Assets as the same exist as of the date hereof, are hereby vested in the Stringer Liquidating Trust and preserved for the benefit of the Trust Beneficiaries. From and after the Effective Date of this Stringer Liquidating Trust, all of such funds, assets, and properties, together with the Net Proceeds, shall be administered by the Liquidating Trustee on behalf of the Trust Beneficiaries. Prior to the creation of the Stringer Liquidating Trust, the Debtors shall have executed and delivered or caused to be executed and delivered to, or upon the order of, the Liquidating Trustee any and all documents and other instruments as may be necessary or useful to convey and to confirm title to the Liquidating Trust Assets to the Stringer Liquidating Trust. After the Effective Date, the Liquidating Trustee, acting on behalf of Debtors, shall execute all other documents necessary or useful to convey and to confirm title to the Liquidating Trust Assets to the Stringer Liquidating Trust. Transfer of the Liquidating Trust Assets to the Stringer Liquidating Trust, whether before or after the Effective Date, shall constitute a taxable event.

## III.    RIGHTS, POWERS, AND DUTIES OF TRUSTEE

36. <u>Declaration Acknowledging Beneficial Interest</u>. The Liquidating Trustee hereby acknowledges that, on and after the Effective Date, the Trust Beneficiaries will have a beneficial interest in all Liquidating Trust Assets. The Liquidating Trustee will retain only such powers as are necessary to collect, liquidate, or otherwise convert into cash such funds, assets, and properties and to pay all expenses, taxes, and other payments referred to in this Stringer Liquidating Trust.

37. <u>No Implied Obligations</u>. The Liquidating Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Stringer Liquidating Trust.

38. <u>No Liability for Good Faith Error of Judgment or Other Persons</u>. The Liquidating Trustee shall not be liable for any error of judgment made in good faith, unless it shall be proved that he was grossly negligent in ascertaining the pertinent facts.

39. <u>Reliance by Trustee on Documents or Advice of Counsel or Other Persons</u>. Except as otherwise provided herein, the Liquidating Trustee may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by him to be genuine and to have been signed or presented by the proper party or parties. The Liquidating Trustee may also engage and consult with legal counsel and shall not be liable for any action taken or suffered by a Liquidating Trustee in reliance upon the advice of such counsel.

40.     No Personal Obligation for Trust Liabilities. Persons dealing with the Liquidating Trustee, or seeking to assert claims against the Debtors, shall look only to the Stringer Liquidating Trust Assets to satisfy any liability incurred by the Liquidating Trustee to such person in carrying out the terms of this Stringer Liquidating Trust, and the Liquidating Trustee shall have no personal, individual obligation to satisfy any such liability.

41.     Resignation.   The Liquidating Trustee may resign as such by executing an instrument in writing; provided, however, that the Liquidating Trustee shall continue to serve as Liquidating Trustee after resignation until the time when appointment of a successor Liquidating Trustee shall become effective in accordance with the provisions of this Agreement.

42.     Appointment of Successor Trustee.   In the event of the death or incompetency, resignation, or removal of the Liquidating Trustee, the Trust Committee shall appoint a successor Liquidating Trustee by a majority vote, who shall serve on an interim basis until approval by the Bankruptcy Court. Such appointment shall specify the date on which such appointment shall be effective. Every successor Liquidating Trustee appointed hereunder shall execute, acknowledge, and deliver to the Trust Beneficiaries and the retiring Liquidating Trustee an instrument accepting such appointment, and thereupon such successor Liquidating Trustee, without any further act, deed, or conveyance, shall become vested with all the rights, powers, trusts, and duties of the retiring Liquidating Trustee.

43.     Trust Continuance.   The death or incompetency, resignation, or removal of the Liquidating Trustee shall not operate to terminate the Stringer Liquidating Trust created by this Agreement or to revoke any existing agency created pursuant to the terms of this Agreement or invalidate any action theretofore taken by the Liquidating Trustee.   In the event of the resignation or removal of the Liquidating Trustee, such Liquidating Trustee shall promptly (a) execute and deliver such documents, instruments, and other writings as may be requested by the successor Liquidating Trustee to effect the termination of the Liquidating Trustee's capacity under the Stringer Liquidating Trust and the conveyance of the Liquidating Trust Assets then held by the Liquidating Trustee to his successor; (b) deliver to the successor Liquidating Trustee all documents, instrument, records, and other writings related to the Stringer Liquidating Trust as may be in the possession of the Liquidating Trustee; and (c) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Liquidating Trustee.

44.     Effect of Trust on Third Parties.   There is no obligation on the part of any purchaser or purchasers from the Liquidating Trustee or any agent of the Liquidating Trustee, or on the part of any other persons dealing with the Liquidating Trustee or any agent of the Liquidating Trustee, to see to the application of the purchase money or other consideration passing to the Liquidating Trustee or any agent of the Liquidating Trustee, or to inquire into the validity, expediency, or propriety of any such transaction by the Liquidating Trustee or any agent of the Liquidating Trustee.

IV.   RIGHTS, POWERS AND DUTIES OF TRUST BENEFICIARIES.

45.     Interest Beneficial Only.   The ownership of a beneficial interest hereunder shall not entitle any beneficiary to any title in or to the Liquidating Trust Assets as such, or to any right to call for a partition or division of the same, or to require an accounting except as specifically required by the terms hereof.

46. <u>Votes by Beneficiaries</u>. In the event any vote of or consent from the Trust Beneficiaries is required to be taken under this Stringer Liquidating Trust, the Liquidating Trustee shall solicit same by first class mail from registered Trust Beneficiaries. The outcome of such vote shall be determined in favor of the majority of Trust Beneficiaries actually voting, based upon number of participants.

47. <u>Effect of Death, Incapacity, or Bankruptcy of Beneficiary</u>. The death, incapacity, or bankruptcy of a Trust Beneficiary during the terms of this Stringer Liquidating Trust shall not operate to terminate the Stringer Liquidating Trust, nor shall it entitle the representatives or creditors of the deceased Trust Beneficiary to an accounting, or to take any action in the courts or elsewhere for the distribution of the Liquidating Trust Assets or for a partition thereof, nor shall it otherwise affect the rights and obligations of any Trust Beneficiary.

48. <u>Conflicting Claims</u>. In the event the Liquidating Trustee becomes aware of any disagreement or conflicting claims with respect to the Liquidating Trust Assets, or if the Liquidating Trustee in good faith is in doubt as to any action which should be taken under this Stringer Liquidating Trust, the Liquidating Trustee shall have the absolute right at his election to do any or all of the following:

a)    To the extent of such disagreement or conflict, or to the extent deemed by him necessary or appropriate in light of such disagreement or conflict, withhold or stop all further performance under this Stringer Liquidating Trust (save and except the safekeeping of the Liquidating Trust Assets) until the Liquidating Trustee is satisfied that such disagreement or conflicting claims have been fully and finally resolved; or

b)    File a suit in interpleader or in the nature of interpleader in the Bankruptcy Court and obtain an order requiring all persons and parties involved to litigate in the Bankruptcy Court their respective claims arising out of or in connection with this Stringer Liquidating Trust; or

c)    File any other appropriate motion for relief in the Bankruptcy Court.

V.  <u>MISCELLANEOUS.</u>

49. <u>Applicable Law</u>.  The Stringer Liquidating Trust created herein shall be construed, regulated, and administered under the laws of the State of Texas and the United States of America.

50. <u>Relationship Created</u>.  The only relationship created by this Stringer Liquidating Trust is the trustee-beneficiary relationship between the Liquidating Trustee and the Trust Beneficiaries. No other relationship or liability is created. Nothing contained herein shall be construed so as to constitute the Liquidating Trustee and the Trust Beneficiaries or their successors in interest as creating any association, partnership, or joint venture of any kind.

51. <u>Interpretation</u>.  The enumeration and headings contained in this Stringer Liquidating Trust are for convenience of reference only and are not intended to have any substantive significance in interpreting the same. Unless the context otherwise requires, whenever used in this Stringer Liquidating Trust the singular shall include the plural and the plural shall include the singular. All interpretations of this Agreement should attempt to comply with the intent

of the Plan. Any dispute requiring court intervention to determine the appropriate interpretation of this Agreement shall be raised before the United States Bankruptcy Court for the Northern District of Texas Fort Worth Division. Litigation related to the interpretation of the Plan may only be bought before another court of competent jurisdiction if the United States Bankruptcy Court for the Northern District of Texas Fort Worth Division declines to consider the dispute.

52.     Partial Invalidity.   If any provision of this Stringer Liquidating Trust shall for any reason be held invalid or unenforceable by any court, governmental agency, or arbitrator of competent jurisdiction, such invalidity or unenforceability shall not affect any other provision hereof, but this Stringer Liquidating Trust shall be construed as if such invalid or unenforceable provision had never been contained herein.

53.     Entire Agreement.   This Agreement (including the recitals hereof) and the Plan constitute the entire agreement by and among the parties, and there are no representations, warranties, covenants, or obligations except as set forth herein and in the Plan. This Agreement and the Plan supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, if any, of the parties hereto relating to any transaction contemplated hereunder. Except as otherwise specifically provided herein or in the Plan, nothing in this Agreement is intended or shall be construed to confer upon or to give any person other than the parties hereto and the Trust Beneficiaries any rights or remedies under or by reason of this Agreement.

54.     Counterparts.   This Agreement may be executed in any number of counterparts and by the different parties hereto on separate counterparts, each of which when so executed and delivered shall be an original document, but all of which counterparts shall together constitute one and the same instrument.

55.     Notices.   All notices, requests, consents and other communications hereunder shall be in writing and delivered in person or by first class mail, postage and fees prepaid and shall be addressed (i) if to the Liquidating Trustee, to 4511 Isabella, Dallas, TX 75229, or such other address as such Liquidating Trustee will have furnished to the Trust Beneficiaries, (ii) if to any Trust Beneficiary, to such address as such Trust Beneficiary will have furnished to the Liquidating Trustee in accordance with the plan and the registry of all beneficial interests in the Trust. All such notices or communications will be deemed given when actually delivered or, if mailed, three (3) business days after deposit in the U.S. Mail.

56.     Amendment of Stringer Liquidating Trust.   Notwithstanding anything in this Agreement, the provisions of the Plan shall control the actions of the Liquidating Trustee.   This Stringer Liquidating Trust may be amended, modified, terminated, revoked, or altered only by order of the Bankruptcy Court.

IN WITNESS WHEREOF, the undersigned have caused this instrument to be executed as of the day and year first above written.

Debtors/Grantors:

STRINGER FARMS, INC.

_____

By: _____
Its: _____


_____

Charles Blake Stringer, individually


Accepted:


_____

TYRONE H. TYLL, LIQUIDATING TRUSTEE

(Acknowledgment)

STATE OF TEXAS
COUNTY OF _____

BEFORE ME, the undersigned authority, on this date personally appeared Charles Blake Stringer, an individual known to me personally or by driver's license to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed and in the capacity therein stated.

**GIVEN** under my hand and seal of office this _____ day of _____, 20___.


_____
Notary Public, State of Texas


(Acknowledgment)

STATE OF TEXAS
COUNTY OF _____

BEFORE ME, the undersigned authority, on this date personally appeared Charles Blake Stringer, as president of Stringer Farms, Inc., known to me personally or by driver's license to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed and in the capacity therein stated.

**GIVEN** under my hand and seal of office this _____ day of _____, 20___.


_____
Notary Public, State of Texas